Exhibit I

EX PARTE MOTION OFFICE

APPROVED
FOR THE PAYMENT
OF MOTION FEE
ONLY

PRESENT:

___Solomon___
J.S.C.

At the Supreme Court of the State of New York, County of New York, at the court house located at 60 Centre Street, New York, New York, on the 25 day of May 2007.

IAS Part 55

#012632

-----------------------------------------x

IN REM TAX FORECLOSURE ACTION NO. 46

BOROUGH OF MANHATTAN

SECTIONS 3, 6, 7 AND 8

TAX CLASSES 1 AND 2

-----------------------------------------x

Index No: 580001/2004

Premises 477 West 142nd Street (Block 2058 - Lot 29)

ORDER TO
SHOW CAUSE

INDEX NUMBER 580001 YEAR 2004
15 MOTIONS                45.00
TOTAL                     45.00
CHECK                     45.00

Upon the supporting affirmation of Richard Paul Stone, Esq., dated May 21, 2007, and the attached exhibits, submitted on behalf of 477 West 142nd Street Housing Development Fund Corporation (the "HDFC") and there appearing good cause,

IT IS ORDERED that the City of New York appear and show cause on June 11, 2007 at 10 AM, ~~2007~~, why an order should not enter:

    A.    pursuant to CPLR 2221, granting the HDFC reargument of the City's motion for summary judgment of foreclosure against the HDFC on the single issue of whether its proceeding remains timely and valid; or

    B.    if this court finds the HDFC in default, pursuant to CPLR 5015, vacating that default and hearing again the City's motion with consideration for the arguments submitted herewith; or

    C.    in the alternative to A or B and/or the requested TRO, staying the signing and/or entry of the proposed judgment of foreclosure 21 days to allow the HDFC to pay into court the entire sum allegedly due to the City as taxes with funds it is obtaining by giving a mortgage on which it is preparing to close; and

D.  once the HDFC's funds are with the court, scheduling a hearing for the City to demonstrate that the figure it asserts for taxes is correct;

along with such other and further relief this court deems just and proper, and

IT IS FURTHER ORDERED that all proceedings are hereby stayed pending the hearing ~~and determination~~ of this motion; and

IT IS FURTHER ORDERED that ~~fax~~/hand/overnight service of a conformed copy of these papers on the Corporation Counsel and counsel for non-party Shirley Pitts by *on receipt* the close of business on May 30, 2007, will be deemed sufficient service.

Oral Argument directed:

_____  
J.S.C.  
JANE S. SOLOMON

ENTER:

_____  
J.S.C.  
JANE S. SOLOMON

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------- x
IN REM TAX FORECLOSURE ACTION NO. 46   :   Index No: 580001/2004
:
BOROUGH OF MANHATTAN                   :   Premises
:   477 West 142nd Street
SECTIONS 3, 6, 7 AND 8                 :   (Block 2058 - Lot 29)
:
TAX CLASSES 1 AND 2                    :   AFFIRMATION
------------------------------------------------------------- x

Richard Paul Stone, an attorney licensed to practice before the courts of the State of New York, affirms as follow subject to the penalties for perjury.

1.  I submit this affirmation in support of the motion of 477 West 142nd Street Housing Development Funding Corporation (the "HDFC"), brought by order to show cause, for an order:

   A.  pursuant to CPLR 2221, granting the HDFC reargument of the City's motion for summary judgment of foreclosure against the HDFC on the single issue of whether its proceeding remains timely and valid; *or*

   B.  if this court finds the HDFC in default, pursuant to CPLR 5015, vacating that default and hearing again the City's motion with consideration for the arguments submitted herewith; or

   C.  in the alternative to A or B and/or the requested TRO, staying the signing and/or entry of the proposed judgment of foreclosure 21 days to allow the HDFC to pay into court the entire sum allegedly due to the City as taxes with funds it is obtaining by giving a mortgage on which it is preparing to close; and

   D.  once the HDFC's funds are with the court, scheduling a hearing for the City to demonstrate that the figure it asserts for taxes is correct;

and for a TRO to protect the HDFC's ability to obtain a meaningful remedy, along with such other and further relief this court deems just and proper.

## Preliminary Statement

2.  The HDFC was created in 1982 when Queen Mother Delois Blakely, PhD. took charge of an abandoned building and, with remarkable perseverance and sweat equity, turned out the squatters and created a haven for underprivileged in the neighborhood. She is known worldwide as the "Mayor of Harlem" (see press clippings as Exhibit A). The HDFC has admittedly fallen behind in taxes and other City charges.

3.  By the time I was retained four months ago, the City's motion for summary judgment against the HDFC was pending. I advised its officers to tap into its $5 million in equity to satisfy the obligation to the City, renovate the significant rental space along the east side of Amsterdam Avenue, and upgrade infrastructure. With time short, I met with HPD and we began to set a schedule of meetings towards this goal.

4.  However, I came down with pneumonia and Queen Mother Blakely had to travel to Mali to return the remains of children killed in a well-publicized fire in the Bronx (press clippings attached as Exhibit B). Another HDFC officer, Queen Mother Bishop Pitts, engaged counsel to protect her interest and, when I returned from my illness, I understood new counsel for Bishop Pitts were taking over for the HDFC.

5.  Queen Mother Blakely has returned from Mali and late last week contacted me to say the HDFC wanted me on the case. Upon my review of the order granting the City's motion I learned that counsel for Bishop Pitts had not officially represented the HDFC, and that they had not taken what I believe is the strongest legal position on the HDFC's behalf - that the motion for summary judgment is too late. On that basis, the HDFC asks that any notion of default be vacated and that they have just the opportunity to raise that issue so that any appeal with be properly postured.

6. Moving to a long-term view, the HDFC is also completing arrangements for financing to satisfy its obligation to the City. Regardless of whether this court agrees that the proceeding is void as expired, the HDFC recognizes its obligation to pays its taxes and is preparing to do just that. While the HDFC recognizes that the law presumes the City's charges are accurate, it notes that HPD has been unable to even remotely demonstrate the accuracy of the amount the City demands: Since the HDFC serves the poor, it urges that justice will be best served if it protects the City by depositing the entire amount claimed with the court and to then pay to the City that amount the City is able to demonstrate at a hearing is fairly and accurately owed. The HDFC will be able to then clear its obligations and allow it to move forward with its mission of serving the poor in its challenged neighborhood.

**Factual and Procedural Background**

7. This proceeding was commenced against various properties within the sections identified in the caption, based on a general judgment of foreclosure signed by this court on July 28, 2005, and filed August 11, 2005 (the "Judgment") (a copy is attached as Exhibit C).

8. As set forth in the Affidavit of Shaun Donovan, submitted in support of the City's motion resulting in the Judgment, the filing of that Judgment began the running of an eight month period within which the City was bound to resolve the status of the properties affected thereby (a copy is attached as Exhibit D).

> The proposed judgement of in rem foreclosure in the above-referenced action would authorize the City to implement the Third Party Transfer Program for the residential properties included in the Judgment.

(Exh. D, ¶1). Commissioner Donovan further amplified the process.

> Owners, mortgagees, and other interested parties retain the right to redeem their property during the first four months after the [Judgment] is entered. . . .
>
> If the Commissioner of Finance has not transferred title to a third party deemed qualified and designated by HPD of to the City within the statutory period after [the Judgment] is entered, the in rem action is to be discontinued with respect to any parcel not transferred, in which case *the delinquent owner will remain the owner of record*. For the City to then take title or transfer title to a third party deemed qualified and designated by HPD, the Commissioner of Finance must initiate a new tax foreclosure proceeding.

(Exh. D, ¶¶7-8 [emphasis added]). The Commissioner of Finance also submitted an Affidavit of Regularity, in which she specified that the "statutory period" to which Commissioner Donovan referred, is eight months (a copy is attached as Exhibit E).

> Pursuant to law, the [Judgment] provides that the Commissioner of Finance has eight months, commencing from the date the [Judgment] is entered, in which to transfer foreclosed parcels to either the City or to a third party deemed qualified and designated by the Commissioner of HPD. See Admin. Code § 11-2.12.1(c). For the first four months following the date of entry, owners, mortgagees and other interested parties have the opportunity to redeem their properties. See Admin. Code § 11-4.12.1(d). . . . Following the expiration of the four-month redemption period, the Commissioner of Finance then has an additional four months to convey the properties to either the City or to third parties deemed qualified and designated by the Commissioner of Housing Preservation and Development. See Admin. Code § 11-412.1.(c). *If the Commissioner of Finance does not transfer title within the eight month period, the in rem action is discontinued with respect to parcels not so transferred, and title remains with the owner*.

(Exh. E, ¶¶4-5 [emphasis added]).

9.   The City resolved the status of most of the properties during the intervening period but, by notice dated December 22, 2006, moved for summary judgment against the property at 477 West 142nd Street (the "Property") owned by the HDFC.

10. In or about January 20, 2007, I was engaged as counsel for the HDFC. I came to the HDFC through a community service agency for which I perform a variety of legal services, Heritage Health & Housing, Inc, which agreed to pay my fee as a community benefit.

11. With the motion for summary judgment returnable January 29th, I met with two HDFC officers, Queen Mother Delois Blakely, PhD and Queen Mother Bishop Shirley Pitts. Noting the very late stage of this proceeding, I indicated that the HDFC would either have to come up with the money due or defer payment based on the tardiness of this motion which required that the proceeding be dismissed. To effect one solution or the other, I needed more time and the City graciously adjourned the motion.

12. I then met with the City's representatives on February 20, 2007, to discuss a possible resolution. We agreed to meet on at the Property to evaluate its condition and the corporate viability of the HDFC. I met again with Queen Mother Blakely and Queen Mother Pitts, explaining the City's position that the HDFC had to either accept "tax amnesty", which would forgive a tiny percentage of the monies due but defer repayment of the balance subject to various requirements such as removal of all building violations and acceptance of a business plan to make the corporation viable, or a third party transfer whereby HPD would select a new owner which would create a commercially viable structure that may require the current tenants to vacate. To enable us to explore a compromise, the City again adjourned its motion.

13. Over the two weeks following my meeting with HPD three things happened: (1) HDFC officer Queen Mother Bishop Shirley Pitts engaged Posner & Posner to represent her; I did not understand this since she is not a defendant and her interest was the same as that of the HDFC; (2) In a totally unrelated event, Heritage

Health & Housing, Inc. informed me that it would not be able to continue paying my bill; I spoke with Queen Mother Blakely and advised her that I would work for free until the HDFC could make arrangements to confirm new counsel; (3) I came down with pneumonia and was unable to work in any significant capacity for an extended period.

14.  When I returned to work, I spoke with Joseph Medic, Esq. of Posner & Posner and understood that they would be taking over the representation of the HDFC, since their work for Queen Mother Pitts would protect the HDFC and other fees would be redundant. I was not contacted by further by either Queen Mother Pitts nor Queen Mother Blakely. I attempted to contact Queen Mother Blakely but Queen Mother Pitts, who was represented by counsel. Mr. Medic repeatedly requested my file so he could resolve the matter with the City, meaning he was representing the HDFC.

15.  What I did not know is that Queen Mother Blakely had had to leave the United States for Mali in West Africa while I was ill. There had been a terrible fire in the Bronx, widely reported in the media, which took the lives of a number of children and adults from Mali and Queen Mother Blakely was asked to return the remains to the remove Malian villages whence they came (Exh. A). She left on March 16, 2007, near the end of my illness, and did not return until May 1, 2007.

16.  It was in this context that, on April 9th, I sent Mr. Medic of Posner & Posner a consent to change attorney on the understanding that he would arrange for its execution by his new client. I also understood that he would submit opposition papers on behalf of both the HDFC and Queen Mother Pitts, who is not a party individually. Consistent with my understanding that I was off the case, that firm never served me with its opposition.

17. On April 19th, I received the City's reply papers and learned that Posner & Posner had served opposition only on behalf of Queen Mother Pitts, who is not even a defendant. With the return date the next day, I drafted an affirmation setting forth the history and indicating that I had understood I had been substituted, that the HDFC had been protected but that, if that was not the case, I wanted a brief adjournment to allow me to prepare opposition to the City's motion *pro bono* (a copy is attached as Exhibit F). I had a conflict on the return date of April 20th in the Appellate Division and could not appear on this case. I subsequently spoke with Mr. Medic who indicated that his firm had intended to protect the HDFC's interest and that I did not have to appear or submit papers. He further indicated that the substitution stipulation would be completed.

18. I met with her and Queen Mother Pitts on Friday, May 18th, the latter in her capacity as an officer of the HDFC. They notified me that the HDFC had voted to close on a loan secured by a first mortgage on the Property. While the terms are somewhat onerous, the amount borrowed will clearly allow the HDFC to both deposit the sum the City demands with the court and perform the work on the Property necessary to clear any persisting violations, generate significant commercial rent and stabilize the property. I agreed that, despite the fact that the HDFC cannot guarantee me payment, I would make this motion to both assert the legal argument that this proceeding is improper, and to seek the very brief time the HDFC needs to complete its financing and protect these homes.

POINT I

## THIS PROCEEDING HAS EXPIRED AND THERE NO LONGER EXISTS JURISDICTION TO FORECLOSE ON THE EQUITY OF REDEMPTION, TO TERMINATE THE HDFC'S OWNERSHIP

19. Based on the affidavits of the commissioners of the City's departments of finance and housing preservation and development, this motion is void. It is undisputed that (i) the Judgment was entered August 11, 2005, (ii) the eight month period for the City to transfer the Property expired April 11, 2006, and (iii) this motion was not made until December 22, 2006. Based on the very authorities the Cited in obtaining the Judgment, this proceeding expired by operation of law and no judgment may now be obtained against the HDFC.

20. This legal truth may be applied in either of two contexts: If this court finds the HDFC in default of the City's motion, even though it should not at this time have been entered, the HDFC asserts CPLR 5015 based on excusable default since it was clearly the HDFC's understanding that it had both appeared in the action by its answer and on this motion. If this court finds that the HDFC was before this court on the City's motion but ruled against it, the HDFC respectfully relies on CPLR 2221 and seeks reargument based on the plain application of Admin Code 11-4.12.1(c and d) which required the City to act within eight months of the entry of the Judgment.

THE BALANCE OF THIS PAGE INTENTIONALLY BLANK

POINT II

**THE HDFC IS PREPARED TO REDEEM
AND SIMPLE FAIRNESS REQUIRES THAT
AFTER THREE YEARS OF LITIGATION,
IT HAVE A VERY BRIEF PERIOD TO COMPLETE ITS REDEMPTION**

21. The HDFC has taken advantage of the significant equity in the Property and is arranging to give a mortgage securing a loan in an amount in excess of $1 million which will allow it to not only redeem the Property but to make the monthly payments while it invests in the infrastructure necessary to make it self-sustaining. The Property includes significant commercial space along the east side of Amsterdam Avenue north of 142nd Street and, with the funds being borrowed, anticipates that that space will sustain the operating plan for the Property. I have a good faith belief that this transaction can be closed, and the required funds paid into court, within 21 days of the entry of this court's order.

22. The HDFC has also expressed concern, as I mentioned at the February 20, 2007, meeting with the City's representatives, about the accuracy of the asserted taxes and charges. The accuracy of these numbers is dire since the vast majority of the monies owed are interest on the taxes and charges, at exceptionally high rates, up to 18%. When I spoke to the City's Claudel Cayemittes, he opined that the Department of Finance had the capability of demonstrating the basis for the charges and the base number on which the interest was calculated.

23. These funds the HDFC is borrowing are precious for two reasons. First, they secure these families' homes. Second, they allow the continuing community work of Queen Mother Blakely and Queen Mother Bishop Pitts. This, in light of the availability of the data on the taxes and charges suggests that simple equity requires a

simple hearing, which could be obviated if proper documentation is provided. Therefore, the HDFC prays that, once it pays the entire claimed amount into court, a hearing be scheduled for the City to demonstrate the accuracy of the charges.

POINT III

### THE HDFC IS ENTITLED TO A TRO BASED ON THE LIKELIHOOD OF IT PREVAILING ON THE MERITS AND THE EQUITY IN ITS GOOD FAITH ATTEMPT TO REDEEM ITS OWNERS' HOMES

24. Based on the HDFC's legal argument, which is grounded on the City's own papers, and the equity in allowing these residents a fair chance to redeem the Property and protect their homes, this court is direct to CPLR 6301 which provides for the remedy of temporary restraint when action would "render the judgment ineffectual". The judgment that should be effected is dismissal of this proceeding against the Property and taking any further action at this stage will, undoubtedly, render that result ineffectual as the signing of a new deed will foreclosure the HDFC's owners' equity of redemption. Therefore, the HDFC respectfully asserts that all matters should be restrained until this motion can be heard and determined.

25. **There has been no prior request for this relief.**

Dated:     New York, New York
           May 21, 2007

_____
Richard Paul Stone

**Exhibit A**

Contact: Queen Mother Dr. Delois Blakely
Emails: drblakely5@aol.com –
queenmothercoffee@yahoo.com
Phone: (212) 368-3739

FOR IMMEDIATE RELEASE

# QUEEN MOTHER DR. DELOIS BLAKELY, COMMUNITY MAYOR OF HARLEM TENDS TO GRIEVING MOTHERS OVER THE FIRE TRAGEDY IN THE BRONX

**(Thursday, March 8, 2007)** – Queen Mother Dr. Delois Blakely, Community Mayor of Harlem and Harlem Women International comforts the grieving Magassa mothers over the fire tragedy and lost children in the Bronx, New York on the United Nations International Women's Day.

"This is a horrific event for the World African Community; not only a Malian misfortune, an International concern, so during this time of sadness we ask for all women all over the world to pray for the families and send their blessings for these grieving mothers on the United Nations International Women's Day."

Queen Mother Dr. Delois Blakely accompanied Mr. Cheick Diarra, Ambassador of Mali to the United Nations and the Official Government Delegation of Mali, West Africa, visiting the surviving mother and children at Lincoln and Jacobi Hospitals, touching and praying over them giving them love.

Queen Mother Dr. Blakely attended the meeting at the Islamic Cultural Center with the immediate families and the Islamic, Political Leaders and Civic Community as well as meeting with Councilwoman Helen Diane Foster and the 16th District Clergy Council discussing the action plans needed on behalf of the surviving victims of this tragedy. Afterwards, Queen Mother took a spiritual incantation at the fire site, prayed for the lost of family members and met with and consoled the grieving mother of the five (5) deceased children and other members of the family.

As the official link between the continent of Africa and the United States of America, Queen Mother Dr. Delois Blakely will continue to console the families during the planning of burial in New York City oand in Mali, West Africa as well as to ensure a resolution in this tragedy.

####

# Harlem 'mayor' is not new to mournful journeys

**BY DANIEL MASSEY**
daniel.massey@newsday.com



PHOTO CAPTION: Queen Mother Delois Blakely traveled yesterday morning to the Malian Mission in Manhattan, of the Republican Band...

She accompanied Amadou Diallo's body back to Guinea in 1999 and sat through every day of the two trials of the New York City Police officers who in 2003 shot and killed Burkina Faso native Ousmane Zongo in a Manhattan storage warehouse.

Now, as New York City's West African community copes with the deaths of nine children and a mother in last week's Bronx house fire, the honorary mayor of Harlem has her suitcase packed and her passport in hand.

Queen Mother Delois Blakely, 65, of Harlem Fixture, was born in Fort Lauderdale, Fla., and came to New York at the age of 16 to enter the Convent of the Franciscan Handmaids of Mary.

She spent 10 years as a nun before leaving the convent to earn a master's degree at Harvard University and a doctorate in education at Teachers College at Columbia University, she said.

She started the New Future Foundation, a nonprofit organization that builds bridges between young people from different cultures. Her work caught the eye of Queen Mother Audley Moore, a Harlem civil rights leader who was given that title by a king from Ghana. Blakely was Moore's assistant for 20 years — standing with her as they welcomed Nelson and Winnie Mandela to New York in 1990 — until Moore's death in 1997. Blakely then assumed the role of Queen Mother and one of her early responsibilities was to fly to Guinea to help bury Diallo.

Since Thursday, Blakely has become a constant around both Mamadou Soumare and Moussi Magassa, the fathers who lost five children in the fire. She was with Mayor Michael Bloomberg Friday and again when they sat with Gov. Eliot Spitzer on Sunday. During the funeral procession Monday, she rode in the first hearse, which carried the body of Maryam Sidibe, Soumare's wife.

Baba Jagana, a Bronx imam, accompanied Blakely to get her visa. Yesterday morning, "She feels our pain and we

# Dame du Bronx: Horreur, Tristesse, Prière et Solidarité

Queen Mother: Une américaine qui intervient tou-
jours pour et avec la communauté africaine

>> Avant de...

Le représentant du Bureau de liaison NYPD-
Communauté africaine: Sidiq wai

>> Avant de dire quoi que ce soit, je vous
demande de vous lever, de vous
joindre à moi dans une minute de silence à la mémoire de nos dis-
parus.

Le Griot, Mars 2007

**Exhibit B**

 

Harlem's Youth Internet Publication

|| Home Page | Welcome | Contents | Staff | Support Us ||

# The Mayor Of Harlem

by: Jerlena Rhodes

Photographs by: Angel Colon



The Community Mayor Of Harlem Dr. Blakely

There are many good things in Harlem and there are many bad things. It's sad that we only hear about the bad and not the good, such as "The Community Mayor Of Harlem".

"The Community Mayor Of Harlem" is an honorary position given to someone for their great support and dedication to the community. Dr. Ben Watkins was the last elected honorary Mayor in Harlem. Dr. Larry Desmond who was also elected honorary Mayor of Harlem in the past was the one who recommended Dr. Delois Blakely to be Community Mayor of Harlem. Each day Dr. Blakely deals with the needs of youth

and children. She was sworn in along with 25 other Community Mayors from other areas around the United States by Mayor Rudolph Giuliani. She was appointed by the Chief of Community Mayors. The Chief of Community Mayors is a non governmental organization and is known internationally. Community Mayors are found all over the nation.



H.E. Colonel (Rtd.) Yahya A.J.J. Jammeh President of the Republic of the Gambia and Commander-In-Chief of the armed forces.

Dr. Blakely was appointed "The Community Mayor Of Harlem" by the Chief of Community Mayors. She was sworn in by Mayor Rudolph Giuliani. Her duty as the "Community Mayor of Harlem" is to deal with the needs for youth and children as well as the special needs for children who are homeless, handicapped, and are in foster care. She is also recognized for the commitment and dedication to the children and youth of Harlem. In 1982, her title was known as the "Deputy Mayor" but in 1995 her title changed to "The Community Mayor of Harlem".

When she was a very young girl, growing up in Ft. Lauderdale, Florida, Dr. Blakely's mother died, leaving responsibility for raising five girls with her father to raise. She grew up around Simanur Indians and is part Native American and African. As a child, Ms. Blakely loved going to church to sing. When she was 14 years