old, she decided she wanted to be a missionary for the church, wanting to help people who were less fortunate. Also while growing up she was into medicine.

Dr. Blakely never finished high school and as the years went by she became interested in becoming a nun. She came to Harlem at the age of 16 in 1958 and served as a nun until 1969. Over the years, Dr. Blakely has been promoting Harlem all over the world. She worked in the Kennedy Center in the Nursery for the Nuns located next to the Bath House on 135th Street. She taught children there and later she taught in prisons. She remembers when Harlem Hospital was being built.



Dr. Blakely has a book out which is called "The Street Nun". She talks about life as a nun in Harlem.

"I want to save the world through the youth," says Dr. Blakely, "Harlem is the Black Mecca".

In Gambia, Dr. Blakely is a Gambian citizen. She is known as Dr. Fatou Delois Blakely Kinteh.

|| Home Page | Welcome | Contents | Staff ||

Back to the top

harlemlive@ aol.com

Think different.



# *Queen Mother Dr. Blakely*



## COMMUNITY MAYOR OF HARLEM, NEW YORK

Home | Biography | New York Links | Community Mayors, Inc.

### PROTECT OUR YOUTH FROM GANG VIOLENCE/OPPOSE THE DEATH PENALTY

> Statement on the Execution of Stanley "Tookie" Williams

The execution of Stanley "Tookie" Williams on December 13, 2005, was a human tragedy of monumental scope. If we are to ever overcome the scourge of gang control over the minds and lives of our youth, we must embrace those, like Tookie, who redeem themselves.

Although founding the notorius Crips gang, Tookie turned his life around. He became an educator of youths discouraging them from joining gangs. He wrote books for young people to deter them from the gang lifestyle. For this, he was nominated for the Nobel Peace Prize on several occasions.

Tookie was a role model for redemption. He was living proof that no matter what bad you have done in your life, you could change and do good. His execution does nothing to encourage others to choose the road for peace -- this is the tragedy in his execution. We have lost a powerful educator.
-- *Queen Mother Dr. Delois Blakely*

> Final Pleas Fail to Save Reformed Gang Leader by Gerard Wright, 12/14/05

STANLEY Tookie Williams, convicted murderer and the latest cause clebre in America's 30-year debate over the death penalty, was executed yesterday. more



Silent Vigil...Queen Mother Dr. Delois Blakey protests outside San Quentin with about 2000 people, at the time of execution of Williams.
Photo: *AP*

### FIGHT POLICE BRUTALITY

### WELCOME TOURISTS TO HARLEM



Dr. Blakely welcoming New York delegate Lolita Vazquez to Harlem near Apollo Theatre.
Photo: *Mikki Harris*

Dr. Blakely comforting Salimata Sanfo, the widow of slain African immigrant Ousmane Zongo, outside New York State Supreme Court in Manhattan. Police officer Bryan

### AFRICAN BURIAL GROUND NAMING CEREMONY

Queen Mother  Dr. Blakely leads  the African Burial

# Visit UPTOWNflavor.com

## March 8, 2006

### Harlem Launching Queen Mother Coffee Brand [Cafes, Specialty Shops] — uptownflavor @ 3:38 pm

Harlem Launching of Queen Mother Coffee


*On the United Nation's International Women's Day (declared and celebrated globally), Wednesday, March 8, 2006, the world renowned Queen Mother Dr. Delois Blakely, Community Mayor of Harlem carrying the legacy of of Queen Mother Moore, and other women of Harlem, will be launching "Queen Mother Coffee" — an exclusive brand of organic Ethiopian coffee blended with cardamom and cinnamon. The launching will take place in Harlem at the Uptown Juice Bar located at 54 West 125th Street (between Lenox and 5th Avenue) from,10am to 12 noon (est).*

(PRWEB) March 8, 2006 — On the United Nation's International Women's Day (declared and celebrated globally), Wednesday, March 8, 2006, the world renowned Queen Mother Dr. Delois Blakely, Community Mayor of Harlem carrying the legacy of of Queen Mother Moore, and other women of Harlem, will be launching "Queen Mother Coffee" — an exclusive brand of organic Ethiopian coffee blended with cardamom and cinnamon. The launching will take place in Harlem at the Uptown Juice Bar located at 54 West 125th Street (between Lenox and 5th Avenue) from,10am to 12 noon (est).

Queen Mother Coffee is an economic development initiative that is the "brain child" of Queen Mother Dr. Blakely and sponsored by New Future Foundsation, Inc. and Harlem Women International. The proceeds from this venture is one of the projects to Save Queen Mother Moore International House. A major goal in saving the house is to provide affordable housing and establish women's small business Incubators. Queen Mother Coffee is available in 4oz and 16 oz packages. Gift baskets are also available.

"Women's business initiatives play a major role in sustainable and economic development of communities globally," said Queen Mother Blakely. Queen Mother Coffee is set to be a demonstration model for the world. Women who are looking forward to doing business with governments, institutions and corporations such as Fourtune 500's through concessions, contracts and set asides now have a blueprint to follow.

Contact:
Lanissa Aisha
212-368-3739
www.newfuturefoundation.com

## Comments »

The URI to TrackBack this entry is: *http://uptownflavor.blogsome.com/2006/03/08/harlem-launching-queen-mother-coffee-brand/trackback/*



**Fios**
Fiber optic high-speed
Internet and TV



## Photos: Sean Bell case

1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16  17  18  19  20  21  22  23
24  25  26  27  28  29  30  31  32  33  34  35  36  37  38  39  40  41  42  43
44  45  46  47  48  49  50  51  52  53  54  55  56  57  58  59  60  61  62  63
64  65  66  67  68  69  70  71  72  73  74  75  76  77  78  79  80  81  82  83
84  85  86  87  88  89  90  91  92  93  94  95  96  97  98  99  100  101  102
103  104  105  106  107  108  109  110  111  112  113  114  115  116  117  118
119  120  121  122  123  124  125  126  127  128  129  130  131  132  133  134
135  136  137  138  139  140  141  142  143  144  145  146  147  148  149  150
151  152  153  154  155  156  157  158  159  160  161





Dr. Delois N. Blakely,
the self-proclaimed
community mayor of
Harlem, left, listens in
as U.S. Rep. Charles
Rangel, D-N.Y., speaks
to reporters outside City
Hall in New York,
Monday, Nov. 27, 2006,
after attending a
meeting of community
leaders in the wake of
the weekend shooting
death of Sean Bell, an
unarmed bridegroom.
(KATHY WILLENS,
Associated Press)
Nov 27, 2006

**BUY a
Newsday photo**

**Exhibit C**

the State of New York,
County of New York, at the Court House
located at 60 Centre Street, in the Borough of
Manhattan, City and State of New York, on
the 28 day of July, 2005.

P R E S E N T :

HON: **JANE S. SOLOMON**

Justice.

------------------------------------------------x

IN REM TAX FORECLOSURE ACTION NO. 46

BOROUGH OF MANHATTAN

SECTIONS 3, 6, 7 AND 8

TAX CLASSES 1 AND 2

------------------------------------------------x

**JUDGMENT OF**
**FORECLOSURE PURSUANT**
**TO ADMINISTRATIVE CODE**
**§§ 11-412 AND 11-412.1**

Index No. 580001/2004

Upon the List of Delinquent Taxes duly verified and duly filed herein pursuant to

Section 11-405 of the Administrative Code of the City of New York ("Admin. Code") in the

Office of the Clerk of New York County on January 9, 2004; and upon reading and filing the

affirmation and affidavits of regularity referred to below, attesting to the performance of the acts

required by the provisions of Title 11, Chapter 4 of the Administrative Code; and upon due proof

that the Notice of Foreclosure was duly published after the filing of such List once a week for six

weeks pursuant to Admin. Code § 11-406 in the City Record, the New York Law Journal, and

the New York Post, the latter two newspapers duly designated for that purpose by the

Commissioner of Finance of the City of New York; and upon due proof of the posting of such

Notice of Foreclosure; and upon due proof of the mailing of the Notice of Foreclosure to each

owner of property affected by the List of Delinquent Taxes, any mortgagee thereof, or any

registration card pursuant to the provisions of Admin. Code §§ 11-310 and 11-417; and upon due proof that the Notice of Foreclosure was mailed to the name and address, if any, appearing in the latest annual record of assessed valuations of every property affected by the List of Delinquent Taxes as to which a registration card was not filed; and it appearing that all of the procedures and proceedings required by the provisions of Title 11, of Chapter 4 of the Administrative Code have been duly performed; and upon reading and filing the affidavit of regularity of Martha E. Stark, Commissioner of Finance of the City of New York, sworn to on June 28, 2005, showing that certain parcels have been redeemed pursuant to the provisions of Admin. Code § 11-407 and that certain parcels have had the taxes thereon paid, cancelled, or liquidated, or are subject to an order in a bankruptcy proceeding, or have been condemned or included in error and have therefore been withdrawn pursuant to the provisions of Admin. Code § 11-413; and upon reading and filing the affidavit of Shaun Donovan, Commissioner of Housing Preservation and Development, sworn to June 29, 2005; and upon reading and filing the affirmation of regularity of Andrea Feller, Assistant Corporation Counsel, dated June 29, 2005, showing that this action must be severed as to certain parcels enumerated in said affirmation as to which litigation, timely answers, or installment agreements are still pending pursuant to the provisions of Admin. Code § 11-409; and the Court having made and filed its decision dated _July 28_, 2005, containing a statement of the facts found and the conclusions of law thereon, showing the compliance by the City of New York with all of the jurisdictional requirements of Title 11, Chapter 4 of the Administrative Code;

NOW, on the motion of MICHAEL A. CARDOZO, Corporation Counsel, attorney for the City of New York, it is

2

is hereby further

ORDERED, ADJUDGED AND DECREED, that final judgment is herein granted to the City of New York with respect to the parcels of class one and class two real property listed in Exhibit "A," annexed hereto, which designates each parcel by serial number as the same appears on the List of Delinquent Taxes, and section, block and lot numbers as the same appear on the Tax Map of the City of New York, for the County of New York and in the aforesaid List of Delinquent Taxes; and it is

ORDERED, ADJUDGED AND DECREED, that the City of New York is the owner and holder of unpaid tax liens affecting the parcels of real property hereinafter described, in Exhibit "A" in the amounts with interest thereon as shown in the List of Delinquent Taxes referred to above; and it is hereby further

ORDERED, ADJUDGED AND DECREED, that this judgment of foreclosure is discontinued with regard to the parcels of class one and class two real property, located within Tax Map Sections 3, 6, 7 and 8 of New York County, which have been redeemed pursuant to Admin. Code § 11-407, and which parcels are described in Exhibit "B," annexed hereto, and it is hereby further

ORDERED, ADJUDGED AND DECREED, that this judgment of foreclosure is severed, without prejudice, with regard to the parcels of class one and class two real property, located within Tax Map Sections 3, 6, 7 and 8 of New York County, which are listed in Exhibit "C," as to which parcels litigation, timely answers, or installment agreements are still pending or have been withdrawn for enforcement by way of a tax lien sale conducted pursuant to Title 11, Chapter 3 of the Administrative Code and that the City of New York is hereby given leave to

3

caption of this action; and it is hereby further

ORDERED, ADJUDGED AND DECREED, that a sale of any of the parcels of property hereinafter described is dispensed with and the Commissioner of Finance of the City of New York is hereby authorized to prepare and execute a deed, or deeds, conveying either to the City of New York, or with respect to the class one and class two parcels, to the City or to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development, full and complete title to said parcels as described herein; and it is hereby further

ORDERED, ADJUDGED AND DECREED, that upon the execution of said deed or deeds to the City or to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development, the grantee shall have possession and shall be seized of an estate in fee simple absolute in such lands, and all persons, including the State of New York, infants, incompetents, absentees and nonresidents who may have had any rights, title, interest, claim, lien or equity of redemption, in or upon such lands shall be barred and forever foreclosed of all such rights, title, interest, claim, lien or equity of redemption as provided by Admin. Code §§ 11-412 and 11-412.1, except as otherwise provided by Admin. Code §§ 11-424 and 11-424.1 ; and it is hereby further

ORDERED, ADJUDGED AND DECREED, that any such conveyance of class one and class two real property to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development shall be for an existing use; and it is further

ORDERED, ADJUDGED AND DECREED, that unless and until the Commissioner of Finance executes a deed conveying parcels of class one and class two real

4

property pursuant to Admin. Code §§ 11-412.1 and 11-412.2 to the City of New York or to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development, the owners of such lands shall continue to have all of the rights, liabilities, responsibilities, duties and obligations of an owner, including, but not limited to, maintaining such lands in compliance with the housing maintenance, building and fire codes and all other applicable law; provided, however, that upon entry of judgment, HPD or its authorized agent may have access to the class one and class two parcels herein described for the purposes of conducting inspections; and it is hereby further

**ORDERED, ADJUDGED AND DECREED**, that, with respect to any and all parcels that are not conveyed to the City of New York or to the City or a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development (in the case of or with respect to the class one and class two parcels) within the statutory eight month period commencing upon entry the judgment pursuant to Admin. Code §§11-421.1 (c), (d) and (i) (unless the statutory period is tolled or extended by operation of law), the Commissioner of Finance shall direct the Corporation Counsel to prepare and cause to be entered an order discontinuing the instant in rem foreclosure proceeding and vacating and setting aside the final judgment as to those parcels.

ENTER

FILED

AUG 11 2005

COUNTY CLERK'S OFFICE
NEW YORK

J.S.C.

DATE 9/2i/05
I hereby certify that the foregoing paper is a true copy of the original thereof, filed in my office on the day of 8/11/05

JANE S. GOLDMAN County Clerk and clerk of the Supreme Court of New York County NO FEE   OFFICIAL USE

CLERK

5

**Exhibit D**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------- X

IN REM TAX FORECLOSURE ACTION NO. 46

BOROUGH OF MANHATTAN

SECTIONS 3, 6, 7 AND 8

TAX CLASSES 1 AND 2

------------------------------------------------------------- X

**AFFIDAVIT OF**
**SHAUN DONOVAN**

Index No. 580001/2004

STATE OF NEW YORK    )
                       :  SS.:
COUNTY OF NEW YORK  )

**SHAUN DONOVAN,** being duly sworn, deposes and says:

1.     I am the Commissioner of the New York City Department of Housing Preservation and Development ("HPD"). I am fully familiar with the matters set forth herein. I submit this affidavit to explain to the Court the City's third party transfer program as authorized by Title 11, Chapter 4 of the New York City Administrative Code ("Admin. Code") as amended by Local Law 37 of 1996 and Title 28, Chapter 8 of the Rules of the City of New York (hereinafter the "Third Party Transfer Program" or "Program"). The proposed judgment of in rem foreclosure in the above-referenced action would authorize the City to implement the Third Party Transfer Program for the residential properties included in the Judgment.

2.     The Third Party Transfer Program allocates the City's limited resources to anti-abandonment and community development activities, rather than property management and maintenance. The Program allows HPD to protect tenants, marshal community resources to

support private housing, and ensure that the City's housing stock remains in private ownership.

      3.     Legislation enacted in 1996 and 1997 modified the City's options and procedures for real property tax enforcement, by creating the Third Party Transfer Program as well as the City's current tax lien sale program. The goal of the Third Party Transfer Program was to provide flexibility, speed and cost-effectiveness as the City intervenes to leverage community resources and prevent abandonment. While the Third Party Transfer provisions of the law do not alter the City's ability to take title to these properties through a traditional in rem foreclosure, it authorizes the Court to give the Commissioner of the New York City Department of Finance ("Finance" or "DOF") the authority to transfer residential class one and class two properties from the delinquent taxpayer to a third party without the City taking title to the property. <u>See</u> Administrative Code § 11-412.1. The proposed judgment in this case gives the Commissioner this authority.

      4.     The Third Party Transfer Program is particularly tailored to properties which have been abandoned or neglected, or are defined by law as "distressed."[1] Such properties often require intervention before they can be restored fully to the tax rolls. Prior to commencement of third party transfer, HPD's Division of Anti-Abandonment conducts

---

[1] Distressed property is defined in the statute as any residential class one and two property that is subject to a tax lien with a lien to market value ratio equal to or greater than 15% and with an average of five or more hazardous or immediately hazardous housing code violations per unit, or with emergency repair liens in an amount greater than one thousand dollars. <u>See</u> Administrative Code §§ 11-401(4) and 11-404.1(a). Pursuant to Admin. Code §§11-401(c) and 11-401.1(a), distressed properties must be excluded from tax lien sales, which are available to the City for tax delinquencies on viable residential and commercial properties. Properties included in tax lien sales, if ultimately foreclosed, are auctioned by the new lien holder to the highest bidder. See Admin. Code §11, Chapter 3 (Local Laws 26 and 37 of 1996 and Local Law 69 of 1997).

2

extensive owner outreach to encourage owners to pay their tax arrears and to seek assistance to deal with any physical or management problems affecting a building's underlying viability.

     5.    Unlike the viable properties that are auctioned to the highest bidder in tax lien sales, the properties in the Third Party Transfer Program are in generally poor condition and, therefore, less marketable. Accordingly, HPD selects the new owners of the third party transfer properties according to guidelines provided in the statute. See Admin. Code § 11-412.1(b)(2); RCNY §8-03. The rules provide that transfer must be made to third parties deemed qualified and designated by HPD. HPD may designate such parties pursuant to criteria such as residential management experience; financial ability; rehabilitation experience; ability to work with government and community organizations; neighborhood ties; and whether the third party is a neighborhood-based for-profit individual or organization, a not-for-profit organization or a responsible legal tenant. HPD selects the eligible new owners and generally assists in funding any required rehabilitation through its loan program. Thus, under third party ownership, properties will be rehabilitated and managed by responsible owners, add to the City's stock of affordable housing and eventually be restored to the City's tax rolls.

     6.    The statute also provides for City Council review of the Third Party Transfer. Prior to the execution of a deed conveying title to a third party deemed qualified and designated by HPD and pursuant to Admin. Code § 11-412.2, the Commissioner of Finance must notify the City Council of the proposed conveyance. The Council may disapprove of the transfer within forty-five days of notification, otherwise the transfer is deemed approved.

7.    Owners, mortgagees, and other interested parties retain the right to redeem their property during the first four months after the final judgment is entered. Although not required by Administrative Code § 11-412.1, as set forth fully in the affidavit of regularity of Martha E. Stark, Commissioner of Finance, the City will send post judgment notices to owners and parties who have filed cards requesting notification of delinquent property taxes under Administrative Code § 11-406(c).

8.    If the Commissioner of Finance has not transferred title to a third party deemed qualified and designated by HPD or to the City within the statutory period after judgment of foreclosure is entered, the in rem action is to be discontinued with respect to any parcel not transferred, in which case the delinquent owner will remain the owner of record. For the City to then take title or transfer title to a third party deemed qualified and designated by HPD, the Commissioner of Finance must initiate a new tax foreclosure proceeding.

9.    In another modification of the in rem law, the Commissioner of Finance was given the authority to offer incentive installment agreements to owners of class one or class two buildings in an in rem action. The new agreements offer a lower interest rate on the delinquent charges depending on the down payment made. The incentive installment agreements were also made self liquidating, unlike the in rem installment agreements that existed prior to April 1995, so that owners do not face a balloon payment at the end of the term. These two changes made it more likely that owners would successfully pay off their installment agreement, restore their property to the tax rolls and keep it in private hands. See Administrative Code § 11-409.

10.    Another significant change in the in rem law authorized the Commissioner of Finance to target the parcels that are included in the "list of delinquent taxes," which is

4

prepared prior to the commencement of an in rem foreclosure action, to "all parcels, or all parcels within a particular class or classes, that are within a particular borough or [portion of a borough] section of a tax map or portion of a section of a tax map of the city and on which there are tax liens subject to foreclosure... provided... that no such portion shall be smaller than a block....". See Administrative Code § 11-405(a). This provision differs from the old law which provided that when the City instituted an in rem foreclosure action it name all properties located in the borough that are subject to foreclosure. In addition, Administrative Code § 11-412.1, entitled "Special procedures relating to final judgment and release of class one and class- two property", now allows the City to go to judgment on these property classes independent of other types of properties that may have been included initially in a particular in rem action. The proposed Judgment in the case at bar therefore covers only residential properties on certain blocks within the Borough of Manhattan. These changes made it possible for HPD to marshal its resources to turn around neighborhoods by focusing its efforts so that all buildings in poor condition in one area can be rehabilitated at once, making it more likely that the Third Party Transfer Program will bring about meaningful change for all the residents of the targeted area.

11.    The instant in rem action was commenced on January 9, 2004 and, as set forth fully in the affidavit of regularity of Martha E. Stark, Commissioner of Finance, DOF sent notices to all affected owners and other parties as required by law and complied with all the necessary statutory pre-requisites for obtaining an in rem foreclosure judgment in this action. Accordingly, the Commissioner of Finance is seeking the Court's approval in the instant judgment to transfer title to the City or to third parties deemed qualified and designated by HPD

5

of those deteriorated residential class one and class two properties situated in Manhattan Tax Map Sections 3, 6, 7 and 8 which are subject to foreclosure in this in rem proceeding.

    12.    The proposed judgment references provisions of the new in rem law and is consistent with the provisions of Administrative Code § 11-412.1. The modified in rem law is one of the most significant legislative initiatives to reform the City's housing preservation and community development efforts and its tax enforcement process. After judgment is entered, the residential buildings will be transferred in the City's Third Party Transfer Program to new owners who have demonstrated they have the resources and ability to fix the properties, remedy code violations and manage them effectively over the long term. I respectfully request that the Court grant expedited relief in this matter.

SHAUN DONOVAN

Sworn to before me this
27th day of June, 2005

NOTARY PUBLIC

MATTHEW ELLIOTT SHAFIT
Notary Public, State of New York
No. 02SH12318
Qualified in New York County
Commission Expires June 12, 2006

6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 58000I/04

IN REM TAX FORECLOSURE ACTION NO. 46

BOROUGH OF MANHATTAN

SECTIONS 3,6, 7 AND 8

TAX CLASSES 1 AND 2

**AFFIRMATION OF REGULARITY WITH ATTACHED EXHIBITS**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for the City of New York*
*100 Church Street, Room 3-235.*
*New York, N.Y. 10007*

*Of Counsel: Andrea Feller*
*Tel.: (212) 7889555*
*NYCLIS No.*

*Due and timely service is hereby admitted.*

*New York, N.Y. ..................................*

*.................................. 200 . . .*

*Attorney for..................................*

*.................................. Esq.*

**Exhibit E**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------- x

IN REM TAX FORECLOSURE ACTION NO 46

BOROUGH OF MANHATTAN

SECTIONS  3, 6, 7 AND 8

TAX CLASSES 1 AND 2

------------------------------------------------------------- x

**AFFIDAVIT OF
REGULARITY**

Index No. 580001/2004

STATE OF NEW YORK        )
                         : SS.:
COUNTY OF NEW YORK   )

**MARTHA E. STARK,** being duly sworn, deposes and says:

1.      I am the Commissioner of the Department of Finance of the City of New York ("Finance" or "DOF").  As such, I am familiar with the facts set forth herein.  I submit this affidavit to (1) explain the proposed judgment in this in rem tax foreclosure proceeding, and (2) to demonstrate that the City complied with all the necessary statutory pre-requisites for obtaining an in rem foreclosure judgment pursuant to Title 11, Chapter 4 of the Administrative Code of the City of New York ("Admin. Code").

## THE PROPOSED JUDGMENT IN THIS IN REM PROCEEDING

2.      In the instant foreclosure proceeding, the City seeks a judgment of foreclosure pursuant to Admin. Code § 11-412 and § 11-412.1 upon all parcels of class one, class two and class four real property located within Sections 3, 6, 7 and 8 on the Tax Map of the City of New York for the Borough of Manhattan and subject to this in rem tax foreclosure action.

3.      The proposed Judgment authorizes the Commissioner of Finance to deed properties from the delinquent taxpayer either to the City of New York or, with respect to the class one and two parcels, to the City or to a third party deemed qualified and designated by the

Commissioner of Housing Preservation and Development ("HPD"), conveying full and complete title to said parcels. Pursuant to Admin Code § 11-412.1, the City need not take title to class one and two parcels, but can transfer title directly to a third party deemed qualified and designated by the Commissioner of HPD. See also Affidavit of Shaun Donovan, Commissioner of HPD, sworn to on June 29, 2005, annexed hereto as Exhibit "G".

4.      Pursuant to law, the judgment provides that the Commissioner of Finance has eight months, commencing from the date the judgment is entered, in which to transfer foreclosed parcels to either the City or to a third party deemed qualified and designated by the Commissioner of HPD. See Admin. Code § 11-412.1(c). For the first four months following the date of entry, owners, mortgagees and other interested parties have the opportunity to redeem their properties. See Admin. Code § 11-4.12.1(d). During the four month mandatory redemption period, and unless or until the Commissioner of Finance executes a deed to either the City or to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development, existing owners retain possession and ownership of their properties and are responsible for their operation and management. See Admin. Code § 11-412.1(c).

5.      Following the expiration of the four-month redemption period, the Commissioner of Finance then has an additional four months to convey the properties to either the City or to third parties deemed qualified and designated by the Commissioner of Housing Preservation and Development. See Admin. Code § 11-412.1(c). If the Commissioner of Finance does not transfer title within the eight month period, the in rem action is discontinued with respect to the parcels not so transferred, and title remains with the owner. In that case, the

2

City must recommence a tax foreclosure proceeding in order to take or transfer title. See Admin. Code § 11-412.1(i).

6.    The Commissioner of Finance must notify the City Council prior to the execution of a deed conveying title to a third party deemed qualified and designated by the Commissioner of HPD. See Admin. Code § 11-412.2. If the Council disapproves of the transfer, it must act by local law within forty-five days of notification, otherwise the transfer is deemed approved. Id. The period of notification to the City Council of a third party transfer tolls the eight month transfer period under Admin. Code § 11-412.1(c).

7.    Although not required by Admin. Code § 11-412.1, the City will send post judgment notices by first class mail to all parties who have filed owner registration or in rem notification cards, or who are otherwise entitled to notice by virtue of Admin. Code § 11-406(c). Such notice will advise owners of the four month redemption period commencing on the date of entry of the judgment.

## THE CITY COMPLIED WITH ALL THE STATUTORY PRE-REQUISITES

8.    The City complied with all the necessary statutory procedures for the commencement of this in rem tax foreclosure action. On January 9, 2004, I caused to be filed in the office of the Clerk of the County of New York two duplicate verified Lists of Delinquent Taxes. These Lists included all parcels of property designated on the Tax Map of the City of New York for the Borough of Manhattan, Sections 3, 6, 7 and 8 affected by tax liens, as such tax liens are defined by Admin. Code § 11-401, held and owned by the City which on the date of filing were unpaid for the period required by § 11-404. The Lists contained as to each parcel included therein the following:

(a)    A serial number;

3

(b)    A brief description sufficient to identify each parcel affected by tax liens by stating the lot, block and section on the Tax Map and street and street number if there be such; and

(c)    A statement of the amount of each tax lien upon each parcel contained in said List of Delinquent Taxes, including those due and unpaid for less than the period required by Admin. Code § 11-404, together with the date or dates from which interest and penalties should be computed.

9.    On January 9, 2004, a certified copy of the List of Delinquent Taxes was filed in the following places:

(a)    In the Central Office of the Taxpayer Assistance, Planning and Payment Operations Division of the Department of Finance of the City of New York, 25 Elm Place, 4th floor Brooklyn, New York;

(b)    In the Office of the Corporation Counsel of the City of New York, Tax and Bankruptcy Litigation Division, 100 Church Street, New York, New York 10007; and

(c)    In the Office of the Manhattan Business Center of the Department of Finance, 66 John Street, 2nd floor, New York, New York 10038.

10.    As set forth in the affidavits of Annette Malatesta, sworn to on June 21, 2005 and Donald O'Connell, sworn to on June 27, 2005 (collectively, "Affidavits of Mailing"), pursuant to Admin. Code § 11-406(c), on or before the date of the first publication of the Notice of Foreclosure, a copy of the Notice of Foreclosure was mailed to each and every owner, mortgagee, lienor, encumbrancer or other person with an interest in such parcel entitled to receive such notice by virtue of having filed an owner's registration card or an in rem registration card pursuant to Admin. Code §§ 11-416 or 11-417, and with regard to any parcel as to which such cards were not filed, a copy was mailed to the name and address, if any, appearing in the

latest annual record of assessed valuations.  Copies of the Affidavits of Mailing together with the Notice of Foreclosure are annexed hereto as Exhibit "B".

11.    As set forth in the Affidavits of Posting of David Schloss and Jesus M. Martinez, annexed hereto collectively as Exhibit "D", on or before January 30, 2004 a copy of the Notice of Foreclosure was posted in each of the following conspicuous places:

a.    The public notices bulletin board in the Office of the Commissioner of Finance located in the corridor on the fifth floor, Municipal Building, Chambers and Centre Streets, Borough of Manhattan, New York, New York;

b.    On the bulletin board of the City Collector Office, for the Borough of Manhattan, 66 John Street, 2nd floor, New York, New York;

c.    The Office of the Manhattan Borough President, 1 Centre Street, New York, New York;

d.    The Supreme Court, New York County, 60 Centre Street, New York, New York;

e.    The Central Office of the City Collector of the Department of Finance, 25 Elm Place, Brooklyn, New York;

f.    On the wall in the public interviewer area, Department of Housing Preservation and Development;

g.    The Civil Court, Kings County, New York County, 111 Centre Street, New York, New York; and

h.    City Register's Office, New York County, 66 John Street 13th floor, New York, New York.

12.    Commencing on January 30, 2004, I caused a copy of said Notice of Foreclosure to be published at least once a week for six (6) weeks, pursuant to Admin. Code § 11-406, in the City Record, the New York Law Journal, and the New York Post.  The New York Law Journal and the New York Post are the two newspapers designated for that purpose by the

Commissioner of Finance. Copies of the Affidavits of Publication in (a) the <u>New York Law Journal</u>, signed by Kimberly Darcy and sworn to on March 5, 2004, (b) the <u>New York Post</u>, signed by Byron Stevens and sworn to on March 9, 2004; and (c) the <u>City Record</u>, signed by Eli Blachman and sworn to May 11, 2005, are collectively annexed hereto as Exhibit "C."

      13.    The Notice of Foreclosure fixed April 9, 2004 as the last date for redemption, which date was at least ten weeks from the date of the first publication of the Notice of Foreclosure pursuant to Admin. Code § 11-407(a). The Notice of Foreclosure also fixed April 29, 2004 as the last date for the service of an answer, which date was at least twenty days from the last date of redemption, pursuant to Admin. Code §11-409(a).

      14.    As set forth in the accompanying affirmation of the Assistant Corporation Counsel, as to certain parcels included in the List of Delinquent Taxes, timely answers have been interposed and are still to be disposed of, or litigation is pending, or installment agreements have been entered into for payment of delinquent charges. As a result, these parcels must be severed from this action pursuant to Admin. Code § 11-409.

      15.    Certain parcels contained in the List of Delinquent Taxes were also redeemed from the time of the initial redemption period up until the preparation of the proposed final judgment by the Corporation Counsel. I thereafter issued Certificates of Redemption which were filed by the Corporation Counsel with the Clerk of New York County. As a result the action must be discontinued with respect to those parcels pursuant to Admin. Code § 11-407.

      16.    I also issued Certificates of Withdrawal to the Corporation Counsel for filing with the Clerk of New York County, pursuant to Admin. Code § 11-413, respecting those parcels as to which this action could not be maintained and had to be discontinued, and the <u>lis pendens</u> pertaining thereto had to be cancelled, because said parcels had been included in error,

or were previously condemned or acquired by the City of New York, the State of New York, the United States of America, or other governmental agencies, or by a foreign nation, or are subject to an order in a bankruptcy proceeding, or because the tax liens affecting the parcels have been paid, cancelled, or assigned, or because payment sufficient to liquidate the tax items which rendered the parcels eligible for inclusion in the action were received prior to the filing date of such action but the payments either were not reported in time to remove the parcels from the List of Delinquent Taxes prior to the filing thereof, or were made by uncertified checks which did not clear for payment until after the filing, or were inadvertently applied to a subsequent charge and thereafter transferred to liquidate the eligible tax items, or because a late redemption payment was made pursuant to Admin. Code § 11-407, or because the City withdrew the parcels for enforcement via a tax lien sale pursuant to Title 11, Chapter 3 of the Administrative Code. As a result, the action must be discontinued with respect to those parcels pursuant to Admin. Code § 11-413. A list from Finance's Fairtax Report of all properties severed or removed from this action is annexed hereto as Exhibit "E."

17. The City, having thus complied with all of the jurisdictional requirements of Title 11, Chapter 4 of the Administrative Code, is accordingly entitled to a judgment of foreclosure pursuant to § 11-412.1 of the Admin. Code upon all parcels of class one and class two real property and pursuant to § 11-412 of the Admin. Code upon all parcel of class four real property, located within Sections 3, 6, 7 and 8 on the Manhattan Tax Map which were not redeemed, or withdrawn and as to which timely answers, litigation, or installment agreements are not still pending. A list from Finance's Fairtax Report of all properties to be included in the judgment is annexed hereto as Exhibit "F."

18. I have no knowledge or information, and do hereby further state that it is impossible to ascertain as to whether any owner of any parcel of real property contained in the List of Delinquent Taxes filed herein, or any mortgagee thereof, or any person having any claim or lien thereon or interest therein, is an infant or incompetent, or is in military service.

19. The proposed Judgment's adjudication clauses request that the Court:

a.  Direct that the City of New York is the owner and holder of unpaid tax liens affecting the parcels of real property hereinafter described, in the amounts with interest thereon as shown in the List of Delinquent Taxes on file herein;

b.  Direct that each property as to which an answer, litigation or an installment agreement is now pending, be severed from this proceeding and that the City of New York have leave to proceed against said properties in the manner described by law;

c.  Direct that a sale of any of the parcels of property hereinafter described is dispensed with and the Commissioner of Finance of the City of New York is authorized to prepare and execute a deed, or deeds, conveying either to the City of New York, or with respect to the class one and two parcels, to a the City or to third party deemed qualified and designated by the Commissioner of Housing Preservation and Development, full and complete title to said parcels as described herein;

d.  Authorize the award of possession of any parcel or parcels of class one and class two real property located within Manhattan Tax Map Sections 3, 6, 7 and 8 and described in the List of Delinquent Taxes, and not withdrawn or redeemed and as to which an answer, litigation or an installment agreement is not pending as provided by law and authorizing the Commissioner of Finance to prepare, execute and cause to be recorded a deed, or deeds, conveying either to the City or with respect to the class one and two parcels, to the City or to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development full and complete title to such lands;

8

e.   Decree that upon the execution of said deed or deeds to the City of New York or to a third party, the City or the third party shall have possession and shall be seized of an estate in fee simple absolute in such lands, and all persons, including the State of New York, infants, incompetents, absentees and nonresidents who may have had any rights, title, interest, claim, lien or equity of redemption, in or upon such lands shall be barred and forever foreclosed of all such rights, title, interest, claim, lien or equity of redemption except as provided by §§ 11-424 and 11-424.1;

f.   Direct that any such conveyance of class one or class two real property to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development shall be for an existing use;

g.   Decree that unless and until the Commissioner of Finance executes a deed conveying parcels of class one and class two real property pursuant to §§ 11-412.1 and 11-412.2 to the City of New York or to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development, the owners of such lands shall continue to have all of the rights, liabilities, responsibilities, duties and obligations of an owner, including, but not limited to, maintaining such lands in compliance with the housing maintenance, building and fire codes and all other applicable laws, however, that upon entry of judgment, HPD or its authorized agent may have access to the class one and class two parcels herein described for the purposes of conducting inspections; and

h.   Direct the Commissioner of Finance to direct the Corporation Counsel to prepare and cause to be entered an order discontinuing the instant in rem foreclosure proceeding and vacating and setting aside the final judgment with respect to any and all parcels that are not conveyed to the City of New York, or with respect to the class one and two parcels, to the City or to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development within the statutory eight month period

commencing upon entry the judgment pursuant to Admin. Code §§ 11-421.1, unless the statutory period is tolled or extended by operation of law.


MARTHA E. STARK
Commissioner of Finance
City of New York


Sworn to before me this
20th day of June, 2005

NOTARY PUBLIC

DANIEL POINSON
Notary Public, State of New York
No. 24-3121788
Qualified in Kings County
Commission Expires 4/30/07

10

**Exhibit F**

# TELEFACSIMILE COVER SHEET

---

### RICHARD PAUL STONE, ESQ.
14 PENN PLAZA - SUITE 1806
225 WEST 34TH STREET
NEW YORK, NEW YORK 10122
TELEPHONE 212.564.8220 * TELEFACSIMILE 212.244.0355
e-mail rps@stonecounsel.com

---

**Date:**        April 19, 2007                **Pages Including Cover: 4**

**By e-mail to Frank Pollina, Motion Support, Supreme Court**

| | | |
|---|---|---|
| **Leslie Spitalnick, Esq.** | **Corporation Counsel** | **(212) 788-8871** |
| **Joseph Medic, Esq.** | **Posner & Posner** | **(212) 385-2061** |

**Re: 477 West 142nd Street HDFC**

PLEASE TAKE NOTICE THAT THIS IS A CONFIDENTIAL COMMUNICATION INTENDED FOR THE RECIPIENT IDENTIFIED ABOVE.  IF YOU RECEIVE THIS IN ERROR, PLEASE RETURN IT TO THE SENDER, DESTROY WHAT YOU HAVE RECEIVED AND CALL TO INFORM THE SENDER YOU HAVE DONE SO.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------- x

IN REM TAX FORECLOSURE ACTION NO. 46   :   Index No: 580001/2004

   :

BOROUGH OF MANHATTAN   :   Premises

   :   477 West 142nd Street

SECTIONS 3, 6, 7 AND 8   :   (Block 2058 - Lot 29)

   :

TAX CLASSES 1 AND 2   :   AFFIRMATION

-------------------------------------------------------- x

      Richard Paul Stone, an attorney licensed to practice before the courts of the State of New York, affirms as follow subject to the penalties for perjury.

      1.     I submit this affirmation to request a brief adjournment of the City's motion, returnable in room 130 on April 20, 2007, since I am actually engaged Friday, April 20, 2007, on two arguments in the Appellate Division, Second Department: *Sevdinoglou v. Sevdinoglou* App Div No: 2005-04579 and *Conley v. City of New York* - App Div No: 2005-11039.

      2.     In or about January 20, 2007, I was engaged as counsel for defendant 477 West 142nd Street Housing Development Fund Corporation (the "HDFC"). I came to the HDFC through a community service agency, Heritage Health & Housing, Inc, which agreed to pay my fee as a community benefit. I had understood, *until this afternoon*, I was being substituted as counsel for the HDFC.

      3.     In late January, I met repeatedly with Queen Mother Delois Blakely, PhD on behalf of the HDFC and then met with the City's representatives on February 20, 2007, to discuss a possible resolution. I met again with Queen Mother Blakely to discuss strategy, emphasizing the shortage of time in the face of this motion.

      4.     Within days of my meeting with HPD three things happened:

(1) The President of the HDFC, Queen Mother Bishop Shirley Pitts engaged the firm of

Posner & Posner to represent her; I did not understand this since she is not a defendant and her interest was the same as that of the HDFC. (2) In a totally unrelated event, Heritage Health & Housing, Inc. informed me that it would not be able to continue paying my bill; I spoke with Queen Mother Blakely and advised her that I would work for free until they could make arrangements to confirm new counsel; (3) I came down with pneumonia and was unable to work in any significant capacity for two weeks.

5.      When I returned to work, I spoke with Joseph Medic, Esq. of Posner & Posner and understood that they would be taking over the representation of the HDFC, since their work for Queen Mother Pitts would protect both parties. Repeatedly discussing substitution of counsel, I have cooperated in every way with Mr. Medic in his preparation of opposition to the pending motion. On April 9th, I sent him a consent to change attorney and understood that he would arrange for its execution by his new client. I also understood that opposition papers were being submitted on behalf of the HDFC and Queen Mother Pitts, who is not a party individually. At no point have I been advised that Posner & Posner would not be protecting the interests of the HDFC.

6.      This afternoon, I received reply papers from counsel for the City. She indicates therein that opposition was served only on behalf of Queen Mother Pitts. I have never even seen the opposition papers, which made sense to me since I was outgoing counsel. I do not know whether the papers are intended to protect the HDFC.

7.      I take seriously my responsibility to every client, and particularly this HDFC. The tenants are good people who have serious claims to protect. However, I have had no doubt for more than a month that I had been replaced. In this unusual circumstance, I respectfully request a brief adjournment to allow me to prepare opposition to the City's motion *pro bono*. I cannot be in court on the 20th because of my

oral argument commitment in the Second Department. While I know I would receive every courtesy from Ms. Spitalnick of Corporation Counsel, I hesitate to ask in this circumstance.

Dated:     New York, New York
           April 19, 2007


                            **Richard Paul Stone, Esq.**

                            14 Penn Plaza - Suite 1806
                            225 West 34th Street
                            New York, New York 10122
                            (212) 564-8220

**SENDING REPORT**

Apr. 19 2007 04:17PM

YOUR LOGO    : CAROLYN SANCHEZ, ESQ.
YOUR FAX NO. : 12122440355

| NO. | OTHER FACSIMILE | START TIME | USAGE TIME | MODE | PAGES | RESULT |
|-----|-----------------|------------|------------|------|-------|--------|
| 01  | 12127888871     | Apr.19 04:15PM | 02'05 | SND | 04 | OK |

TO TURN OFF REPORT, PRESS 'MENU' #04.
THEN SELECT OFF BY USING '+' OR '-'.

FOR FAX ADVANTAGE ASSISTANCE, PLEASE CALL 1-800-HELP-FAX (435-7329).

**SENDING REPORT**

Apr. 19 2007 04:12PM

YOUR LOGO     : CAROLYN SANCHEZ, ESQ.
YOUR FAX NO. : 12122440355

| NO. | OTHER FACSIMILE | START TIME | USAGE TIME | MODE | PAGES | RESULT |
|-----|-----------------|------------|------------|------|-------|--------|
| 01 | 12123852061 | Apr.19 04:10PM | 01'16 | SND | 04 | OK |

TO TURN OFF REPORT, PRESS 'MENU' #04.
THEN SELECT OFF BY USING '+' OR '-'.

FOR FAX ADVANTAGE ASSISTANCE, PLEASE CALL 1-800-HELP-FAX (435-7329).

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                    Ind. No: 580001/2004
IN REM TAX FORECLOSURE ACTION NO. 46

BOROUGH OF MANHATTAN

SECTIONS 3, 6, 7 AND 8

TAX CLASSES 1 AND 2

ORDER TO SHOW CAUSE
AND AFFIRMATION

RICHARD PAUL STONE, ESQ.
14 Penn Plaza - Suite 1806
225 West 34th Street
New York, New York 10122
Telephone 212.564.8220   Telefacsimile 212.244.0355
e-mail rps@stonecounsel.com