# Exhibit M

07 CV

JUDGE COTE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------X

DR. DELOIS BLAKELY, BISHOP SHIRLEY PITTS,    Civil Action No. _____
MS. MARGARET CALLENDER,

    Plaintiff (s),                                   MAY 2 ' 2007

Vs.

NEW YORK CITY CORPORATION COUNSEL, MICHAEL A. CARDOZO;
NEW YORK CITY CORPORATION ASSISTANT COUNSEL, LESLIE SPITALNICK;
100 CHURCH STREET, NY, NY 10007; MARTHA E. STARK, NY
CITY COMMISSIONER OF FINANCE, 66 JOHN STREET, 3RE FLOOR,
NEW YORK, NY 10038; SHAUN DONOVAN, NY CITY HPD COMMISSIONER
THE CITY OF NEW YORK DEPARTMENT OF HOUSING PRESERVATION &
DEVELOPMENT HPD, 100 GOLD STREET, ROOM 1R, NEW YORK, NY 10038;          JURY TRIAL
MYRIAM ELLIS, IN HER OFFICIAL CAPACITY AS HPD REPRESENTATIVE,           DEMANDED
100 GOLD STREET, ROOM 1R, NEW YORK, NY 10038; MARK MATTHEWS
100 GOLD STREET, ROOM 1R, NEW YORK, NY 10038

    Defendant(s)

------------------------------------------------X


## CIVIL COMPLAINT

1. This is a suit for injunctive and declaratory relief

under 42 U.S.C. §§ 3631, 1983 and 18 U.S.C. § 241,242,

245, against the New York City Corporation Counsel;

Martha E. Stark, NY City Commissioner of Finance; Shaun

Donovan, NY City HPD Commissioner the City of New York

Department of Housing Preservation & Development-HPD;

Myriam Ellis, In her official capacity as HPD

Representative; Mark Matthews, Leslie Spitalnick,

seeking declaratory and injunctive relief against using

threat, punitive and suspicious tax assessment, intimidation, eviction, racial discrimination, discrimination based on national Origin and familial status to unlawfully and forcefully hinder the shareholders and tenants of "H.D.F.C", of their statutorily protected rights to avail themselves of the right to fair housing.

## I. Jurisdiction and Venue

2.    This court has subject matter jurisdiction pursuant to 28 U.S.C §§ 1331 and 1343.

3.    Venue is proper in the United States District Court because all parties may be found here.

## II. Parties

**Dr. Delois Blakely, Apartment #2, also known as Queen Mother Dr. Delois Blakely** has been committed and dedicated to human services approximately 50 years in the City of New York – giving international status.

a)    As a Roman Catholic Nun for ten {10} years, **Queen Mother Dr. Blakely** has serviced the community from age

16-to present starting in the convent as a Roman Catholic nun which is over 50 years with receiving $1.00 per year for dedication of service

b)  Received/made final vows in the Roman Catholic Convent {Convent did not put me out. Fitted in extremely well in the convent for 10 years}

c)  As a Roman Catholic nun serviced as a teacher, social worker and counselor, Left in the sprit of the Holy Spirit of God

d)  Wanted to go beyond the convent continuing to work with children and youth, so she created and founded the not-for-profit, New Future Foundation, Inc. in 1968 continuing servicing/working with children and youth. God runs the world and we run around in it. Save the World by servicing children and youth. What grew out of the children are the mothers.

**Dr. Delois Blakely** is a humanitarian who has worked with poor people, children and youth, special need and elders over the last 50 years. She has addressed social ills from the streets of Harlem to the United Nations.

**Dr. Delois Blakely** became active in the habitat initiative and in securing affordable housing, ownership and entrepreneurial projects. In 1979, **Dr. Delois Blakely**, as a tenant organizer secured 477 West 142nd Street, building for low and moderate income persons located on 142nd Street & Amsterdam Avenue which was abandoned and a blight to the Harlem Community in the historical Alexander Hamilton's Grange district. In 1982, **Dr. Delois Blakely** gave the building to the Harlem Community in the form of affordable housing for seniors, the disabled and low-income families through an arrangement with New York City Housing Preservation Development {HPD}/and Housing Development Fund Corporation {HDFC}. She has cared for her daughter who is a bed-ridden severely handicapped twenty-eight {28} year old woman with physical retardation, profound psychomotor, cerebral palsy, and scoliosis.

Currently, under **Dr. Delois Blakely** leadership is managing the said property with the support along with Bishop Shirley Pitts and Margaret Callender with extremely limited resources.

**Bishop Shirley Pitts** is a shareholder and a recently retired home attendant with a fixed income, receiving Social Security and pension benefits.

**Ms. Margaret Callender** is a shareholder and a retired senior citizen living on a fixed income, receiving Social Security.

**Michael A. Cardozo** is New York City's Corporation Counsel.

**Leslie Spitalnick** is the assistant corporation counsel in the office of Michael A. Cardozo, Corporation Counsel of the City of New York.

**Martha E. Stark,** NY City Commissioner of Finance is the first African-American woman to serve as New York City's Finance Commissioner, leads a 2300-person agency.

**Shaun Donovan,** NY City HPD Commissioner the City New York Department of Housing Preservation & Development {HPD}, appointed Commissioner of the New York City Department of Housing Preservation and Development (HPD) in March 2004 by Mayor Michael R. Bloomberg.

**Myriam Ellis** is an employee of the New York City Department of Housing Preservation and Development ("HPD"), working in the Tenant Interim Lease Program, Division of Alternative Management Programs.

**Mark Matthews** is HPD's Director of Sales and Procurement.

## III. Factual Allegations

**Legislative Intent creating Housing Development Fund Corporations**

5.  Housing Development Fund Corporations (HDFCs) are created pursuant to **Article XI Section 576**, building identified by the New York County Tax Map as Block 2058, Lot 29, also known as 477 West 142nd Street, New York in the Borough of Manhattan of the Private Housing Finance Law, which mandates that they must be operated solely as housing project for persons or families of low income. In fact, the annexed deed **(Exhibit A; pg 2)** of conveyance for HDFC, explicitly bound the corporation in clause 3 that, "the HDFC covenants and agrees to operate the Premises solely as housing project for persons or families of low income as defined in **Section 576 of Article XI** of the Private Housing Finance Law."

6.  **Section 576 of Article XI, clause b**, further states that, "for the purposes of this paragraph, tenants in a housing project of a housing development fund

company organized under the provisions of the business corporations law and this article shall have added to their total annual carrying charges an amount equal to six per centum of the original investment of such person or family in the equity obligations of such housing company." **Clause c** states, "Profits shall be used for capital improvements or to reduce rentals." The full text of **Section 576 of Article XI** will be respectfully made available for the court's own finding.

7. The New York City {HPD} commenced an *in rem* tax foreclosure action, No. 46 on January 9, 2004 wherein they claimed that "477 West 142nd Street, HDFC" currently owes them the sum of **$475,172.96.**

8. The alleged suspicious tax bill is the punitive assessment used as a *causa sine qua non* for the *in rem* proceedings that will grant to the City of New York (a municipal corporation, the "City") the often-destructive power of escheat reserved only for despotic Monarchies. Unless of course "the City" can bring proof that, it is a despotic Monarch. In the

brief submitted by the city HPD to the Supreme Court of the State of New York in their *in rem* tax foreclosure, it claims through the affidavit by Leslie Spitalnick **{Exhibit B; pg 3}** submitted in support of the *in rem* foreclosure that, "As of October 3, 2006, the Parcel had 115 outstanding housing code violations."

9.  Based upon the information provided by Pro Se Attorney Richard Paul Stone, specifically, "second, to further frame the discussion, I was told yesterday that the City characterizes as "tax" almost anything that matures to an obligation with the Finance Department, whether it was originally tax or a penalty for violation" **{Exhibit C; cover pg}**

10. We assert a Fundamental objection to the figures, **$475,172.96** claimed by the City as our primary cause of action against the "City". We believe it is punitive, suspicious, and racially motivated. Myriam Ellis in her affidavit of the 19th of December 2006, claims that, "Mark Matthews HPD's Director of Sales and Procurement, and I met with Dr. Delois Blakely,

8

President of 477 West 142nd Street, HDFC, on several occasions to advise Dr. Blakely of the possibility of 477 West 142nd receiving tax amnesty pursuant to the NY Private Housing Finance Law." **{Exhibit D; pg 2}**

11. Dr. Blakely did not meet with Myriam Ellis or Mark Matthews. HPD deliberately misinformed the plaintiff regarding the facts of the Private Housing Finance Law 577-b 2(a) 9(c) (2).

12. The so-called "Tax Amnesty" suggestion would strip ownership, control and void the original conveyance from 1982 because there had to be consideration and meeting of the minds. The City was fully paid in the amount of $2,000.00 for said property, 477 West 142nd Street, HDFC **{Exhibit E THE DEED FROM 1982}**

13. Our contention is that the City will create involuntary servitude by their actions on the plaintiffs who have bought and fully paid for the said property, 477 West 142nd Street in 1982 to submit into a program violating their 13TH & 14th Amendment rights and their Constitutional right to contract without restriction.

14. The plaintiffs are suspicious of the alleged good faith behind such a measure, which would ultimately turn the HDFC into a *feud* of the HPD and void the original deed of 1982 *ab initio*.

15. Plaintiffs allege that HPD's recommendation would deny the HDFC the ability to function efficiently and meet its fiduciary obligations to its members and tenants.

16. Their suggested remedy would also go against 577-b 2(a) 9(c) (2), which mandates that the low-income requirements must be maintained.

17. Shaun Donovan, Commissioner of HPD in a letter to Dr. Blakely dated May 31, 2005 outlined a breakdown of the tax arrears in question.

18. Mr. Donovan claims that, "The current property tax arrears are **$239,247**; water liens are **$83,290**; and other charges that **$57,776**. **$184,907** of the property taxes dates prior to 2001, **$17,790** of the water, liens are eligible for relief as an HDFC." **{Exhibit F; pg 2}** Plaintiffs demand that the Commissioner should define what he meant by "other charges total **$57,776.**"

19. Mr. Donovan also claims that "Thus, of the total of **$380,313** in taxes and other charges, the building would only owe a significantly smaller amount, **$177,615** if you choose to follow HPD's recommended steps 1 & 2 above." **{Exhibit G pg 2}** Plaintiffs are suspicious of what the true intentions of that statement are in light of NYS Housing Finance Law, Section 577(a).

20. Plaintiffs therefore assert an Invocation of Section 577 of Article 11, NY Private Housing Finance 577(a) that confers tax exemption status to an HDFC such as 477 West 142nd Street, which is involved in many humanitarian programs.

21. The allegation by Myriam Ellis in her affidavit that, "According to Finance records, no payments have been made for property taxes and related charges on the Parcel since November 1992" **{Exhibit H; pg 2}** is a misrepresentation of the facts. **{Please find enclosed Exhibit I regarding payment and letters}**

22. Dr. Delois Blakely, has made concerted and continued effort to resolve the tax

11

issues since January 1993. **{Please see the annexed Exhibit verifying this fact Exhibit J}**

## IV. Claim for Relief

23. Real Property Tax Law Article 7 - indiscriminately appoint an independent attorney to ascertain complete review of New York State Tax Laws as it relates to corporations organized Article 11 of New York State Finance Law. We ask that the courts have the City turn over to an independent accountant all instruments that were used to configure the tax bill in question **$475,172.96**

24. Plaintiffs are capable through a not-for-profit organization of their choice, to obtain grants for the authentic or bonafide tax amount after review by independent CPA: count must enjoin the HPD or City of New York from going through the process of *in rem* foreclosure and allow considerable time, at least 6 months, to obtain grants and pay outstanding taxes.

25. Turn 477 West 142nd Street, HDFC over to the New Future Foundation, Inc. which played a major part in assisting the Plaintiffs in stabilizing their home,

instead to a city agency because New Future Foundation, Inc is the organization that made the property, 477 West 142nd Street, HDFC a reality. The Board of Directors has agreed to transfer the HDFC to the not-for-profit.

26. Where as any transfer to another 3rd Party will be void on its face.

27. Also seek a monetary damage of 10 million dollars

## V.  JURY TRIAL RIGHT PRESERVATION

Pursuant to Federal Rule Civil Proceedings 38(a), (b) the Plaintiffs assert their right to Jury Trial.

May 21, 2007

___John Blakely___
(212)368-3739
DR. DELOIS BLAKELY
477 WEST 142ND STREET HDFC,
New Future Foundation, Inc.
Suite 2, New York, NY 10031

Margaret Callender

Sworn to before me this day
_____ Day of May 2007

Apt 3 Margaret Callender
Bishop Shirley Yttk 05/21/2007

_____
NOTARY PUBLIC

13

# Exhibit

# A

REEL 656 PG 805

## DEED

$2 20
deed
tax

This DEED made the 7ᵗʰ day of December, 1982, between THE CITY OF NEW YORK, a municipal corporation having its principal office at the City Hall, Borough of Manhattan, City and State of New York, (the "City"), and 477 West 142nd Street Housing Development Fund Corporation a corporation duly organized pursuant to the provisions of Article XI of the Private Housing Finance Law of the State of New York, as amended having an office for the conduct of business at 477 West 142nd Street in the Borough of Manhattan, City and State of New York, (the "HDFC")

WHEREAS, the Board of Estimate of the City of New York, by resolution adopted on the 18th day of March, 1982 (Calendar No. 10), duly authorized the sale of the premises, more fully described below (the "Premises"), for the negotiated price of Two Thousand ($2,00.00) Dollars.

NOW, THEREFORE, the parties agree as follows:

(1)  The City, in consideration of Two Thousand ($2,000.00) Dollars lawful money of the United States and other good and valuable consideration paid by the HDFC hereby grants and releases unto the HDFC, its successors and assigns forever;

All that certain piece(s) or parcel(s) of land, together with the buildings and improvements thereon erected, situated, lying and being in the Borough of Manhattan, City and State of New York designated on the Tax Map of the City of New York, for such Borough as Block 2058, Lot 29  as said Tax Map was on July 6, 1977 , said premises being presently known as the street number 477 West 142nd Street

For the HDFC  its successors and assigns TO HAVE AND TO HOLD the Premises forever, subject to:

(a)  the provisions of all laws, codes, statutes, ordinances, acts, rules and regulations of any local, state or federal government, or any agency or subdivision thereof, having jurisdiction, or any violation of same, existing at the time of delivery of this deed;

(b)  building restrictions and zoning regulations in effect at the time of closing and any facts disclosed in the City of New York tax and zoning maps and zoning resolutions;

(c)  covenants, agreements, easements and restrictions of record and encroachments  utility easements and rights of way that may affect the property

(d)  any state of facts that an accurate survey and thorough inspection of the property would reveal

(e)  the rights of tenants and persons in possession, if any;

(f)  pending assessments  if any, all of which hereby agrees to assume and pay;

(g)  the trust fund provisions of Section

(2)   The HDFC covenants and agrees not to sell, transfer, exchange or otherwise dispose of or lease all or substantially all of the Premises for ten (10) years from the date of this Deed without prior written approval of the Commissioner of the City's Department of Housing Preservation and Development.

(3)   The HDFC covenants and agrees to operate the Premises solely as a housing project for persons or families of low income as defined in Section 576 of Article XI of the Private Housing Finance Law for ten (10) years from the date of this Deed.

IN WITNESS WHEREOF, the City has caused this Deed to be executed by the Deputy Mayor of the City of New York as of the date and year first written above and by the City Clerk, and its corporate seal to be affixed and the HDFC has duly executed this Deed

THE CITY OF NEW YORK

By _____
Nathan Leventhal, Deputy Mayor

By _____
David N. Dinkins / HERBERT F. RYAN
First Deput, City Clerk

New York 1982

477 WEST 142nd STREET HOUSING DEVELOPMENT FUND CORPORATION

By _____
President SHIRLEY PITTS

(SEAL)

APPROVED AS TO FORM

_____
Acting Corporation Counsel

-2-

# BOARD OF ESTIMATE
## CITY OF NEW YORK

Cal. No. 19.

Whereas, The Board of Estimate approved resolutions on February 21, 1980 (Cal. No. 78) and May 28, 1981 (Cal. No. 278) setting forth the general policy of the City of New York with respect to the sales price, and terms and conditions of sale and resale of City-owned residential buildings to Article XI Housing Development Fund Corporations; and

Whereas, The 477 West 142nd Street Housing Development Fund Corporation ("Housing Company") is to be organized pursuant to Article XI of the Private Housing Finance Law of the State of New York (the "Law") for the purpose of developing a housing project for persons of low income; and

Whereas, The Housing Company proposes to purchase and develop such Housing Project on a parcel of City-owned land consisting of Block 2058, Lot 29, in the Borough of Manhattan, City and State of New York, and known as 477 West 142nd Street ("Premises"); and

Whereas, On March 18, 1982 (Cal. No. 3) the Board of Estimate approved a recommendation of the City Planning Commission approving the proposed disposition pursuant to Section 197-c of the New York City Charter; and

Whereas, The Board of Estimate has held a public hearing upon due notice, pursuant to Article XI of the Law to consider the sale of the Premises to the Housing Company; and

Whereas, The provisions of Section 197-c of the City Charter have been adhered to; and

Whereas, The proposed disposition is in conformance with the Board of Estimate resolutions of February 21, 1980 (Cal. No. 78) and May 28, 1981 (Cal. No. 278);

Now Therefore be it

Resolved,

That the Mayor, Deputy Mayor, or Deputy Commissioner of the Division of Real Property, Department of General Services of the City of New York, be and hereby is authorized to execute and deliver a deed conveying the Premises located on Block 2058, Lot 29 to the Housing Company for the price of Two Thousand Dollars ($2,000), a price equivalent to the fixed price of $250 per dwelling unit, without public auction or bidding, pursuant to Section 576-a of the Private Housing Finance law, after approval as to form by the Corporation Counsel, upon such other terms and conditions as are embodied in the resolutions of the Board of Estimate dated February 21, 1980 (Cal. No. 78) and May 28, 1981 (Cal. No. 278) and the City Clerk (or Acting City Clerk) is hereby directed to attest said deed and affix the seal of the City of New York thereto.

# Exhibit

# B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------- x

IN REM TAX FORECLOSURE ACTION NO. 46

BOROUGH OF MANHATTAN

SECTIONS 3, 6, 7 AND 8

TAX CLASSES 1 AND 2

------------------------------------------------------------- x

**AFFIDAVIT IN SUPPORT OF THE CITY'S MOTION FOR SUMMARY JUDGMENT OF <u>FORECLOSURE</u>**

Index No. 580001/04

Premises:

477 West 142nd Street (Block 2058/Lot 29)

STATE OF NEW YORK      )
                       :    SS.:
COUNTY OF NEW YORK  )

**LESLIE SPITALNICK,** being duly sworn, deposes and says:

1.      I am an Assistant Corporation Counsel in the office of Michael A. Cardozo, Corporation Counsel of the City of New York, counsel for Movant the City of New York (the "City") in the above-captioned action.  I am fully familiar with the facts and circumstances set forth herein based upon the books and records of the City, upon public records, upon conversations with City employees, and upon my personal knowledge.

2.      I make this affidavit in support of the City's motion for summary judgment of foreclosure pursuant to New York Civil Practice Law and Rules § 3212 and § 11-401, et seq., of the Administrative Code of the City of New York ("Admin. Code"), specifically § 412.1, with respect to property that is designated on the New York County Tax Map as Block 2058, Lot 29, also known as 477 West 142nd Street, New York, in the borough of Manhattan (the "Parcel").

3.     As a matter of law, the Answer of owner 477 West 142nd Street Housing

Development Fund Corporation ("477 West 142nd Street HDFC") to this *in rem* tax foreclosure

action raises no valid defenses. See Admin. Code § 11-409. 477 West 142nd Street HDFC has

not paid property taxes and related charges on the Parcel since November 1992 and as of

September 21, 2006, owes $475,172.96 in delinquent property taxes and related charges

including interest. In addition, 477 West 142nd Street HDFC has failed to enter into a regulatory

agreement, as proposed by HPD, to be eligible for tax amnesty. See accompanying Affidavit of

Myriam Ellis, sworn to December 19, 2006 ("Ellis Aff.").

4.     As a result, the City is entitled to a judgment of foreclosure.

## MANHATTAN FORECLOSURE ACTION NO. 46

5.     On January 9, 2004, the City commenced *In Rem Tax Foreclosure Action*

*No. 46, Borough of Manhattan*, Index No. 580001/04 (Solomon, J.) ("Manhattan 46"), pursuant

to Admin. Code § 11-401, et seq., to foreclose upon certain tax delinquent parcels located in

Sections 3, 6, 7 and 8 on the Tax Map of the City of New York for the Borough of Manhattan, by

the filing of duplicate Lists of Delinquent Taxes pursuant to Admin. Code § 11-405 in the office

of the County Clerk of New York County.

6.     The Parcel was included in Manhattan 46 as the result of a $302,370.03

lien for delinquent taxes and other charges, dating back to November 1992, when the action was

commenced on January 9, 2004. A copy of the relevant page of the List of Delinquent Taxes

regarding the Parcel is annexed hereto as Exhibit A. As already set forth, as of September 21,

2006, the amount of delinquent property taxes and related charges had increased to $475,172.96.

A copy of the relevant pages of the Department of Finance website showing the amount of taxes

owed on the Parcel as of September 21, 2006 is annexed hereto as Exhibit B.

2

7.     In addition, as of October 3, 2006, the Parcel had 115 outstanding housing

code violations.  Of those, twenty-nine are classified as Class A violations, the least severe;

sixty-eight are classified as Class B, middle-level severity; and eighteen are classified as Class C

violations, the most severe.  A copy of the Building Registration Summary Report for housing

violations on 477 West 142nd Street is annexed hereto as Exhibit C.

8.     On or about January 20, 2004, pursuant to Admin. Code § 11-406, the

City sent a Notice of Foreclosure by first class mail, together with a statement in the form

provided for in Admin. Code § 11-406, to each and every owner, mortgagee, lienor,

encumbrancer, or other person with an interest in each parcel included in Manhattan 46 entitled

to receive such notice by virtue of having filed an owner's registration or an *in rem* registration

card pursuant to Admin. Code §§ 4-116 or 11-417.  A copy of the Notice of Foreclosure is

annexed hereto as Exhibit D.

9.     Finance mailed two Notices of Foreclosure regarding Manhattan 46 to,

among others, the owner defendant 477 West 142nd Street HDFC, 477 West 142nd Street, New

York, NY 10031-6239, the address at which it requested such notice on its *in rem* registration

card, previously filed with Finance.  A copy of the relevant pages of Finance's Mailing List for

Manhattan 46 is annexed hereto as Exhibit E.

10.     The City also complied with the filing, posting, and publication

requirements of Admin. Code §§ 11-405 and 11-406, as demonstrated by the Affirmation of

Regularity of Andrea Feller, Assistant Corporation Counsel, dated June 29, 2005 ("Aff. of

Regularity") submitted in support of the judgment in Manhattan 46 and the exhibits annexed

thereto, especially the Affidavit of Regularity of Martha E. Stark, Commissioner of the

Department of Finance, sworn to on June 28, 2005.  A copy of the Aff. of Regularity, including

exhibits, is annexed hereto as Exhibit F. The Affidavit of Regularity provides for

due and proper service of the notices, which was accepted by the Court as proof thereof.  See

also Exhibit G, the Decision and the Judgment of Foreclosure in Manhattan 46, entered on

August 11, 2005, reciting the City's compliance with the notice requirements of the Admin.

Code.

11.    On April 29, 2004, 477 West 142nd Street HDFC, having received notice

of Manhattan 46, timely served an Answer on the City.  A copy of the Answer is annexed hereto

as Exhibit H.

12.    In its Answer, 477 West 142nd Street HDFC denies that taxes are owed in

the amount alleged by the City, and alleges that the Department of Finance has failed to provide

477 West 142nd Street HDFC with an accurate amount of taxes owed.  In addition, 477 West

142nd Street HDFC attempts to establish: (1) that HPD employees assured 477 West 142nd Street

HDFC of the availability of programs and agreements for 477 West 142nd Street HDFC to be

able to raise funds to pay taxes owed, and that 477 West 142nd Street HDFC's Board has

approved a financial plan to do so; (2) that all shareholders of 477 West 142nd Street HDFC

agreed to an increase in maintenance charges;[1] (3) that 477 West 142nd Street HDFC has

attempted to lease vacant retail space; (4) that 477 West 142nd Street HDFC hired professionals

to facilitate rehabilitation of the Parcel; and (5) that the 477 West 142nd Street HDFC President

has conversed with HPD employees in order to come to a resolution.

13.    As set forth in the Ellis Affidavit, HPD encouraged 142nd Street HDFC to

rectify its tax arrears in order to avoid foreclosure.  Specifically, HPD advised 477 West 142nd

Street HDFC of the availability of a regulatory agreement to receive tax amnesty for the

---

[1] Presumably, an increase in maintenance charges would raise funds to pay delinquent charges.

building. Representatives of HPD spoke with Dr. Delois Blakely, president of 477 West 142nd Street HDFC, on several occasions to discuss establishing a regulatory agreement. See Ellis Aff., ¶¶ 5-6.

14.     Since interposing its Answer on April 29, 2004, 477 West 142nd Street HDFC has taken no steps to pay the delinquent taxes and related charges, and has failed to enter into a regulatory agreement with Finance, pay the down payment, apply for tax amnesty or take other action to prevent foreclosure on the Premises.

**A.     477 West 142nd Street HDFC Received Notice of <u>Manhattan 46</u> and Received All Process Due, so This Court has Jurisdiction Over 477 West 142nd Street HDFC.**

15.     The City complied with all the requirements in the Admin. Code for service, preparation, and filing of notice of the *in rem* action. This court clearly has jurisdiction over 477 West 142nd Street HDFC.

16.     Upon commencement of an *in rem* tax foreclosure action, the New York City Department of Finance ("Finance") is required to mail a copy of such notice to a party interested in the proceeding who has filed an owner or *in rem* registration card with the City. See Memorandum of Law, Point II, A.

17.     There is a presumption that a party to an *in rem* foreclosure received notice of foreclosure where the City shows that the correct procedures were followed. A mere denial of receipt is insufficient to rebut this presumption. See Memorandum of Law, Point II, A.

18.     Even if an interested party can show that it did not receive the notice of foreclosure, the party's receipt of actual notice will defeat its claim of failure of notice. The purpose of the notice provisions of the Admin. Code is to allow an interested party to enter an Answer, thereby severing the premises from the *in rem* action, or to present evidence to Finance

5

that property taxes and related charges have been paid, which is a complete defense to foreclosure. Actual notice of an *in rem* tax foreclosure satisfies that statutory purpose.

19. The City has shown that it complied with all notice requirements of Title 11, Chapter 4 of the Admin. Code to give notice to 477 West 142nd Street HDFC of <u>Manhattan 46</u>. In fact, the judgment in <u>Manhattan 46</u> specifically recites compliance by the City with such provisions. 477 West 142nd Street HDFC's filing of its Answer is proof that 477 West 142nd Street HDFC had notice of <u>Manhattan 46</u> pursuant to either Finance's mailing or posting of the notice of public foreclosure or actual notice of the *in rem* tax foreclosure.

20. 477 West 142nd Street HDFC was afforded due process. Finance mailed notice to 477 West 142nd Street HDFC, pursuant to Admin. Code §§ 11-406 and 11-416, to the address at which 477 West 142nd Street HDFC requested receipt of notice.

21. An interested party to an *in rem* action may redeem any parcel named in the list of delinquent taxes by paying all taxes and related charges, interest and penalties. 477 West 142nd Street HDFC has presented no evidence that it redeemed the parcel through payment of taxes. This Court clearly has jurisdiction. <u>See</u> Memorandum of Law, Point II, B.

**B.    477 West 142nd Street HDFC Has No Valid Defense to the In Rem Tax Foreclosure.**

22. There are only two valid defenses to an *in rem* tax foreclosure action: payment and exemption. Admin. Code § 11-409(b) states: "Proof that the taxes which made said property subject to foreclosure hereunder together with interest and penalties thereon, were paid before filing of the list of delinquent taxes or that the property was not subject to tax shall constitute a complete defense." <u>See</u> Memorandum of Law, Point III.

23. 477 West 142nd Street HDFC has not paid the taxes and related charges on the Parcel and plainly is not exempt. 477 West 142nd Street HDFC merely denies the allegations of delinquent property taxes, and other charges, without showing payment or exemption.

Finance records clearly show that as of September 21, 2006, 477 West 142nd Street HDFC owes

$475,172.96 in taxes and other charges to the City. 477 West 142nd Street HDFC has no valid

defense to foreclosure. The City is entitled to summary judgment.

**C.    477 West 142nd Street HDFC May Not Challenge the Amount of Unpaid Taxes and Related Charges in This Action.**

24.    477 West 142nd Street HDFC denies that it owes delinquent property taxes

and related charges, and alleges that Finance has failed to provide 477 West 142nd Street HDFC

with an accurate amount of property taxes and related charges due. See Answer, ¶ 1.

25.    Taxes, assessments, and other charges named in the List of Delinquent

Taxes are presumed to be valid. See Memorandum of Law, Point IV.

26.    477 West 142nd Street HDFC has not paid the taxes and other outstanding

charges on the Parcel in approximately 14 years and as of September 21, 2006 owes $475,172.96

in delinquent taxes and related charges. See Exhibit B.

27.    Moreover, 477 West 142nd Street HDFC may not challenge the assessment

of real property taxes in this forum. A Real Property Tax Law Article 7 tax certiorari proceeding

provides the exclusive remedy for challenging a tax assessment, and the challenge must be

commenced before October 25 of each tax year at issue. See Memorandum of Law, Point IV.

28.    477 West 142nd Street HDFC fails to assert or come forward with any

proof of having timely challenged the property tax assessment in an Article 7 tax certiorari

proceeding. 477 West 142nd Street HDFC is time-barred from challenging the amount of taxes

due. See Memorandum of Law, Point IV.

**D.    The City Acted in Good Faith with 477 West 142nd Street HDFC to Enter into a Regulatory Agreement, but HDFC Failed to Enter into Any Such Agreement.**

29.    477 West 142nd Street HDFC alleges that "[e]mployees of [HPD] assured

[477 West 142nd Street] HDFC that certain programs and agreements could be used in order to

7

provide [477 West 142nd Street] HDFC with additional time to raise funds necessary to cure the arrears." Answer, ¶ 2.

30. In fact, although the City made numerous efforts to encourage 477 West 142nd Street HDFC to rectify the situation to avoid foreclosure and made specific suggestions as to how that could be done, 477 West 142nd Street HDFC failed to take advantage of any of HPD's efforts. The City informed 477 West 142nd Street HDFC of the availability of an regulatory agreement to be eligible for tax amnesty, but 477 West 142nd Street HDFC failed to enter into any such agreement. See Ellis Aff., ¶¶ 5-8.

31. 477 West 142nd Street HDFC's other allegations, that it has taken steps to stabilize its finances, are, in the absence of a regulatory agreement or payment of arrears, simply irrelevant. See Answer, ¶¶ 3-5. The Parcel is being foreclosed in this *in rem* action because 477 West 142nd Street HDFC is unwilling or unable to enter into an agreement to repay the outstanding taxes and related charges.

32. 477 West 142nd Street HDFC has no valid defenses to Manhattan 46. All the allegations interposed are easily dismissed or irrelevant. 477 West 142nd Street HDFC has failed to raise a legally valid defense to the foreclosure action, and there are no triable issues of fact to be decided herein. The City's motion for summary judgment should be granted, and a judgment of foreclosure entered against the Parcel.

33.    No previous application has been made for the relief sought herein.

**WHEREFORE,** the City respectfully requests that the Court grant the City's motion for summary judgment and direct the clerk to enter a judgment of foreclosure in the proposed form submitted herewith regarding the Parcel, and such other relief as the Court deems necessary and proper.

_____
LESLIE SPITALNICK

Sworn to before me this
22nd day of December , 2006

_____
NOTARY PUBLIC

**KAY M. EDWARDS**
Notary Public, State of New York
No. 24-5025060
Qualified in Richmond County
Certificate Filed in New York County
Commission Expires March 21, 2010

9

# Exhibit

# C

# RICHARD PAUL STONE, ESQ.

February 21, 2007

**By Hand**

Queen Mother Delois Blakely, PhD.
477 West 142nd Street HDFC
477 West 142nd Street - No. 2
New York, New York 10031-6239

Re:    *In rem* foreclosure, 477 West 142nd Street HDFC

Dear Queen Mother:

I am preparing this letter for the purpose of leaving it with you after our meeting today, in order that I memorialize the very important matters I discussed yesterday at HPD, and to set forth what I believe are the options going forward for 477 West 142nd Street HDFC (the "Corp").

I met at HPD yesterday the two lawyers from the office of Corporation Counsel, Leslie Spitalnick, Esq. and her supervisor Andrea Feller, Esq., and four HPD executives, Mimi Ellis, Mark Matthews, Claudel Cayemittes, and Steve Seltzer.

First, as a matter of background to the discussion below, let me review a few matters we have discussed previously. The Corp owns the building and is required to lease apartments to those who own shares in the Corp. Like any other corporation, the Corp has officers that carry out the will of the board or owners. While the HPD record shows New Future Foundation, Inc. ("NFF") as the managing agent, that is illusory since you and NFF are one in the same and you have, of late, been managing the building.

Second, to further frame the discussion, I was told yesterday that the City characterizes as "tax" almost anything that matures to an obligation with the Finance Department, whether it was originally tax or a penalty for violation. However, Mr. Cayemittes printed out for me some schedules of charges with similar internal City codes, and they seem to

14 Penn Plaza - Suite 1806                          Telephone 212.564.8220
225 West 34th Street                               Telefacsimile 212.244.0355
New York, New York 10122                    e-mail rps@stonecounsel.com

Queen Mother DeLois Blakely, PhD
February 21, 2007
Page 2

segregate the charges by City department. Suffice it to say that the reason these characterizations are important is that different schedules are subject to different interest rates after late payment. The Copr's financial problem arises more from interest than anything else. For example, just one tax charge from __ shows that the tax was __ but the interest owed for non-payment is ___.

Third, we cannot discuss this intelligently without accepting that the Corp is an HFDC which was created by the government for a particular purpose and what the court will and will not do is controlled by laws passed regarding this type of property. The law looks at this process in one of two ways:

> *either* you keep the Corp as owner, accept the legal excusing of monies owed before January 1, 2001, and sign a note to pay back the rest of the money over some period of time,

> *or* there is a third party transfer to an entity HPD agrees to, and all of the unpaid money is forgiven.

The law sees no in between.

Fourth, your long-term goals for this process are to (1) transfer ownership to NFF, (2) create a sound financial future that will enable NFF to work its ministry and (3) protect these eight homes for those in greatest need.

Having said all this, please let me compare the benefits and problems presented by the available options and then discuss my recommendation.

*First Option*

The first option is to accept neither of the City's options. In that event, you become HPD's adversary, because it does not have legal authority to do anything other than complete the foreclosure that is in process. It will demand that its motion be heard on the new return date in April, and that the Corp be stripped of ownership. Ms. Ellis was very clear about saying that this is not an eviction process: However, and I cannot stress this enough, the City will not take the building and must, by law, execute a third party transfer. The key to your future, should this take place, is whether the new owner is willing to convert to a coop again or keep ownership and charge you rent. I think we both know how this process tends to work.

Queen Mother DeLois Blakely, PhD
February 21, 2007
Page 3

To remain in this first option and accomplish what you desire, you would have to complete the following in less than six weeks, find funding to pay off the debt and create a revenue stream to keep the building solvent and in reasonable repair going forward. That would require - at a minimum - evicting the non-paying tenants, leasing the commercial space at market rates, borrowing at least on a short term basis and completing repairs to remove the class C violations.

I am not confident that that can be completed in that time frame. One thing that should be explored is trying to negotiate the amount due, particularly since most of the debt is interest at very high rates. On your authorization, I will inquire whether the City would accept a cash payment of $250,000 to release the liens and put the Corp on a current tax basis.

*Second Option*

The second option is what HPD calls "tax amnesty". The key benefits of that program are that the Corp retains ownership, the Corp would likely be able to transfer ownership to NFF after some period of time (as long as 10 years), and taxes accruing before January 1, 2001, are forgiven. The key drawbacks are that:

- the total tax debt that would be forgiven is only about $75,000
- the Corp would face not only taxes going forward, but would be repaying over $400,000 in back taxes
- to qualify for this program, the Corp would have to submit a fairly detailed business plan setting forth:
  - the shareholders' willingness to satisfy details of share status, election of officers and delegation of management responsibility
  - a schedule for removing all significant violations
  - a plan for renting the retail space at market rates
  - consideration of an increase in maintenance (rent) in order to satisfy the building's financial obligations
  - consideration of engaging a professional building manager

Upon our showing good faith, HPD will halt the litigation to give some time to complete this process.

Queen Mother DeLois Blakely, PhD
February 21, 2007
Page 4

*Third Option*

The third option is what HPD calls a third party transfer. The key benefits of that process are that the entire debt is excused against the property and the process does not require the eviction of the current tenants. The key drawbacks are that:

- the Corp would no longer own the building and there is no likelihood that NFF would be able to have title transferred to it
- HPD would choose the new owner based on its goals of stabilizing the property
- the new owner may convert to a new cooperative corporation or hold the building and charge rent
- there are no guarantees that the current tenants will be able to pay the rent or maintenance required by the new owner

*Next Steps*

Based on your advice to date, I understand that the third option is not acceptable because there is no likelihood that NFF will be able to take the building. You have expressed dissatisfaction with the second option because of the long-term risk of spreading out the large debt over many years. However, the first option is almost impossible to execute due to the short time available to us.

The only realistic solution is to buy enough time to allow the Corp to leverage the equity in the building and maintain your independence. To have a chance at advancing this strategy, we will have to accommodate HPD in a couple of different ways and then move very, very quickly to generate some revenue. I propose that we:

- arrange a meeting at the building with all the shareholders and the staff from HPD to show them that the Corp is being operated properly
- engaged a building inspector to review the violations, inspect the building, and produce a scope of work document that will identify the expense to bring the building up to a level that HPD will work with you
- have the commercial space evaluated by a broker and set a very short schedule to empty all of the spaces, consolidate them for best financial advantage and get them rented
- try to negotiate with HPD to excuse, or reduce, the interest on the taxes, upon your promise to make one lump sum payment

**Queen Mother DeLois Blakely, PhD**
**February 21, 2007**
**Page 5**

- open the property to inspection by private lenders who may consider a market rate loan to pay off the taxes and do the work in the building, to see if the tenants can carry the debt service and pay it off with the revenue from the rented commercial space
- draft a business plan to submit to HPD to help them sell to their supervisors the idea that compromising the amount of the debt makes sense in the long term
- obtain bids from building managers to operate the building going forward

If this does not work, I think the Corp has only one conceivable option, which is accepting the third party transfer process and then negotiating for a new owner that will work with the residents to protect their homes.

I look forward to discussing these issues with you and Queen Mother Bishop Pitts.

Sincerely,

Richard Paul Stone
RPS:rps
cc:    Jorge Abreu

# Exhibit

# D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------- x

IN REM TAX FORECLOSURE ACTION NO. 46         **AFFIDAVIT**

BOROUGH OF MANHATTAN             Index No. 580001/04

SECTIONS 3, 6, 7 AND 8              Premises:

TAX CLASSES 1 AND 2               477 West 142nd Street
                                             (Block 2058/Lot 29)

-------------------------------------------------------------- x

STATE OF NEW YORK       )
                           : SS.:
COUNTY OF NEW YORK    )

     **MYRIAM ELLIS**, being duly sworn, deposes and says:

           1.     I am an employee of the New York City Department of Housing Preservation and Development ("HPD"), working in the Tenant Interim Lease Program, Division of Alternative Management Programs. I work with Housing Development Fund Corporations ("HDFCs") to help maintain them as low income housing providers. My job includes providing technical assistance to prevent HDFCs from being foreclosed in the City's Third Party Transfer Program or, in some cases, recommending such transfer where properties are hopelessly in disrepair or totally unable to remedy delinquencies. I regularly meet with owners of delinquent property, before and/or after the commencement of tax foreclosure proceedings, to assist them in maintaining ownership of their property and advise them of their options to resolve the delinquency.

           2.     I submit this affidavit in support of the City's motion for summary judgment of foreclosure pursuant to New York Civil Practice Law and Rules § 3212 and § 11-401, et seq., of the Administrative Code of the City of New York, specifically § 412.1, with

respect to property that is designated on the New York County Tax Map as Block 2058, Lot 29, also known as 477 West 142nd Street in the borough of Manhattan (the "Parcel"). I am familiar with the facts and circumstances of this motion based upon personal knowledge and from review of the books and records of the City of New York (the "City"), including HPD and the New York City Department of Finance ("Finance"), and upon conversations with City employees.

3. The parcel is owned by defendant 477 West 142nd Street Housing Development Fund Corporation ("47 West 142nd Street HDFC"), which served an answer, thus severing the property from the action. According to Finance records, no payments have been made for property taxes and related charges on the Parcel since November 1992. As of September 21, 2006, there was outstanding $475,172.96 in delinquent property taxes and related charges, including interest.

4. Neither 47 West 142nd Street HDFC, nor any other interested party, redeemed the Parcel by paying taxes, charges, interest, and penalties within time periods set forth by statute.

5. Since the inclusion of the parcel in *In Rem* Tax Foreclosure Action No. 46, Borough of Manhattan, Index No. 580001/04 (Solomon, J.), HPD has made numerous efforts to encourage 477 West 142nd Street HDFC to rectify the situation to avoid foreclosure and made specific suggestions as to how that could be done.

6. Mark Matthews, HPD's Director of Sales and Procurement, and I met with Dr. Delois Blakely, president of 477 West 142nd Street HDFC, on several occasions to advise Dr. Blakely of the possibility of 477 West 142nd Street HDFC receiving tax amnesty pursuant to the New York Private Housing Finance Law, were 477 West 142nd Street HDFC to enter into a regulatory agreement with HPD.

2

7.    HDFCs are special New York State corporations organized pursuant to the New York Private Housing Finance Law, Article XI.  Many, but not all, are organized as cooperatives.  477 West 142nd Street HDFC is organized as a cooperative, and acquired its property from the City in a deed dated December 7, 1982.  I advised Dr. Blakely and 477 West 142nd Street HDFC that as an HDFC cooperative, it could be eligible for tax relief under section 577-b of the New York Private Housing Finance Law.  I informed 477 West 142nd Street HDFC that HDFC cooperatives which owe back real estate taxes may have taxes which accrued prior to January 1, 2001 suspended, and ultimately forgiven, by entering into and complying with a regulatory agreement administered by the City.  The requirements for receiving such an agreement include providing HPD with certified copies of the most recent annual HDFC Board election, the most recent audited annual financial report, minutes of the shareholder meeting approving the regulatory agreement, newly adopted corporate documents, and the rent roll, as well as a projected budget, a certificate of fire and liability insurance, and a plan for curing Housing Code violations.  See N.Y. Priv. Hous. Fin. Law § 577-b.

8.    477 West 142nd Street HDFC repeatedly asked HPD for assistance, but 477 West 142nd Street failed to submit any of the required documentation to apply for a regulatory agreement.

_Myriam Ellis_
MYRIAM ELLIS

Sworn to before me this
19 day of December, 2006

_____
NOTARY PUBLIC

ALFONSO POLANCO
Notary Public, State of New York
No. 01PO4976878
Qualified in Kings County
Commission Expires Jan. 22, 20_07_

3

# Exhibit

# E

116 HAMILTON PLACE
NEW YORK, N.Y. 10011

1 30/210

20th Nov 19 82

PAY TO THE ORDER OF The Commissioner of Finance | $ 451.34

Four hundred & Fifty One 34/100 DOLLARS

MANUFACTURERS HANOVER
TRUST COMPANY
3515 Broadway, New York, N.Y. 10031

DATE 20 NOV 82

AMOUNT 451 34

TOTAL OF INVOICES
LESS % DISCOUNT
LESS
TOTAL DEDUCTIONS
AMOUNT OF CHECK

TELLERS CHECK
No. 420931

The Bowery Savings Bank
145th Street & St. Nicholas Avenue

1-30/210

12-20-82 DATE

PAY TO THE ORDER OF (H.P.D.) Commission of Finance

THE BOWERY $2,000.00 00cts

831

TELLER

MANUFACTURERS HANOVER TRUST COMPANY
3515 BROADWAY, NEW YORK CITY, N.Y. 10031

# Exhibit

# F

New Future Foundation. Inc.
477 West 142nd Street, Suite 2
New York, NY 10031
(212) 368-3739
email: drblalely5@aol.com

May 10, 2005

BY FAX (212) 863-6302

Shaun Donovan, Commissioner
Department of Housing Preservation and Development
100 Gold Street
New York, NY 10038

|            |                           |
|------------|---------------------------|
| Re:        | Request for Meeting       |
| Subject:   | Taxes                     |
| Premises:  | 477 West 142nd Street     |
|            | New York, New York        |
| Block:     | 2058                      |
| Lot:       | 29                        |

Dear Mr. Donovan:

I am President and Founder of New Future Foundation, Inc., a 501 (c)(3) not-for-profit organization which manages the subject premises. As outlined in the attached correspondence dated January 3, 2005 and entitled Queen Mother Moore International House "Fundraising" (Exhibit I), this property provides affordable housing for New York City residents, but it has been assessed with tax arrears.

I am hereby requesting a meeting with you to determine the actual tax due, method of computing the tax, and procedures for reducing the tax and resolving other tax and management issues. Please set up a meeting for today, May 10, 2005 between 3pm and 5pm.

Your prompt response will be appreciated. You are also authorized to release information to our attorney Robert Washington, Esq. at 44 Court Street, Suite 1210, Brooklyn, NY 11201 (718)875-5799).

Respectfully Submitted.

Dr. Delois Blakely, President

cc:    Robert Washington, Esq. (Fax) 875-5398
Ref:   NewFuturefoundationtaxmeetin051005.ltr



City of New York
DEPARTMENT OF
HOUSING PRESERVATION AND DEVELOPMENT
100 GOLD STREET, NEW YORK, N.Y. 10038

SHAUN DONOVAN
Commissioner

May 31, 2005

Dr. Delois Blakely
President
New Future Foundation, Inc.
477 W. 142nd Street, Suite 2
New York, NY 10031

Dear Dr. Blakely;

I am writing in formal response to your recent correspondence regarding 477 W. 142nd Street.

As you know, 477 West 142nd Street is operated by your organization, New Future Foundation, Inc., which you acquired in 1982. It is currently in Round 6 of the Third Party Transfer (TPT) action, and due to be transferred in April 2006. Over the past few years, our staff has had approximately 25 conversations with you and your attorney, Mr. Robert Washington, regarding this building. In each of these conversations, we have explained in explicit detail that there are four steps that need to be completed in order to prevent the transfer. The steps are as follows:

1. Apply for a tax amnesty regulatory agreement, which would cancel taxes through December 2000.
2. Apply for the water lien relief available for HDFCs.
3. Work with HPD's Division of Anti-Abandonment on securing a loan in order to make the down payment on an installment payment agreement.
4. Urge your board to increase your residents' maintenance fees as moderately as possible to meet the operating expenses of the building.

We do not have any record of your submitting tax amnesty application or water relief applications. You have not contacted our Division of Anti-Abandonment to secure a loan and initiate a payment installment agreement. And, to the best of our knowledge, your board has not yet put a maintenance fee increase into effect.



nyc.gov/hpd

As for the total tax arrears you requested, the current property tax arrears are $239,247; water liens are $83,290; and other charges total $57,776. $184,907 of the property taxes date prior to 2001; $17,790 of the water liens are eligible for relief as an HDFC. Thus, of the total of $380,313 in taxes and other charges, the building would only owe a significantly smaller amount, $177,615, if you choose to follow HPD's recommended steps 1 and 2 above. Please note that these figures change daily because of the interest rate charged on the balances.

This building is scheduled to be transferred in April 2006. In order to avoid the pending transfer, you must apply for an installment agreement with the Department of Finance. The installment agreement would cover the real estate tax arrears and water lien interest relief. This should be done no later than five-and-one-half months before the transfer date. Therefore, your application must be received by HPD and you must be prepared to pay no later than October 10, 2005.

Should you have any questions or require any additional information, please call Kimberly Hardy, Deputy Commissioner for Community Partnerships at (212) 863-5128.

Sincerely,

Shaun Donovan

Cc: Dennis Walcott, Deputy Mayor
John Warren, First Deputy Commissioner
Michael Bosnick, Assistant Commissioner, Division of Anti-Abandonment
Kimberly Hardy, Deputy Commissioner, Community Partnerships



nyc.gov/hpd

# Exhibit

# G

New Future Foundation, Inc.
477 West 142nd Street, Suite 2
New York, NY 10031
(212) 368-3739
email: drblakely5@aol.com

May 10, 2005

BY FAX (212) 863-6302

Shaun Donovan, Commissioner
Department of Housing Preservation and Development
100 Gold Street
New York, NY 10038

|          |                          |
|----------|--------------------------|
| Re:      | Request for Meeting      |
| Subject: | Taxes                    |
| Premises:| 477 West 142nd Street    |
|          | New York, New York       |
| Block:   | 2058                     |
| Lot:     | 29                       |

Dear Mr. Donovan:

I am President and Founder of New Future Foundation, Inc., a 501 (c)(3) not-for-profit organization which manages the subject premises. As outlined in the attached correspondence dated January 3, 2005 and entitled Queen Mother Moore International House "Fundraising" (Exhibit I), this property provides affordable housing for New York City residents, but it has been assessed with tax arrears.

I am hereby requesting a meeting with you to determine the actual tax due, method of computing the tax, and procedures for reducing the tax and resolving other tax and management issues. Please set up a meeting for today, May 10, 2005 between 3pm and 5pm.

Your prompt response will be appreciated. You are also authorized to release information to our attorney Robert Washington, Esq. at 44 Court Street, Suite 1210, Brooklyn, NY 11201 (718)875-5799).

Respectfully Submitted,

Dr. Delois Blakely, President

cc:    Robert Washington, Esq. (Fax) 875-5398
Ref:   NewFuturefoundationtaxmeetin051005.ltr



City of New York
DEPARTMENT OF
HOUSING PRESERVATION AND DEVELOPMENT
100 GOLD STREET, NEW YORK, N.Y. 10038

SHAUN DONOVAN
Commissioner

May 31, 2005

Dr. Delois Blakely
President
New Future Foundation, Inc.
477 W. 142nd Street, Suite 2
New York, NY 10031

Dear Dr. Blakely;

I am writing in formal response to your recent correspondence regarding 477 W. 142nd Street.

As you know, 477 West 142nd Street is operated by your organization, New Future Foundation, Inc., which you acquired in 1982. It is currently in Round 6 of the Third Party Transfer (TPT) action, and due to be transferred in April 2006. Over the past few years, our staff has had approximately 25 conversations with you and your attorney, Mr. Robert Washington, regarding this building. In each of these conversations, we have explained in explicit detail that there are four steps that need to be completed in order to prevent the transfer. The steps are as follows:

1. Apply for a tax amnesty regulatory agreement, which would cancel taxes through December 2000.
2. Apply for the water lien relief available for HDFCs.
3. Work with HPD's Division of Anti-Abandonment on securing a loan in order to make the down payment on an installment payment agreement.
4. Urge your board to increase your residents' maintenance fees as moderately as possible to meet the operating expenses of the building.

We do not have any record of your submitting tax amnesty application or water relief applications. You have not contacted our Division of Anti-Abandonment to secure a loan and initiate a payment installment agreement. And, to the best of our knowledge, your board has not yet put a maintenance fee increase into effect.



nyc.gov/hpd

(212) 863-6100                     FAX (212) 863-6302                     TTY (212) 863-7934

As for the total tax arrears you requested, the current property tax arrears are $239,247; water liens are $83,290; and other charges total $57,776. $184,907 of the property taxes date prior to 2001; $17,790 of the water liens are eligible for relief as an HDFC. Thus, of the total of $380,313 in taxes and other charges, the building would only owe a significantly smaller amount, $177,615, if you choose to follow HPD's recommended steps 1 and 2 above. Please note that these figures change daily because of the interest rate charged on the balances.

This building is scheduled to be transferred in April 2006. In order to avoid the pending transfer, you must apply for an installment agreement with the Department of Finance. The installment agreement would cover the real estate tax arrears and water lien interest relief. This should be done no later than five-and-one-half months before the transfer date. Therefore, your application must be received by HPD and you must be prepared to pay no later than October 10, 2005.

Should you have any questions or require any additional information, please call Kimberly Hardy, Deputy Commissioner for Community Partnerships at (212) 863-5128.

Sincerely,

Shaun Donovan

Cc: Dennis Walcott, Deputy Mayor
John Warren, First Deputy Commissioner
Michael Bosnick, Assistant Commissioner, Division of Anti-Abandonment
Kimberly Hardy, Deputy Commissioner, Community Partnerships

**HPD**

nyc.gov/hpd

# Exhibit

# H

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------- x

IN REM TAX FORECLOSURE ACTION NO. 46          **AFFIDAVIT**

BOROUGH OF MANHATTAN                          Index No. 580001/04

SECTIONS 3, 6, 7 AND 8                        Premises:

TAX CLASSES 1 AND 2                           477 West 142nd Street
                                              (Block 2058/Lot 29)


---------------------------------------------------------------- x


STATE OF NEW YORK       )
                        : SS.:
COUNTY OF NEW YORK      )

      **MYRIAM ELLIS**, being duly sworn, deposes and says:

      1.    I am an employee of the New York City Department of Housing Preservation and Development ("HPD"), working in the Tenant Interim Lease Program, Division of Alternative Management Programs. I work with Housing Development Fund Corporations ("HDFCs") to help maintain them as low income housing providers. My job includes providing technical assistance to prevent HDFCs from being foreclosed in the City's Third Party Transfer Program or, in some cases, recommending such transfer where properties are hopelessly in disrepair or totally unable to remedy delinquencies. I regularly meet with owners of delinquent property, before and/or after the commencement of tax foreclosure proceedings, to assist them in maintaining ownership of their property and advise them of their options to resolve the delinquency.

      2.    I submit this affidavit in support of the City's motion for summary judgment of foreclosure pursuant to New York Civil Practice Law and Rules § 3212 and § 11-401, et seq., of the Administrative Code of the City of New York, specifically § 412.1, with

respect to property that is designated on the New York County Tax Map as Block 2058, Lot 29, also known as 477 West 142nd Street in the borough of Manhattan (the "Parcel"). I am familiar with the facts and circumstances of this motion based upon personal knowledge and from review of the books and records of the City of New York (the "City"), including HPD and the New York City Department of Finance ("Finance"), and upon conversations with City employees.

3.    The parcel is owned by defendant 477 West 142nd Street Housing Development Fund Corporation ("47 West 142nd Street HDFC"), which served an answer, thus severing the property from the action. According to Finance records, no payments have been made for property taxes and related charges on the Parcel since November 1992. As of September 21, 2006, there was outstanding $475,172.96 in delinquent property taxes and related charges, including interest.

4.    Neither 47 West 142nd Street HDFC, nor any other interested party, redeemed the Parcel by paying taxes, charges, interest, and penalties within time periods set forth by statute.

5.    Since the inclusion of the parcel in *In Rem* Tax Foreclosure Action No. 46, Borough of Manhattan, Index No. 580001/04 (Solomon, J.), HPD has made numerous efforts to encourage 477 West 142nd Street HDFC to rectify the situation to avoid foreclosure and made specific suggestions as to how that could be done.

6.    Mark Matthews, HPD's Director of Sales and Procurement, and I met with Dr. Delois Blakely, president of 477 West 142nd Street HDFC, on several occasions to advise Dr. Blakely of the possibility of 477 West 142nd Street HDFC receiving tax amnesty pursuant to the New York Private Housing Finance Law, were 477 West 142nd Street HDFC to enter into a regulatory agreement with HPD.

7.    HDFCs are special New York State corporations organized pursuant to the New York Private Housing Finance Law, Article XI. Many, but not all, are organized as cooperatives. 477 West 142nd Street HDFC is organized as a cooperative, and acquired its property from the City in a deed dated December 7, 1982. I advised Dr. Blakely and 477 West 142nd Street HDFC that as an HDFC cooperative, it could be eligible for tax relief under section 577-b of the New York Private Housing Finance Law. I informed 477 West 142nd Street HDFC that HDFC cooperatives which owe back real estate taxes may have taxes which accrued prior to January 1, 2001 suspended, and ultimately forgiven, by entering into and complying with a regulatory agreement administered by the City. The requirements for receiving such an agreement include providing HPD with certified copies of the most recent annual HDFC Board election, the most recent audited annual financial report, minutes of the shareholder meeting approving the regulatory agreement, newly adopted corporate documents, and the rent roll, as well as a projected budget, a certificate of fire and liability insurance, and a plan for curing Housing Code violations. See N.Y. Priv. Hous. Fin. Law § 577-b.

8.    477 West 142nd Street HDFC repeatedly asked HPD for assistance, but 477 West 142nd Street failed to submit any of the required documentation to apply for a regulatory agreement.

_Myriam Ellis_
MYRIAM ELLIS

Sworn to before me this
19 day of December 2006

_Alfonso Polanco_
NOTARY PUBLIC

ALFONSO POLANCO
Notary Public, State of New York
No. 01PO4976878
Qualified in Kings County
Commission Expires Jan. 22, 20_09_

# Exhibit

# I

**477 WEST 142ND STREET HDF CORPORATION**
**1661 AMSTERDAM AVENUE**
**NEW YORK, N.Y. 10031**

*January 10, 1992*

*Mr. George Hu, Superintendent*
*In Rem Administration*
*New York City*
*Department of Finance*
*25 Elm Place*
*Brooklyn, N.Y. 11201*

*Dear Mr.Hu;*

*Please consider this letter a follow-up to our conversation in which I inquired as to whether our building 477 West 142nd Street had been made the subject of an "In Rem" proceeding. This inquiry was prompted by the enclosed document which I received on December 31, 1993.*

*I am President of the 477 West 142nd Street HDFC and was President of the Corporation at the time of the execution of the proposed In Rem agreement. (I still do not have a copy of the fully executed document. Would you please forward me a copy of the fully executed document with signatures of the representatives of the City of New York?)*

*None of the officers of the Corporation nor any of the shareholders of the Corporation to my understanding had knowledge of the execution of the "In Rem" agreement.*

*Shelley Callendar executed this agreement without prior approval of the Corporation. she was acting out side the authority of commonwealth Management Systems, Ltd.*

*On November 30, 1992 we received notice of their intention to terminate their services as managing agent of our property. You will note that the payments under agreement were not to come due until after they had terminated their relationship. For these reasons it is not our intention to ratify that contract.*

*Please inform us of a date that we can discuss the current and past status of our taxes. If an "In Rem" agreement is necessary, it is our desire to negotiate an agreement consistent with your requirements and our ability to pay.*

*You will note that the enclosed bill incorrectly identified the property which makes it difficult for us to discuss whether or not our property was the subject of an In Rem proceeding or had been placed in that status. PLease advise us of the steps that you are taking to correct your records. If it is outside the scope of your responsibility please advise of the proper channels to correct the error. We will be prepared to discuss this matter at the proposed meeting.*

*Sincerely,*

*Delois Blakely*
*President, 477 WEST 142ND STREET HDCF*

*cc:*
*Shareholders, 477 WEST 142ND STREET HDFC*



# FINANCE
## NEW • YORK
THE CITY OF NEW YORK
DEPARTMENT OF FINANCE

January 19, 1993

477 West 142nd Street HDF Corp
1661 Amsterdam Avenue
New York, N.Y. 10031

Attention:  Ms. Delois Blakely
            President, 477 West 142nd Street HDCF

                              Re:  Borough of Manhattan
                                   Block 2058, Lot 29

Dear Ms. Blakely:

    This is in reply to your letter dated January 10, 1993 regarding the above property.

    Unfortunately, the In Rem installment agreement cannot be recalculated, nor a new agreement provided, to incorporate the charges which accrued after the agreement was executed.

    Enclosed is a copy of the In Rem installment agreement that you requested. Be advised that the first installment payment of $660.00 is due on January 2, 1993. In your letter, you also stated that there was an enclosed bill which "incorrectly identified the property...". We did not find the bill in your envelope. You may send me a copy of the bill for our review.

    If you have further questions regarding this matter, please feel free to contact me at (718) 935-6537.

                              Sincerely,

                              George Hu
                              Manager, Central In Rem

GH/bb
Enclosure

CAROL O'CLEIREACAIN • COMMISSIONER • THE CITY OF NEW YORK • DEPARTMENT OF FINANCE • 25 ELM PLACE • BROOKLYN • NY 11201

FEB 10  1 49 PM '93

RECEIVED BY
THE CITY COLLECTOR

477 W. 142ND ST. H.D.F. CORPORATION
1661 AMSTERDAM AVE.
NEW YORK, NY  10031

1006

18-33
210

PAY TO THE ORDER OF THE CITY COLLECTOR ONLY    Feb 10   19 93

PAY
TO THE
ORDER OF  City Collector                          $ 660.00

Six Hundred + Sixty _____ DOLLARS

CITIBANK®
CITIBANK, N.A. (N.Y.A.)
MORNINGSIDE GARDENS BRANCH, 1310 AMSTERDAM AVENUE
NEW YORK, NY 10027

                                                    John Bishop

FOR 1st Inst. Rem Installment

⑈00⑆00⑆⑈ ⑈0⑈⑆⑈0000089⑈ 03⑆5899⑈⑈

## CHANGE OF NAME OR ADDRESS

If your name or mailing address has changed, the fastest way to let us know is by visiting the Department of Finance online at nyc.gov/propertytaxes and filling out a change of address form. Or, you can fill in and mail the form below.

BOROUGH _MANHATTAN_      BLOCK _02058_ LOT _0029_

NAME _DR. DELOIS BLAKELY - HDFC - NFF_

STREET ADDRESS _477 WEST 142ND STREET - Suite 2_

CITY _NEW YORK_      STATE _N.Y._    ZIP CODE _10031_

SIGNATURE _Delin Blakely - President HDFC_ DATE _7/1/04_

_477 WEST 142ND STREET - HDFC - NFF_

---

## OFFICIAL CHECK

REMITTER                     41-60 Main Street
                             PO Box 522652
                             Flushing, N.Y. 11352-0652

GreenPoint Bank

23-97
1020

No. 574678183-7

Issued By Integrated Payment Systems Inc., Englewood, Colorado
Bank One, NA, Denver, Colorado

07/01/2004

PAY $ ****2,930.49

DATE

PAY TO THE N.Y.C. DEPARTMENT OF FINANCE
ORDER OF

PAYMENT
AMOUNT

Drawer: GreenPoint Bank

COUNTERSIGNATURE REQUIRED
ON AMOUNTS OVER $40,000

(AUTHORIZED SIGNATURE)

⑈31,00⑈ ⑈1020000979⑈ 6800574678183⑈

| NOTICE NUMBER | Q | ACCT ID | A/T | B | BLOCK | LOT | E | DUE DATE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|---|---|
| 610989204060401 | 1 | 00000 | 270 | 1 | 02058 | 0029 | | 07/01/04 | 2,930.49 |



TOTAL TAX                          2,930.49

350175271420 Rev 1 11/02

## OFFICIAL CHECK

REMITTER 41-60 Main Street
NEW POINTE HOLDINGS NY 11552-0652
PO Box 522652
Hewlett, NY 11552-0652

23-97
1020

No. **574678183** 7

**GreenPoint** **Bank**

Issued By Integrated Payment Systems Inc., Englewood, Colorado
Bank One, NA, Denver, Colorado

07/01/2006

**PAY $**

DATE

PAY TO THE
ORDER OF
U.Y.C. DEPARTMENT OF FINANCE

PAYMENT
AMOUNT

Drawer: GreenPoint Bank

COUNTERSIGNATURE REQUIRED
FOR AMOUNTS OVER $5,000

AUTHORIZED SIGNATURE

COUNTERSIGNATURE

⑈340021⑈ ⑇102000979⑇ 68005746781835⑈

| NOTICE NUMBER | O | ACCT ID | A/T | B | BLOCK | LOT | E | DUE DATE | AMOUNT DUE |
|---|---|---|---|---|---|---|---|---|---|
| 610989204060401 | 1 | 00000 | 270 | 1 | 02058 | 0029 | | 07/01/04 | 2,930.49 |

TOTAL TAX                    2,930.49

P.O. BOX 32
NEW YORK, NY 10008-0032

AMT. DUE 07/01/04            2,930.49

477 W 142 ST H D F C
V. WARREN
477          W 142ND ST
APT 1
NEW YORK        NY 10031-6239

Please write borough, block and lot on check
or money order payable to the
NYC Department of Finance.

☐ CHECK IF NAME OR
ADDRESS CHANGE
*(SEE REVERSE SIDE)*

**477 W 142nd Street HDFC Corporation**
**Consolidated Statement of Net Excess**
**For the Twelve Months Ending December 31, 2004**
*Cash Basis*

**Revenue**

| | | | |
|---|---|---|---|
| Rental Income | | | |
| Income From Other Sources (1) | | $ 30,400.00 | $ 30,400.00 |
| Total Revenue | | | 7,627.49 |
| | | | 38,027.49 |

**Building Direct Operating Expenses**

| | | |
|---|---|---|
| Building Maintenance | | |
| Utilities Expenses: | 3,809.55 | |
| Heating Oil | - | |
| Con Edison | 12,168.84 | |
| Telephone | 1,303.81 | |
| Repairs | 207.11 | |
| Insurance | 2,903.78 | |
| Real Estate Taxes-nyc dept finance | 3,773.44 | |
| Misc | 2,930.49 | |
| Postage | 430.35 | |
| Sub-Total Building Direct Operating Expenses | 47.35 | |
| | | 27,574.70 |
| Building Operating Income before Indirect | | $ 2,825.30 |

**Building Indirect Administrative Expenses**

| | | |
|---|---|---|
| Computer | | |
| Computer Repairs | 147.15 | |
| Office Expense | 305.00 | |
| Meals & Entertainment | 2,781.32 | |
| Printing Expense | 1,251.50 | |
| Consulting Expense | 1,381.44 | |
| Video | 1,020.90 | |
| Travel | 413.93 | |
| Transportation | 671.08 | |
| Fundraising Expense | 1,633.80 | |
| Advertising | 749.94 | |
| Sub-Total Building Indirect Administrative Expenses | 181.66 | |
| | | 10,517.72 |

| | |
|---|---|
| Total Operating Expenses | 38,092.42 |
| Net Excess/(Deficit) | $ (64.93) |

**Notes:**

Ms. Callender' Jan Maintenance not received
Sec. 8 Amount received on behalf of Dr. Blakely

| | |
|---|---|
| | (400.00) |
| Adjusted Net Excess/(Deficit) | $ (615.00) |
| | $ (1,079.93) |

(1) Contributions made by New Future Foundation, Inc. $7,627

Prepared By:
New Future Foundation Inc.. - *Management Agent*

# Exhibit

# J

*477 WEST 142ND STREET HDF CORPORATION*
*1661 AMSTERDAM AVENUE*
*NEW YORK, N.Y. 10031*

*January 10, 1992*

*Mr. George Hu, Superintendent*
*In Rem Administration*
*New York City*
*Department of Finance*
*25 Elm Place*
*Brooklyn, N.Y. 11201*

*Dear Mr.Hu;*

*Please consider this letter a follow-up to our conversation in which I inquired as to whether our building 477 West 142nd Street had been made the subject of an "In Rem" proceeding.  This inquiry was prompted by the enclosed document which I received on December 31, 1993.*

*I am President of the 477 West 142nd Street HDFC and was President of the Corporation at the time of the execution of the proposed In Rem agreement.  (I still do not have a copy of the fully executed document.  Would you please forward me a copy of the fully executed document with signatures of the representatives of the City of New York?)*

*None of the officers of the Corporation nor any of the shareholders of the Corporation to my understanding had knowledge of the execution of the "In Rem" agreement.*

*Shelley Callendar executed this agreement without prior approval of the Corporation. she was acting out side the authority of commonwealth Management Systems, Ltd.*

*On November 30, 1992 we received notice of their intention to terminate their services as managing agent of our property.  You will note that the payments under agreement were not to come due until after they had terminated their relationship.  For these reasons it is not our intention to ratify that contract.*

*Please inform us of a date that we can discuss the current and past status of our taxes.  If an "In Rem" agreement is necessary, it is our desire to negotiate an agreement consistent with your requirements and our ability to pay.*

*You will note that the enclosed bill incorrectly identified the property which makes it difficult for us to discuss whether or not our property was the subject of an In Rem proceeding or had been placed in that status.  PLease advise us of the steps that you are taking to correct your records.  If it is outside the scope of your responsibility please advise of the proper channels to correct the error. We will be prepared to discuss this matter at the proposed meeting.*

*Sincerely,*

*Delois Blakely*
*President, 477 WEST 142ND STREET HDCF*

*cc:*
*Shareholders, 477 WEST 142ND STREET HDFC*

1) Jan 93   "660"
2) Apr 93

# FINANCE
## NEW • YORK
THE CITY OF NEW YORK
DEPARTMENT OF FINANCE

January 19, 1993

477 West 142nd Street HDF Corp
1661 Amsterdam Avenue
New York, N.Y. 10031

Attention: Ms. Delois Blakely
President, 477 West 142nd Street HDCF

Re: Borough of Manhattan
Block 2058, Lot 29

Dear Ms. Blakely:

This is in reply to your letter dated January 10, 1993 regarding the above property.

Unfortunately, the In Rem installment agreement cannot be recalculated, nor a new agreement provided, to incorporate the charges which accrued after the agreement was executed.

Enclosed is a copy of the In Rem installment agreement that you requested. Be advised that the first installment payment of $660.00 is due on January 2, 1993. In your letter, you also stated that there was an enclosed bill which "incorrectly identified the property...". We did not find the bill in your envelope. You may send me a copy of the bill for our review.

If you have further questions regarding this matter, please feel free to contact me at (718) 935-6597.

Sincerely,

George Hu
Manager, Central In Rem

GH/bb
Enclosure

Exhibit N

LLR 656 PG 865

## DEED

$2²⁰
deed
tax

This DEED made the 7th day of December , 1982, between THE CITY OF NEW YORK, a municipal corporation having its principal office at the City Hall, Borough of Manhattan, City and State of New York, (the "City"), and 477 West 142nd Street Housing Development Fund Corporation a corporation duly organized pursuant to the provisions of Article XI of the Private Housing Finance Law of the State of New York, as amended having an office for the conduct of business at 477 West 142nd Street in the Borough of Manhattan, City and State of New York, (the "HDFC")

WHEREAS, the Board of Estimate of the City of New York, by resolution adopted on the 18th day of March, 1982 (Calendar No. 10), duly authorized the sale of the premises, more fully described below (the "Premises"), for the negotiated price of Two Thousand ($2,00.00) Dollars.

NOW, THEREFORE, the parties agree as follows:

(1)   The City, in consideration of Two Thousand ($2,000.00) Dollars lawful money of the United States and other good and valuable consideration paid by the HDFC hereby grants and releases unto the HDFC, its successors and assigns forever:

All that certain piece(s) or parcel(s) of land, together with the buildings and improvements thereon erected, situated, lying and being in the Borough of Manhattan, City and State of New York designated on the Tax Map of the City of New York, for such Borough as Block 2058, Lot 29 as said Tax Map was on July 6, 1977. , said premises being presently known as the street number 477 West 142nd Street.

For the HDFC. its successors and assigns TO HAVE AND TO HOLD the Premises forever, subject to:

(a)   the provisions of all laws, codes, statutes, ordinances, acts, rules and regulations of any local, state or federal government, or any agency or subdivision thereof, having jurisdiction, or any violation of same, existing at the time of delivery of this deed;

(b)   building restrictions and zoning regulations in effect at the time of closing and any facts disclosed in the City of New York tax and zoning maps and zoning resolutions;

(c)   covenants, agreements, easements and restrictions of record and encroachments. utility easements and rights of way that may affect the property.

(d)   any state of facts that an accurate survey and thorough inspection of the property would reveal

(e)   the rights of tenants and persons in possession, if any;

(f)   pending assessments if any, all of which the HDFC hereby agrees to assume and pay;

(g)   the trust fund provisions of Section 13 of the New York State Lien Law.

REEL **656** PG **866**

# BOARD OF ESTIMATE
## CITY OF NEW YORK

Cal. No. 10.

Whereas, The Board of Estimate approved resolutions on February 21, 1980 (Cal. No. 78) and May 28, 1981 (Cal. No. 278) setting forth the general policy of the City of New York with respect to the sales price, and terms and conditions of sale and resale of City-owned residential buildings to Article XI Housing Development Fund Corporations; and

Whereas, The 477 West 142nd Street Housing Development Fund Corporation ("Housing Company") is to be organized pursuant to Article XI of the Private Housing Finance Law of the State of New York (the "Law") for the purpose of developing a housing project for persons of low income; and

Whereas, The Housing Company proposes to purchase and develop such Housing Project on a parcel of City-owned land consisting of Block 2059, Lot 29, in the Borough of Manhattan, City and State of New York, and known as 477 West 142nd Street ("Premises"); and

Whereas, On March 18, 1982 (Cal. No. 1) the Board of Estimate approved a recommendation of the City Planning Commission approving the proposed disposition pursuant to Section 197-c of the New York City Charter; and

Whereas, The Board of Estimate has held a public hearing upon due notice, pursuant to Article XI of the Law to consider the sale of the Premises to the Housing Company; and

Whereas, The provisions of Section 197-e of the City Charter have been adhered to; and

Whereas, The proposed disposition is in conformance with the Board of Estimate resolutions of February 21, 1980 (Cal. No. 78) and May 28, 1981 (Cal. No. 278);

Now Therefore be it

Resolved,

That the Mayor, Deputy Mayor, or Deputy Commissioner of the Division of Real Property, Department of General Services of the City of New York, be and hereby is authorized to execute and deliver a deed conveying the Premises located on Block 2059, Lot 29 to the Housing Company for the price of Two Thousand Dollars ($2,000), a price equivalent to the fixed price of $250 per dwelling unit, without public auction or bidding, pursuant to Section 576-a of the Private Housing Finance law after approval as to form by the Corporation Counsel, upon such other terms and conditions as are embodied in the resolutions of the Board of Estimate dated February 21, 1980 (Cal. No. 78) and May 28, 1981 (Cal. No. 278) and the City Clerk (or Acting City Clerk) is hereby directed to attest said deed and affix the seal of the City of New York thereto

A true copy of resolution adopted by the Board of Estimate
March 18, 1982.

*Theodore H. McKeins*

Secretary

REEL 656 PG 867

(2)   The HDFC covenants and agrees not to sell, transfer, exchange or otherwise dispose of or lease all or substantially all of the Premises for ten (10) years from the date of this Deed without prior written approval of the Commissioner of the City's Department of Housing Preservation and Development.

(3)   The HDFC covenants and agrees to operate the Premises solely as a housing project for persons or families of low income as defined in Section 576 of Article XI of the Private Housing Finance Law for ten (10) years from the date of this Deed.

IN WITNESS WHEREOF, the City has caused this Deed to be executed by the Deputy Mayor of the City of New York as of the date and year first written above and by the City Clerk, and its corporate seal to be affixed and the HDFC has duly executed this Deed.

THE CITY OF NEW YORK

By _____
    Nathan Leventhal, Deputy Mayor

By _____
First Deputy City Clerk   HERBERT F. RYAN

New York 1982

477 WEST 142nd STREET HOUSING
DEVELOPMENT FUND CORPORATION

By _____
President  SHIRLEY PITTS

APPROVED AS TO FORM

_____
Acting Corporation Counsel

-2-

REEL 656 PG 868

STATE OF NEW YORK )
                  )SS
COUNTY OF NEW YORK)

On this 7th day of December 1982 before me personally came Nathan Leventhal, to me known and known to me to be the Deputy Mayor of the City of New York and the same person who executed the foregoing instrument, and he acknowledged that he executed the foregoing instrument on behalf of the City of New York as said Deputy Mayor pursuant to the authority vested in him by resolution of the Board of Estimate, more fully described in the within instrument.

*Barbara Ross*

BARBARA D. ROSLYN
Notary Public, State of New York
No. 4752344
Qualified in New York County
Commission Expires March 30, 1983.

STATE OF NEW YORK  )
                   ) SS.:
COUNTY OF NEW YORK )

On this 7th day of December 1982, before me personally came HERBERT F. RYAN with whom I am personally acquainted and known to me to be the First Deputy City Clerk of the City of New York, who being by me duly sworn, did depose and say that he resides at 1011 78th Street, Brooklyn, New York 11228; that he is the First Deputy City Clerk of the City of New York, the municipal corporation described in and which executed the foregoing instrument; that he knows the seal of said municipal corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed as provided by law, and that he signed his name thereto as First Deputy City Clerk by like authority.

*Tillie Zmurko*

TILLIE ZMURKO
COMMISSIONER OF DEEDS
CITY OF NEW YORK No. 3-611
Certificate Filed in New York County
Commission Expires 16/1/83

Notary Public

STATE OF NEW YORK )
                  )SS.
COUNTY OF NEW YORK)

On the 20th day of 12 19  , before me personally came SHISLEY PITTS to me known, who, being by me duly sworn, did depose and say that She resides at No. 477 West 142 Street, Manhattan that She is the PRESIDENT of 477 West 142nd Street Housing Development Fund Corporation the corporation described in and which executed the foregoing instrument, that She knows the seal of said corporation that the seal affixed to said instrument is such corporate seal; that it was affixed by order of the board of directors of said corporation, and that she signed her name thereto by like order.

*Sumpod K. Murdichian*

SUMPOD K. MURDICHIAN
Notary Public, State of New York
No. 31-8663600 Qual. in New York County
Term Expires March 30, 1984

-3-

REEL **656** PG **869**

02 DEC 22 P12: 56

CITY REGISTER N.Y. COUNTY

REC - 11631 M

D E E D

THE CITY OF NEW YORK

TO

477 WEST 142nd STREET
HOUSING DEVELOPMENT FUND CORPORATION

OFFICE OF CITY REGISTER
New York County
RECORDED
Witness my hand
and official seal

George J. Raech

CITY REGISTER
The land affected by the within
instrument lies in

Block 2058

Lot(s) 29    LOC. VER.

Comp SA (n1)

on the Tax Map of the County
of New York, City and State of
New York

15376

$ 2.20
REAL ESTATE
DEC 22 1982
TRANSFER TAX
NEW YORK
COUNTY
1982

REG. FEE   A-15

SGT #   220

RPT #   R 5787

Record and return to:

JOSEPH R. MACK, Esq.
2580 Adam Clayton Powell, Jr.
Boulevard
New York, N.Y. 10039