# Visit UPTOWNflavor.com

## March 8, 2006

### Harlem Launching Queen Mother Coffee Brand [Cafes, Specialty Shops] — uptownflavor @ 3:38 pm

Harlem Launching of Queen Mother Coffee

*On the United Nation's International Women's Day (declared and celebrated globally), Wednesday, March 8, 2006, the world renowned Queen Mother Dr. Delois Blakely, Community Mayor of Harlem carrying the legacy of of Queen Mother Moore, and other women of Harlem, will be launching "Queen Mother Coffee" — an exclusive brand of organic Ethiopian coffee blended with cardamom and cinnamon. The launching will take place in Harlem at the Uptown Juice Bar located at 54 West 125th Street (between Lenox and 5th Avenue) from,10am to 12 noon (est).*

(PRWEB) March 8, 2006 — On the United Nation's International Women's Day (declared and celebrated globally), Wednesday, March 8, 2006, the world renowned Queen Mother Dr. Delois Blakely, Community Mayor of Harlem carrying the legacy of of Queen Mother Moore, and other women of Harlem, will be launching "Queen Mother Coffee" — an exclusive brand of organic Ethiopian coffee blended with cardamom and cinnamon. The launching will take place in Harlem at the Uptown Juice Bar located at 54 West 125th Street (between Lenox and 5th Avenue) from,10am to 12 noon (est).

Queen Mother Coffee is an economic development initiative that is the "brain child" of Queen Mother Dr. Blakely and sponsored by New Future Foundsation, Inc. and Harlem Women International. The proceeds from this venture is one of the projects to Save Queen Mother Moore International House. A major goal in saving the house is to provide affordable housing and establish women's small business Incubators. Queen Mother Coffee is available in 4oz and 16 oz packages. Gift baskets are also available.

"Women's business initiatives play a major role in sustainable and economic development of communities globally," said Queen Mother Blakely. Queen Mother Coffee is set to be a demonstration model for the world. Women who are looking forward to doing business with governments, institutions and corporations such as Fourtune 500's through concessions, contracts and set asides now have a blueprint to follow.

Contact:
Lanissa Aisha
212-368-3739
www.newfuturefoundation.com

## Comments »

The URI to TrackBack this entry is: *http://uptownflavor.blogsome.com/2006/03/08/harlem-launching-queen-mother-coffee-brand/trackback/*



**Verizon FiOS**
Fiber optic high-speed
Internet and TV



## Photos: Sean Bell case

1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23
24 25 26 27 28 29 30 31 32 33 34 35 36 37 38 39 40 41 42 43
44 45 46 47 48 49 50 51 52 53 54 55 56 57 58 59 60 61 62 63
64 65 66 67 68 69 70 71 72 73 74 75 76 77 78 79 80 81 82 83
84 85 86 87 88 89 90 91 92 93 94 95 96 97 98 99 100 101 102
103 104 105 106 107 108 109 110 111 112 113 114 115 116 117 118
119 120 121 122 123 124 125 126 127 128 129 130 131 132 133 134
135 136 137 138 139 140 141 142 143 144 145 146 147 148 149 150
151 152 153 154 155 156 157 158 159 160 161




Dr. Delois N. Blakely, the self-proclaimed community mayor of Harlem, left, listens in as U.S. Rep. Charles Rangel, D-N.Y., speaks to reporters outside City Hall in New York, Monday, Nov. 27, 2006, after attending a meeting of community leaders in the wake of the weekend shooting death of Sean Bell, an unarmed bridegroom. (KATHY WILLENS, Associated Press) Nov 27, 2006

**BUY a Newsday photo**

**Exhibit C**

the State of New York,
County of New York, at the Court House,
located at 60 Centre Street, in the Borough of
Manhattan, City and State of New York, on
the 28 day of July, 2005.

P R E S E N T :

HON: **JANE S. SOLOMON**

Justice.

-------------------------------------------------------x

IN REM TAX FORECLOSURE ACTION NO. 46

BOROUGH OF MANHATTAN

SECTIONS 3, 6, 7 AND 8

TAX CLASSES 1 AND 2

-------------------------------------------------------x

**JUDGMENT OF
FORECLOSURE PURSUANT
TO ADMINISTRATIVE CODE
§§ 11-412 AND 11-412.1**

Index No. 580001/2004

Upon the List of Delinquent Taxes duly verified and duly filed herein pursuant to

Section 11-405 of the Administrative Code of the City of New York ("Admin. Code") in the

Office of the Clerk of New York County on January 9, 2004; and upon reading and filing the

affirmation and affidavits of regularity referred to below, attesting to the performance of the acts

required by the provisions of Title 11, Chapter 4 of the Administrative Code; and upon due proof

that the Notice of Foreclosure was duly published after the filing of such List once a week for six

weeks pursuant to Admin. Code § 11-406 in the City Record, the New York Law Journal, and

the New York Post, the latter two newspapers duly designated for that purpose by the

Commissioner of Finance of the City of New York; and upon due proof of the posting of such

Notice of Foreclosure; and upon due proof of the mailing of the Notice of Foreclosure to each

owner of property affected by the List of Delinquent Taxes, any mortgagee thereof, or any

registration card pursuant to the provisions of Admin. Code §§ 11-416 and 11-417; and upon due proof that the Notice of Foreclosure was mailed to the name and address, if any, appearing in the latest annual record of assessed valuations of every property affected by the List of Delinquent Taxes as to which a registration card was not filed; and it appearing that all of the procedures and proceedings required by the provisions of Title 11, of Chapter 4 of the Administrative Code have been duly performed; and upon reading and filing the affidavit of regularity of Martha E. Stark, Commissioner of Finance of the City of New York, sworn to on June 28, 2005, showing that certain parcels have been redeemed pursuant to the provisions of Admin. Code § 11-407 and that certain parcels have had the taxes thereon paid, cancelled, or liquidated, or are subject to an order in a bankruptcy proceeding, or have been condemned or included in error and have therefore been withdrawn pursuant to the provisions of Admin. Code § 11-413; and upon reading and filing the affidavit of Shaun Donovan, Commissioner of Housing Preservation and Development, sworn to June 29, 2005; and upon reading and filing the affirmation of regularity of Andrea Feller, Assistant Corporation Counsel, dated June 29, 2005, showing that this action must be severed as to certain parcels enumerated in said affirmation as to which litigation, timely answers, or installment agreements are still pending pursuant to the provisions of Admin. Code § 11-409; and the Court having made and filed its decision dated July 28, 2005, containing a statement of the facts found and the conclusions of law thereon, showing the compliance by the City of New York with all of the jurisdictional requirements of Title 11, Chapter 4 of the Administrative Code;

NOW, on the motion of MICHAEL A. CARDOZO, Corporation Counsel, attorney for the City of New York, it is

2

further

ORDERED, ADJUDGED AND DECREED, that final judgment is herein granted to the City of New York with respect to the parcels of class one and class two real property listed in Exhibit "A," annexed hereto, which designates each parcel by serial number as the same appears on the List of Delinquent Taxes, and section, block and lot numbers as the same appear on the Tax Map of the City of New York, for the County of New York and in the aforesaid List of Delinquent Taxes; and it is

ORDERED, ADJUDGED AND DECREED, that the City of New York is the owner and holder of unpaid tax liens affecting the parcels of real property hereinafter described, in Exhibit "A" in the amounts with interest thereon as shown in the List of Delinquent Taxes referred to above; and it is hereby further

ORDERED, ADJUDGED AND DECREED, that this judgment of foreclosure is discontinued with regard to the parcels of class one and class two real property, located within Tax Map Sections 3,6, 7 and 8 of New York County, which have been redeemed pursuant to Admin. Code § 11-407, and which parcels are described in Exhibit "B," annexed hereto, and it is hereby further

ORDERED, ADJUDGED AND DECREED, that this judgment of foreclosure is severed, without prejudice, with regard to the parcels of class one and class two real property, located within Tax Map Sections 3, 6, 7 and 8 of New York County, which are listed in Exhibit "C," as to which parcels litigation, timely answers, or installment agreements are still pending or have been withdrawn for enforcement by way of a tax lien sale conducted pursuant to Title 11, Chapter 3 of the Administrative Code and that the City of New York is hereby given leave to

3

caption of this action; and it is hereby further

ORDERED, ADJUDGED AND DECREED, that a sale of any of the parcels of property hereinafter described is dispensed with and the Commissioner of Finance of the City of New York is hereby authorized to prepare and execute a deed, or deeds, conveying either to the City of New York, or with respect to the class one and class two parcels, to the City or to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development, full and complete title to said parcels as described herein; and it is hereby further

ORDERED, ADJUDGED AND DECREED, that upon the execution of said deed or deeds to the City or to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development, the grantee shall have possession and shall be seized of an estate in fee simple absolute in such lands, and all persons, including the State of New York, infants, incompetents, absentees and nonresidents who may have had any rights, title, interest, claim, lien or equity of redemption, in or upon such lands shall be barred and forever foreclosed of all such rights, title, interest, claim, lien or equity of redemption as provided by Admin. Code §§ 11-412 and 11-412.1, except as otherwise provided by Admin. Code §§ 11-424 and 11-424.1 ; and it is hereby further

ORDERED, ADJUDGED AND DECREED, that any such conveyance of class one and class two real property to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development shall be for an existing use; and it is further

ORDERED, ADJUDGED AND DECREED, that unless and until the Commissioner of Finance executes a deed conveying parcels of class one and class two real

property pursuant to Admin. Code §§ 11-412.1 and 11-412.2 to the City of New York or to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development, the owners of such lands shall continue to have all of the rights, liabilities, responsibilities, duties and obligations of an owner, including, but not limited to, maintaining such lands in compliance with the housing maintenance, building and fire codes and all other applicable law; provided, however, that upon entry of judgment, HPD or its authorized agent may have access to the class one and class two parcels herein described for the purposes of conducting inspections; and it is hereby further

**ORDERED, ADJUDGED AND DECREED,** that, with respect to any and all parcels that are not conveyed to the City of New York or to the City or a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development (in the case of or with respect to the class one and class two parcels) within the statutory eight month period commencing upon entry the judgment pursuant to Admin. Code §§11-421.1 (c), (d) and (i) (unless the statutory period is tolled or extended by operation of law), the Commissioner of Finance shall direct the Corporation Counsel to prepare and cause to be entered an order discontinuing the instant in rem foreclosure proceeding and vacating and setting aside the final judgment as to those parcels.

ENTER

F I L E D

AUG 1 1 2005

COUNTY CLERK'S OFFICE
NEW YORK

DATE 9|2i|05
I hereby certify that the foregoing paper is a true copy of the original thereof, filed in my office on the day of 8|11|05

J.S.C.

JANE S. GOLDMON County Clerk and clerk of the Supreme Court of New York County
NO FEE OFFICIAL USE

CLERK

5

**Exhibit D**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------- X

IN REM TAX FORECLOSURE ACTION NO. 46

BOROUGH OF MANHATTAN

SECTIONS 3, 6, 7 AND 8

TAX CLASSES 1 AND 2

**AFFIDAVIT OF**
**SHAUN DONOVAN**

Index No. 580001/2004

-------------------------------------------------------------------- X


STATE OF NEW YORK    )
                     :   SS.:
COUNTY OF NEW YORK   )

**SHAUN DONOVAN,** being duly sworn, deposes and says:

1.     I am the Commissioner of the New York City Department of Housing Preservation and Development ("HPD"). I am fully familiar with the matters set forth herein. I submit this affidavit to explain to the Court the City's third party transfer program as authorized by Title 11, Chapter 4 of the New York City Administrative Code ("Admin. Code") as amended by Local Law 37 of 1996 and Title 28, Chapter 8 of the Rules of the City of New York (hereinafter the "Third Party Transfer Program" or "Program"). The proposed judgment of in rem foreclosure in the above-referenced action would authorize the City to implement the Third Party Transfer Program for the residential properties included in the Judgment.

2.     The Third Party Transfer Program allocates the City's limited resources to anti-abandonment and community development activities, rather than property management and maintenance. The Program allows HPD to protect tenants, marshal community resources to

support private housing, and ensure that the City's housing stock remains in private ownership.

3.    Legislation enacted in 1996 and 1997 modified the City's options and procedures for real property tax enforcement, by creating the Third Party Transfer Program as well as the City's current tax lien sale program. The goal of the Third Party Transfer Program was to provide flexibility, speed and cost-effectiveness as the City intervenes to leverage community resources and prevent abandonment. While the Third Party Transfer provisions of the law do not alter the City's ability to take title to these properties through a traditional in rem foreclosure, it authorizes the Court to give the Commissioner of the New York City Department of Finance ("Finance" or "DOF") the authority to transfer residential class one and class two properties from the delinquent taxpayer to a third party without the City taking title to the property. See Administrative Code § 11-412.1. The proposed judgment in this case gives the Commissioner this authority.

4.    The Third Party Transfer Program is particularly tailored to properties which have been abandoned or neglected, or are defined by law as "distressed."[1] Such properties often require intervention before they can be restored fully to the tax rolls. Prior to commencement of third party transfer, HPD's Division of Anti-Abandonment conducts

---

[1] Distressed property is defined in the statute as any residential class one and two property that is subject to a tax lien with a lien to market value ratio equal to or greater than 15% and with an average of five or more hazardous or immediately hazardous housing code violations per unit, or with emergency repair liens in an amount greater than one thousand dollars. See Administrative Code §§ 11-401(4) and 11-404.1(a). Pursuant to Admin. Code §§11-401(c) and 11-401.1(a), distressed properties must be excluded from tax lien sales, which are available to the City for tax delinquencies on viable residential and commercial properties. Properties included in tax lien sales, if ultimately foreclosed, are auctioned by the new lien holder to the highest bidder. See Admin. Code §11, Chapter 3 (Local Laws 26 and 37 of 1996 and Local Law 69 of 1997).

2

extensive owner outreach to encourage owners to pay their tax arrears and to seek assistance to deal with any physical or management problems affecting a building's underlying viability.

5.     Unlike the viable properties that are auctioned to the highest bidder in tax lien sales, the properties in the Third Party Transfer Program are in generally poor condition and, therefore, less marketable. Accordingly, HPD selects the new owners of the third party transfer properties according to guidelines provided in the statute. See Admin. Code § 11-412.1(b)(2); RCNY §8-03. The rules provide that transfer must be made to third parties deemed qualified and designated by HPD. HPD may designate such parties pursuant to criteria such as residential management experience; financial ability; rehabilitation experience; ability to work with government and community organizations; neighborhood ties; and whether the third party is a neighborhood-based for-profit individual or organization, a not-for-profit organization or a responsible legal tenant. HPD selects the eligible new owners and generally assists in funding any required rehabilitation through its loan program. Thus, under third party ownership, properties will be rehabilitated and managed by responsible owners, add to the City's stock of affordable housing and eventually be restored to the City's tax rolls.

6.     The statute also provides for City Council review of the Third Party Transfer. Prior to the execution of a deed conveying title to a third party deemed qualified and designated by HPD and pursuant to Admin. Code § 11-412.2, the Commissioner of Finance must notify the City Council of the proposed conveyance. The Council may disapprove of the transfer within forty-five days of notification, otherwise the transfer is deemed approved.

7.    Owners, mortgagees, and other interested parties retain the right to redeem their property during the first four months after the final judgment is entered. Although not required by Administrative Code § 11-412.1, as set forth fully in the affidavit of regularity of Martha E. Stark, Commissioner of Finance, the City will send post judgment notices to owners and parties who have filed cards requesting notification of delinquent property taxes under Administrative Code § 11-406(c).

8.    If the Commissioner of Finance has not transferred title to a third party deemed qualified and designated by HPD or to the City within the statutory period after judgment of foreclosure is entered, the in rem action is to be discontinued with respect to any parcel not transferred, in which case the delinquent owner will remain the owner of record. For the City to then take title or transfer title to a third party deemed qualified and designated by HPD, the Commissioner of Finance must initiate a new tax foreclosure proceeding.

9.    In another modification of the in rem law, the Commissioner of Finance was given the authority to offer incentive installment agreements to owners of class one or class two buildings in an in rem action. The new agreements offer a lower interest rate on the delinquent charges depending on the down payment made. The incentive installment agreements were also made self liquidating, unlike the in rem installment agreements that existed prior to April 1995, so that owners do not face a balloon payment at the end of the term. These two changes made it more likely that owners would successfully pay off their installment agreement, restore their property to the tax rolls and keep it in private hands. See Administrative Code § 11-409.

10.    Another significant change in the in rem law authorized the Commissioner of Finance to target the parcels that are included in the "list of delinquent taxes," which is

4

prepared prior to the commencement of an in rem foreclosure action, to "all parcels, or all parcels within a particular class or classes, that are within a particular borough or [portion of a borough] section of a tax map or portion of a section of a tax map of the city and on which there are tax liens subject to foreclosure... provided... that no such portion shall be smaller than a block....". See Administrative Code § 11-405(a). This provision differs from the old law which provided that when the City instituted an in rem foreclosure action it name all properties located in the borough that are subject to foreclosure. In addition, Administrative Code § 11-412.1, entitled "Special procedures relating to final judgment and release of class one and class- two property", now allows the City to go to judgment on these property classes independent of other types of properties that may have been included initially in a particular in rem action. The proposed Judgment in the case at bar therefore covers only residential properties on certain blocks within the Borough of Manhattan. These changes made it possible for HPD to marshal its resources to turn around neighborhoods by focusing its efforts so that all buildings in poor condition in one area can be rehabilitated at once, making it more likely that the Third Party Transfer Program will bring about meaningful change for all the residents of the targeted area.

11.    The instant in rem action was commenced on January 9, 2004 and, as set forth fully in the affidavit of regularity of Martha E. Stark, Commissioner of Finance, DOF sent notices to all affected owners and other parties as required by law and complied with all the necessary statutory pre-requisites for obtaining an in rem foreclosure judgment in this action. Accordingly, the Commissioner of Finance is seeking the Court's approval in the instant judgment to transfer title to the City or to third parties deemed qualified and designated by HPD

5

of those deteriorated residential class one and class two properties situated in Manhattan Tax Map Sections 3, 6, 7 and 8 which are subject to foreclosure in this in rem proceeding.

12.    The proposed judgment references provisions of the new in rem law and is consistent with the provisions of Administrative Code § 11-412.1. The modified in rem law is one of the most significant legislative initiatives to reform the City's housing preservation and community development efforts and its tax enforcement process. After judgment is entered, the residential buildings will be transferred in the City's Third Party Transfer Program to new owners who have demonstrated they have the resources and ability to fix the properties, remedy code violations and manage them effectively over the long term. I respectfully request that the Court grant expedited relief in this matter.

SHAUN DONOVAN

Sworn to before me this
27th day of June, 2005

NOTARY PUBLIC

MATTHEW ELLIOTT SHAFIT
Notary Public State of New York
No. 01SH43318
Qualified in New York County
Commission Expires June 12, 2006

6

Case 1:07-cv-03581-GEL    Document 18-5    Filed 08/10/2007    Page 16 of 60

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 58000I/04

IN REM TAX FORECLOSURE ACTION NO. 46

BOROUGH OF MANHATTAN

SECTIONS 3, 6, 7 AND 8

TAX CLASSES 1 AND 2

**AFFIRMATION OF REGULARITY WITH
ATTACHED EXHIBITS**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for the City of New York*
*100 Church Street, Room 3-235*
*New York, N.Y. 10007*

*Of Counsel: Andrea Feller*
*Tel.: (212) 7889555*
*NYCLIS No.*

*Due and timely service is hereby admitted.*

*New York, N.Y. ............................................*
*............................ 200 ...*

*Attorney for............................................*
*.............................. Esq.*

**Exhibit E**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------ x

IN REM TAX FORECLOSURE ACTION NO 46

BOROUGH OF MANHATTAN

SECTIONS  3, 6, 7 AND 8

TAX CLASSES 1 AND 2

------------------------------------------------------------ x

**AFFIDAVIT OF
REGULARITY**

Index No. 580001/2004

STATE OF NEW YORK          )
                          : SS.:
COUNTY OF NEW YORK    )

**MARTHA E. STARK,** being duly sworn, deposes and says:

1.     I am the Commissioner of the Department of Finance of the City of New York ("Finance" or "DOF").  As such, I am familiar with the facts set forth herein.  I submit this affidavit to (1) explain the proposed judgment in this in rem tax foreclosure proceeding, and (2) to demonstrate that the City complied with all the necessary statutory pre-requisites for obtaining an in rem foreclosure judgment pursuant to Title 11, Chapter 4 of the Administrative Code of the City of New York ("Admin. Code").

**THE PROPOSED JUDGMENT IN THIS IN REM PROCEEDING**

2.     In  the  instant  foreclosure  proceeding,  the  City  seeks  a  judgment  of foreclosure pursuant to Admin. Code § 11-412 and § 11-412.1 upon all parcels of class one, class two and class four real property located within Sections 3, 6, 7 and 8 on the Tax Map of the City of New York for the Borough of Manhattan and subject to this in rem tax foreclosure action.

3.     The proposed Judgment authorizes the Commissioner of Finance to deed properties from the delinquent taxpayer either to the City of New York or, with respect to the class one and two parcels, to the City or to a third party deemed qualified and designated by the

Commissioner of Housing Preservation and Development ("HPD"), conveying full and complete title to said parcels. Pursuant to Admin Code § 11-412.1, the City need not take title to class one and two parcels, but can transfer title directly to a third party deemed qualified and designated by the Commissioner of HPD. See also Affidavit of Shaun Donovan, Commissioner of HPD, sworn to on June 29, 2005, annexed hereto as Exhibit "G".

4.     Pursuant to law, the judgment provides that the Commissioner of Finance has eight months, commencing from the date the judgment is entered, in which to transfer foreclosed parcels to either the City or to a third party deemed qualified and designated by the Commissioner of HPD. See Admin. Code § 11-412.1(c). For the first four months following the date of entry, owners, mortgagees and other interested parties have the opportunity to redeem their properties. See Admin. Code § 11-4.12.1(d). During the four month mandatory redemption period, and unless or until the Commissioner of Finance executes a deed to either the City or to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development, existing owners retain possession and ownership of their properties and are responsible for their operation and management. See Admin. Code § 11-412.1(c).

5.     Following the expiration of the four-month redemption period, the Commissioner of Finance then has an additional four months to convey the properties to either the City or to third parties deemed qualified and designated by the Commissioner of Housing Preservation and Development. See Admin. Code § 11-412.1(c). If the Commissioner of Finance does not transfer title within the eight month period, the in rem action is discontinued with respect to the parcels not so transferred, and title remains with the owner. In that case, the

2

City must recommence a tax foreclosure proceeding in order to take or transfer title. See Admin. Code § 11-412.1(i).

6.    The Commissioner of Finance must notify the City Council prior to the execution of a deed conveying title to a third party deemed qualified and designated by the Commissioner of HPD. See Admin. Code § 11-412.2. If the Council disapproves of the transfer, it must act by local law within forty-five days of notification, otherwise the transfer is deemed approved. Id. The period of notification to the City Council of a third party transfer tolls the eight month transfer period under Admin. Code § 11-412.1(c).

7.    Although not required by Admin. Code § 11-412.1, the City will send post judgment notices by first class mail to all parties who have filed owner registration or in rem notification cards, or who are otherwise entitled to notice by virtue of Admin. Code § 11-406(c). Such notice will advise owners of the four month redemption period commencing on the date of entry of the judgment.

## THE CITY COMPLIED WITH ALL THE STATUTORY PRE-REQUISITES

8.    The City complied with all the necessary statutory procedures for the commencement of this in rem tax foreclosure action. On January 9, 2004, I caused to be filed in the office of the Clerk of the County of New York two duplicate verified Lists of Delinquent Taxes. These Lists included all parcels of property designated on the Tax Map of the City of New York for the Borough of Manhattan, Sections 3, 6, 7 and 8 affected by tax liens, as such tax liens are defined by Admin. Code § 11-401, held and owned by the City which on the date of filing were unpaid for the period required by § 11-404. The Lists contained as to each parcel included therein the following:

(a)    A serial number;

3

(b)     A brief description sufficient to identify each parcel affected by tax liens by stating the lot, block and section on the Tax Map and street and street number if there be such; and

(c)     A statement of the amount of each tax lien upon each parcel contained in said List of Delinquent Taxes, including those due and unpaid for less than the period required by Admin. Code § 11-404, together with the date or dates from which interest and penalties should be computed.

9.      On January 9, 2004, a certified copy of the List of Delinquent Taxes was filed in the following places:

(a)     In the Central Office of the Taxpayer Assistance, Planning and Payment Operations Division of the Department of Finance of the City of New York, 25 Elm Place, 4th floor Brooklyn, New York;

(b)     In the Office of the Corporation Counsel of the City of New York, Tax and Bankruptcy Litigation Division, 100 Church Street, New York, New York 10007; and

(c)     In the Office of the Manhattan Business Center of the Department of Finance, 66 John Street, 2nd floor, New York, New York 10038.

10.     As set forth in the affidavits of Annette Malatesta, sworn to on June 21, 2005 and Donald O'Connell, sworn to on June 27, 2005 (collectively, "Affidavits of Mailing"), pursuant to Admin. Code § 11-406(c), on or before the date of the first publication of the Notice of Foreclosure, a copy of the Notice of Foreclosure was mailed to each and every owner, mortgagee, lienor, encumbrancer or other person with an interest in such parcel entitled to receive such notice by virtue of having filed an owner's registration card or an in rem registration card pursuant to Admin. Code §§ 11-416 or 11-417, and with regard to any parcel as to which such cards were not filed, a copy was mailed to the name and address, if any, appearing in the

latest annual record of assessed valuations. Copies of the Affidavits of Mailing together with the Notice of Foreclosure are annexed hereto as Exhibit "B".

11. As set forth in the Affidavits of Posting of David Schloss and Jesus M. Martinez, annexed hereto collectively as Exhibit "D", on or before January 30, 2004 a copy of the Notice of Foreclosure was posted in each of the following conspicuous places:

a. The public notices bulletin board in the Office of the Commissioner of Finance located in the corridor on the fifth floor, Municipal Building, Chambers and Centre Streets, Borough of Manhattan, New York, New York;

b. On the bulletin board of the City Collector Office, for the Borough of Manhattan, 66 John Street, 2nd floor, New York, New York;

c. The Office of the Manhattan Borough President, 1 Centre Street, New York, New York;

d. The Supreme Court, New York County, 60 Centre Street, New York, New York;

e. The Central Office of the City Collector of the Department of Finance, 25 Elm Place, Brooklyn, New York;

f. On the wall in the public interviewer area, Department of Housing Preservation and Development;

g. The Civil Court, Kings County, New York County, 111 Centre Street, New York, New York; and

h. City Register's Office, New York County, 66 John Street 13th floor, New York, New York.

12. Commencing on January 30, 2004, I caused a copy of said Notice of Foreclosure to be published at least once a week for six (6) weeks, pursuant to Admin. Code § 11-406, in the City Record, the New York Law Journal, and the New York Post. The New York Law Journal and the New York Post are the two newspapers designated for that purpose by the

5

Commissioner of Finance. Copies of the Affidavits of Publication in (a) the <u>New York Law Journal</u>, signed by Kimberly Darcy and sworn to on March 5, 2004, (b) the <u>New York Post</u>, signed by Byron Stevens and sworn to on March 9, 2004; and (c) the <u>City Record</u>, signed by Eli Blachman and sworn to May 11, 2005, are collectively annexed hereto as Exhibit "C."

13.   The Notice of Foreclosure fixed April 9, 2004 as the last date for redemption, which date was at least ten weeks from the date of the first publication of the Notice of Foreclosure pursuant to Admin. Code § 11-407(a). The Notice of Foreclosure also fixed April 29, 2004 as the last date for the service of an answer, which date was at least twenty days from the last date of redemption, pursuant to Admin. Code §11-409(a).

14.   As set forth in the accompanying affirmation of the Assistant Corporation Counsel, as to certain parcels included in the List of Delinquent Taxes, timely answers have been interposed and are still to be disposed of, or litigation is pending, or installment agreements have been entered into for payment of delinquent charges. As a result, these parcels must be severed from this action pursuant to Admin. Code § 11-409.

15.   Certain parcels contained in the List of Delinquent Taxes were also redeemed from the time of the initial redemption period up until the preparation of the proposed final judgment by the Corporation Counsel. I thereafter issued Certificates of Redemption which were filed by the Corporation Counsel with the Clerk of New York County. As a result the action must be discontinued with respect to those parcels pursuant to Admin. Code § 11-407.

16.   I also issued Certificates of Withdrawal to the Corporation Counsel for filing with the Clerk of New York County, pursuant to Admin. Code § 11-413, respecting those parcels as to which this action could not be maintained and had to be discontinued, and the <u>lis pendens</u> pertaining thereto had to be cancelled, because said parcels had been included in error,

6

or were previously condemned or acquired by the City of New York, the State of New York, the United States of America, or other governmental agencies, or by a foreign nation, or are subject to an order in a bankruptcy proceeding, or because the tax liens affecting the parcels have been paid, cancelled, or assigned, or because payment sufficient to liquidate the tax items which rendered the parcels eligible for inclusion in the action were received prior to the filing date of such action but the payments either were not reported in time to remove the parcels from the List of Delinquent Taxes prior to the filing thereof, or were made by uncertified checks which did not clear for payment until after the filing, or were inadvertently applied to a subsequent charge and thereafter transferred to liquidate the eligible tax items, or because a late redemption payment was made pursuant to Admin. Code § 11-407, or because the City withdrew the parcels for enforcement via a tax lien sale pursuant to Title 11, Chapter 3 of the Administrative Code. As a result, the action must be discontinued with respect to those parcels pursuant to Admin. Code § 11-413. A list from Finance's Fairtax Report of all properties severed or removed from this action is annexed hereto as Exhibit "E."

17.    The City, having thus complied with all of the jurisdictional requirements of Title 11, Chapter 4 of the Administrative Code, is accordingly entitled to a judgment of foreclosure pursuant to § 11-412.1 of the Admin. Code upon all parcels of class one and class two real property and pursuant to § 11-412 of the Admin. Code upon all parcel of class four real property, located within Sections 3, 6, 7 and 8 on the Manhattan Tax Map which were not redeemed, or withdrawn and as to which timely answers, litigation, or installment agreements are not still pending. A list from Finance's Fairtax Report of all properties to be included in the judgment is annexed hereto as Exhibit "F."

18.     I have no knowledge or information, and do hereby further state that it is impossible to ascertain as to whether any owner of any parcel of real property contained in the List of Delinquent Taxes filed herein, or any mortgagee thereof, or any person having any claim or lien thereon or interest therein, is an infant or incompetent, or is in military service.

19.     The proposed Judgment's adjudication clauses request that the Court:

a.      Direct that the City of New York is the owner and holder of unpaid tax liens affecting the parcels of real property hereinafter described, in the amounts with interest thereon as shown in the List of Delinquent Taxes on file herein;

b.      Direct that each property as to which an answer, litigation or an installment agreement is now pending, be severed from this proceeding and that the City of New York have leave to proceed against said properties in the manner described by law;

c.      Direct that a sale of any of the parcels of property hereinafter described is dispensed with and the Commissioner of Finance of the City of New York is authorized to prepare and execute a deed, or deeds, conveying either to the City of New York, or with respect to the class one and two parcels, to a the City or to third party deemed qualified and designated by the Commissioner of Housing Preservation and Development, full and complete title to said parcels as described herein;

d.      Authorize the award of possession of any parcel or parcels of class one and class two real property located within Manhattan Tax Map Sections 3, 6, 7 and 8 and described in the List of Delinquent Taxes, and not withdrawn or redeemed and as to which an answer, litigation or an installment agreement is not pending as provided by law and authorizing the Commissioner of Finance to prepare, execute and cause to be recorded a deed, or deeds, conveying either to the City or with respect to the class one and two parcels, to the City or to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development full and complete title to such lands;

e.  Decree that upon the execution of said deed or deeds to the City of New York or to a third party, the City or the third party shall have possession and shall be seized of an estate in fee simple absolute in such lands, and all persons, including the State of New York, infants, incompetents, absentees and nonresidents who may have had any rights, title, interest, claim, lien or equity of redemption, in or upon such lands shall be barred and forever foreclosed of all such rights, title, interest, claim, lien or equity of redemption except as provided by §§ 11-424 and 11-424.1;

f.  Direct that any such conveyance of class one or class two real property to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development shall be for an existing use;

g.  Decree that unless and until the Commissioner of Finance executes a deed conveying parcels of class one and class two real property pursuant to §§ 11-412.1 and 11-412.2 to the City of New York or to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development, the owners of such lands shall continue to have all of the rights, liabilities, responsibilities, duties and obligations of an owner, including, but not limited to, maintaining such lands in compliance with the housing maintenance, building and fire codes and all other applicable laws, however, that upon entry of judgment, HPD or its authorized agent may have access to the class one and class two parcels herein described for the purposes of conducting inspections; and

h.  Direct the Commissioner of Finance to direct the Corporation Counsel to prepare and cause to be entered an order discontinuing the instant in rem foreclosure proceeding and vacating and setting aside the final judgment with respect to any and all parcels that are not conveyed to the City of New York, or with respect to the class one and two parcels, to the City or to a third party deemed qualified and designated by the Commissioner of Housing Preservation and Development within the statutory eight month period

9

commencing upon entry the judgment pursuant to Admin.
Code §§ 11-421.1, unless the statutory period is tolled or
extended by operation of law.


MARTHA E. STARK
Commissioner of Finance
City of New York


Sworn to before me this
20th day of June, 2005

NOTARY PUBLIC
DANIEL POINSON
Notary Public, State of New York
No. 24-3121788
Qualified in Kings County
Commission Expires 4/30/07

**Exhibit F**

# TELEFACSIMILE COVER SHEET

---

### RICHARD PAUL STONE, ESQ.
14 PENN PLAZA - SUITE 1806
225 WEST 34TH STREET
NEW YORK, NEW YORK 10122
TELEPHONE 212.564.8220 * TELEFACSIMILE 212.244.0355
e-mail rps@stonecounsel.com

---

Date:          April 19, 2007          Pages Including Cover: 4

By e-mail to Frank Pollina, Motion Support, Supreme Court

Leslie Spitalnick, Esq.          Corporation Counsel          (212) 788-8871

Joseph Medic, Esq.          Posner & Posner          (212) 385-2061

Re: 477 West 142nd Street HDFC

PLEASE TAKE NOTICE THAT THIS IS A CONFIDENTIAL COMMUNICATION INTENDED FOR THE RECIPIENT IDENTIFIED ABOVE.  IF YOU RECEIVE THIS IN ERROR, PLEASE RETURN IT TO THE SENDER, DESTROY WHAT YOU HAVE RECEIVED AND CALL TO INFORM THE SENDER YOU HAVE DONE SO.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------ x

IN REM TAX FORECLOSURE ACTION NO. 46   :    Index No: 580001/2004

    :

BOROUGH OF MANHATTAN       :   Premises

    :    477 West 142nd Street

SECTIONS 3, 6, 7 AND 8       :    (Block 2058 - Lot 29)

    :

TAX CLASSES 1 AND 2        :    AFFIRMATION

------------------------------------------------------ x

         Richard Paul Stone, an attorney licensed to practice before the courts of the State of New York, affirms as follow subject to the penalties for perjury.

     1.      I submit this affirmation to request a brief adjournment of the City's motion, returnable in room 130 on April 20, 2007, since I am actually engaged Friday, April 20, 2007, on two arguments in the Appellate Division, Second Department: *Sevdinoglou v. Sevdinoglou* App Div No: 2005-04579 and *Conley v. City of New York* - App Div No: 2005-11039.

     2.      In or about January 20, 2007, I was engaged as counsel for defendant 477 West 142nd Street Housing Development Fund Corporation (the "HDFC"). I came to the HDFC through a community service agency, Heritage Health & Housing, Inc, which agreed to pay my fee as a community benefit. I had understood, *until this afternoon*, I was being substituted as counsel for the HDFC.

     3.      In late January, I met repeatedly with Queen Mother Delois Blakely, PhD on behalf of the HDFC and then met with the City's representatives on February 20, 2007, to discuss a possible resolution. I met again with Queen Mother Blakely to discuss strategy, emphasizing the shortage of time in the face of this motion.

     4.      Within days of my meeting with HPD three things happened: (1) The President of the HDFC, Queen Mother Bishop Shirley Pitts engaged the firm of

Posner & Posner to represent her; I did not understand this since she is not a defendant and her interest was the same as that of the HDFC. (2) In a totally unrelated event, Heritage Health & Housing, Inc. informed me that it would not be able to continue paying my bill; I spoke with Queen Mother Blakely and advised her that I would work for free until they could make arrangements to confirm new counsel; (3) I came down with pneumonia and was unable to work in any significant capacity for two weeks.

5.     When I returned to work, I spoke with Joseph Medic, Esq. of Posner & Posner and understood that they would be taking over the representation of the HDFC, since their work for Queen Mother Pitts would protect both parties. Repeatedly discussing substitution of counsel, I have cooperated in every way with Mr. Medic in his preparation of opposition to the pending motion. On April 9th, I sent him a consent to change attorney and understood that he would arrange for its execution by his new client. I also understood that opposition papers were being submitted on behalf of the HDFC and Queen Mother Pitts, who is not a party individually. At no point have I been advised that Posner & Posner would not be protecting the interests of the HDFC.

6.     This afternoon, I received reply papers from counsel for the City. She indicates therein that opposition was served only on behalf of Queen Mother Pitts. I have never even seen the opposition papers, which made sense to me since I was outgoing counsel. I do not know whether the papers are intended to protect the HDFC.

7.     I take seriously my responsibility to every client, and particularly this HDFC. The tenants are good people who have serious claims to protect. However, I have had no doubt for more than a month that I had been replaced. In this unusual circumstance, I respectfully request a brief adjournment to allow me to prepare opposition to the City's motion *pro bono*. I cannot be in court on the 20th because of my

oral argument commitment in the Second Department.  While I know I would receive every courtesy from Ms. Spitalnick of Corporation Counsel, I hesitate to ask in this circumstance.

Dated:          New York, New York
                April 19, 2007


                                    **Richard Paul Stone, Esq.**

                                    _[signature]_
                                    14 Penn Plaza - Suite 1806
                                    225 West 34th Street
                                    New York, New York 10122
                                    (212) 564-8220

**SENDING REPORT**

Apr. 19 2007 04:17PM

YOUR LOGO    : CAROLYN SANCHEZ, ESQ.
YOUR FAX NO. : 12122440355

| NO. | OTHER FACSIMILE | START TIME | USAGE TIME | MODE | PAGES | RESULT |
|-----|-----------------|------------|------------|------|-------|--------|
| 01 | 12127888871 | Apr.19 04:15PM | 02'05 | SND | 04 | OK |

TO TURN OFF REPORT, PRESS 'MENU' #04.
THEN SELECT OFF BY USING '+' OR '-'.

FOR FAX ADVANTAGE ASSISTANCE, PLEASE CALL 1-800-HELP-FAX (435-7329).

**SENDING REPORT**

Apr. 19 2007 04:12PM

YOUR LOGO    : CAROLYN SANCHEZ, ESQ.
YOUR FAX NO. : 12122440355

| NO. | OTHER FACSIMILE | START TIME | USAGE TIME | MODE | PAGES | RESULT |
|-----|-----------------|------------|------------|------|-------|--------|
| 01  | 12123852061     | Apr.19 04:10PM | 01'16  | SND  | 04    | OK     |

TO TURN OFF REPORT, PRESS 'MENU' #04.
THEN SELECT OFF BY USING '+' OR '−'.

FOR FAX ADVANTAGE ASSISTANCE, PLEASE CALL 1-800-HELP-FAX (435-7329).

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                          Ind. No: 580001/2004

IN REM TAX FORECLOSURE ACTION NO. 46

BOROUGH OF MANHATTAN

SECTIONS 3, 6, 7 AND 8

TAX CLASSES 1 AND 2

---

ORDER TO SHOW CAUSE
AND AFFIRMATION

---

RICHARD PAUL STONE, ESQ.
14 Penn Plaza - Suite 1806
225 West 34th Street
New York, New York 10122
Telephone 212.564.8220   Telefacsimile 212.244.0355
e-mail rps@stonecounsel.com

Exhibit J

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------- x

IN REM TAX FORECLOSURE ACTION NO. 46

BOROUGH OF MANHATTAN

SECTIONS 3,6,7 AND 8

TAX CLASSES 1 AND 2

------------------------------------------------------------------- x

**AFFIRMATION IN
OPPOSITION**

Index No. 580001/2004

Premises:

477 West 142nd Street
(Block 2058, Lot 29)


**LESLIE SPITALNICK,** an attorney duly admitted to practice in the State of New York affirms the truth of the following under penalties of perjury:

1.      I am an Assistant Corporation Counsel in the office of Michael A. Cardozo, Corporation Counsel of the City of New York, counsel for the City of New York (the "City") in the above-captioned action. I am fully familiar with the facts and circumstances set forth herein based upon the books and records of the City, upon public records, upon conversations with City employees, and upon my personal knowledge.

2.      I make this affirmation in opposition to the motion of 477 West 142nd Street Housing Development Fund Corporation (the "HDFC"), brought by order to show cause, to reargue the City's motion for summary judgment.

Manhattan Foreclosure Action No. 46.

3.      The property at issue herein, designated on the New York County Tax Map as Block 2058, Lot 29, also known as 477 West 142nd Street, New York, in the Borough of Manhattan (the "Parcel"), was included in this action, _In Rem_ Tax Foreclosure Action No. 46, Borough of Manhattan, Index No. 580001/04 (Solomon, J.) ("Manhattan 46"), as a result of a lien for delinquent taxes and other charges, dating back to November 1992. As of January 9,

2004, when Manhattan 46 was commenced, the outstanding taxes and other charges were $302,370.03.

4.    As of September 21, 2006, the amount of delinquent property taxes and related charges, including interest, on the Parcel had increased to $475,172.96.

5.    The Parcel is owned by HDFC.[1]  On April 29, 2004, HDFC timely served an Answer to Manhattan 46 on the City, resulting in the severance of the Parcel from the action.

6.    On or about August 11, 2005, the Court entered a Judgment of Foreclosure in Manhattan 46.  The judgment did not include the Parcel because it had been severed from the main action when HDFC served its Answer.

7.    On or about December 22, 2006, the City moved for summary judgment against the Parcel, seeking a judgment of foreclosure.

8.    Subsequent to service of the City's motion for summary judgment, on or about January 22, 2007, Mr. Stone contacted the City's counsel to notify the City that he was being substituted as counsel for HDFC.  Mr. Stone requested that the City consent to a four week adjournment, which it did.  Thereafter, counsel for the City and representatives of the New York City Department of Housing Preservation and Development met with Mr. Stone, whereupon the City recommended to Mr. Stone that his client sign a regulatory agreement in exchange for significant tax amnesty, which had already been recommended to HDFC by the City on numerous occasions.  See Ellis Aff., ¶ 6-8.  Shortly thereafter, at Mr. Stone's request, the City

---

[1] In his affidavit, Mr. Stone alleges that HDFC "was created in 1982 when Queen Mother Delois Blakely, PhD. took charge of an abandoned building..."  See Affidavit of Richard Paul Stone, Esq. in support of HDFC's motion for re-argument, dated May 21, 2007 (the "Stone Aff."), ¶ 2.  It should be noted that the City granted the Parcel to HDFC in a deed dated December 22, 1982, pursuant to Article XI of the Private Housing Finance Law.  See Affidavit of Myriam Ellis submitted in support of the City's motion for summary judgment, sworn to December 19, 2006, ¶ 7 (the "Ellis Aff.").

consented to a second adjournment of six weeks so that Mr. Stone would have time to discuss with his client the City's suggestions for HDFC to rectify the situation and avoid foreclosure. Approximately a week later, Mr. Joseph Medic, Esq. of Posner & Posner, identifying himself as counsel for Ms. Shirley Pitts, Vice-president and shareholder of HDFC, contacted counsel for the City for the first time and requested an adjournment, as well. A stipulation adjourning the motion was submitted to the Court, signed by Mr. Stone, Mr. Medic and counsel for the City. Mr. Medic subsequently requested another adjournment, whereupon the City consented to a three week adjournment, adjourning the motion to April 20, 2007.

9.    On or about April 16, 2007, papers in opposition to the motion were served by Posner & Posner, consisting of an affirmation by Mr. Medic, dated April 13, 2007, and an affidavit by Ms. Pitts, sworn to March 28, 2007 (the "Pitts Aff."). The City served its reply on or about April 19, 2007.

10.    In a decision and order dated April 23, 2007, the Court granted the City's motion for summary judgment. The Court specifically noted that the Pitts Aff. was on the merits and was considered submitted on behalf of HDFC. A copy of the Court's decision is annexed hereto as Exhibit A. The Court directed the City to settle judgment with notice to Mr. Stone and Mr. Medic.

11.    On or about May 21, 2007, the City's Proposed Judgment of Foreclosure was presented for settlement, signature and entry to the Clerk of the Court.

12.    On or about May 24, 2007, HDFC served this motion, brought by order to show cause, seeking (1) re-argument of the City's motion for summary judgment of foreclosure on the single issue of the timeliness and validity of the proceeding, pursuant to Civil Practice Law and Rules ("CPLR") 2221; (2) vacatur any default of HDFC pursuant to CPLR 5015; (3) a

stay of the signing and/or entry of the City's proposed judgment of foreclosure for twenty-one days to allow HDFC to pay to the Court the sum allegedly due to the City in unpaid taxes; and (4) a hearing for the City to demonstrate that its tax assessment is correct. See Stone Aff., ¶ 1.

13.    In support of its motion, HDFC makes three arguments. First, it asks for re-argument of the City's motion because the City did not transfer the Parcel within eight months of entry of the judgment of foreclosure in Manhattan 46 pursuant to New York City Administrative Code ("Admin Code") section 11-412.1. Second, HDFC argues that if the Court deems HDFC to be in default, it should be given an opportunity to redeem the Parcel because it has taken advantage of its equity in the Parcel and it is arranging to secure a mortgage, and a hearing should be held to determine the accuracy of the alleged amount of unpaid taxes and other charges. Finally, HDFC argues that the City should be restrained from transferring the Parcel to a qualified third party because it is likely to prevail on the merits and is attempting in good faith to redeem the Parcel. See Stone Aff., Points I-V.

14.    HDFC is not entitled to the requested relief. As an initial matter, HDFC has improperly advanced a new legal theory in its motion that was not previously raised in opposition to the City's motion for summary judgment of foreclosure. In any event, as shown below, the argument lacks merit. Also, as shown by the City in support of its motion for summary judgment of foreclosure, as a matter of law, a challenge to the amount of unpaid taxes and other charges is time-barred, and an alleged attempt by HDFC at this time to obtain a mortgage to pay off the delinquent property taxes is irrelevant.

Movant is Not Entitled to Re-argument of the City's Motion for Summary Judgment.

15.    CPLR 2221(d) provides in pertinent part:

A motion for leave to reargue...(2) shall be based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the

4

prior motion, but shall not include any matters of
fact not offered on the prior motion...

16.    HDFC fails to state what facts or law were allegedly overlooked or
misapprehended by this Court in its April 23, 2007 decision. Instead, HDFC states that it seeks
re-argument "based on the plain application of Admin. Code 11-412.1(c and d) which required
the City to act within eight months of the entry of the Judgment." See Stone Aff., ¶ 20.

17.    As more fully set forth in Point I of the City's memorandum of law, an
application for re-argument is not the proper method by which to advance a new or different
legal theory than the theory or theories submitted in the original motion. HDFC, rather than
pointing to facts or law that it alleges were overlooked or misapprehended by the Court, attempts
to advance the new legal argument that the eight month time period after a judgment of
foreclosure has been entered, in which the City must transfer the foreclosed properties, has
expired. See Stone Aff., ¶ 19.

18.    Accordingly, the re-argument application should be denied.

The Eight Month Time Period For Transfer of the Parcel Has Not Expired.

19.    HDFC's argument that the eight month time period for transfer of
foreclosed properties following entry of the judgment of foreclosure in the Manhattan 46 action
has expired is without merit. See Memorandum of Law, Point III.

20.    Admin. Code section 11-412.1(b)(1) provides in pertinent part that:

The court shall make a final judgment authorizing
the award of possession of any parcel of class one
or class two real property described in the list of
delinquent taxes not redeemed or withdrawn as
provided in this chapter *and as to which no answer
is interposed as provided herein...* (emphasis
added).

5

21.    Likewise, Admin. Code section 11-409(a) provides for the severance of a property from the main *in rem* action where an answer has been served in connection with the property.

22.    The foreclosure judgment itself, pursuant to these sections of the Admin Code, states that it does not include the Parcel, which was severed from the main action when HDFC served its Answer on or about April 29, 2004. See Judgment in Manhattan 46, annexed as Exhibit G to Affidavit of Leslie Spitalnick submitted in support of the City's motion for summary judgment, sworn to December 22, 2006.

23.    Department of Finance ("DOF") records annexed to the judgment state that the Parcel was severed from the action because an answer was filed in connection thereto. See Exhibit C to Manhattan 46 Judgment, listing the Parcel among those properties severed from the action.    Indeed, the Affidavit of Shaun Donovan, Commissioner of the New York City Department of Housing Preservation and Development, sworn to June 27, 2005, previously filed in support of the judgment of foreclosure and cited in the Stone Aff. in support of the claim that the City's time to transfer the property has expired, plainly states that the foreclosure judgment applies only to properties included in the judgment. See Stone Aff., ¶ 8. The Parcel was not included in that judgment.

24.    The time period in which the City must transfer properties that have been included in a judgment of foreclosure begins to run when the judgment of foreclosure is entered. Admin. Code § 11-412.1(i).    A judgment of foreclosure has not yet been entered against the Parcel, therefore, the time period for transfer of the Parcel has not yet commenced.

6

HDFC Did Not Default in Opposing the City's Motion for Summary Judgment.

      25.    In its motion, HDFC requests that if the Court finds HDFC was in default in connection with the City's motion for summary judgment of foreclosure, then it should vacate that default.

      26.    In support of this request, HDFC relies on CPLR 5015 (a), which provides in pertinent part:

> The court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of: (1) excusable default...

However, HDFC's request pursuant to CPLR 5015 is clearly in error. In its decision of April 23, 2007, the Court noted that although HDFC did not submit opposition to the City's motion for summary judgment of foreclosure by its counsel, Mr. Stone, the Pitts Aff. was on the merits and was "on behalf of HDFC" and noted also that Mr. Stone sent an affirmation to the Court by email explaining his understanding that Mr. Medic had been substituted as counsel for HDFC. See Exhibit A. Indeed, in his own affirmation in support of HDFC's motion to re-argue, Mr. Stone admitted that he was being substituted by Mr. Medic as counsel for HDFC and as a result, HDFC's interests would be protected by its new counsel. See Stone Aff., ¶ 17. Mr. Stone asserted his understanding that Mr. Medic would be "taking over the representation of the HDFC." Stone Aff., ¶ 14. He also noted that Ms. Pitts' interests were the same as HDFC's. See Stone Aff., ¶13. Therefore, his illness and unavailability are irrelevant.

      27.    Thus, HDFC did not default and therefore, should not be allowed to rely on CPLR 5015 at this time.

A Challenge to the Amount of Unpaid Taxes and Other Charges is Time-Barred.

28.    In its motion for re-argument, HDFC questions "the accuracy of the asserted taxes and charges" outstanding on the Parcel and urges that justice will best be served if it is permitted to deposit the entire amount owed with the Court and pay that to the City after the City demonstrates the accuracy of the charges claimed.  See Stone Aff., ¶ 6, 22, 23.  However, this is a mere restatement of the argument contained in the Pitts Aff. submitted in opposition to the City's motion for summary judgment, which has already been considered by the Court. There is no allegation that the Court overlooked or misapprehended anything in the Pitts Aff. See Memorandum of Law, Point IV.

29.    Moreover, as shown in the papers submitted by the City in support of its motion for summary judgment, taxes, assessments, and other charges named in the List of Delinquent Taxes regarding the Parcel filed in the office of the County Clerk of New York County are presumed to be valid.  DOF records clearly and unambiguously show that HDFC has not paid the taxes and other outstanding charges on the Parcel in over 14 years and as of September 21, 2006, HDFC owes $475,172.96 in delinquent taxes and other charges.

30.    HDFC states in its motion that "[w]hile the HDFC recognizes that the law presumes the City's charges are accurate, it notes that HPD has been unable to even remotely demonstrate the accuracy of the amount the City demands."[2]  Stone Aff., ¶ 6.  Yet, the law is clear that the City has no obligation at this point to prove the accuracy of the charges.  HDFC may not challenge the assessment of real property taxes at this time.  A Real Property Tax Law Article 7 tax certiorari proceeding provides the exclusive remedy for challenging a tax assessment, and the challenge must be commenced before October 25 of each tax year at issue.

HDFC Failed to Take Advantage of the City's Efforts to Encourage it to Enter into a Regulatory Agreement.

31.    HDFC further alleges that it "has taken advantage of the significant equity in the Property and is arranging to give a mortgage securing a loan in an amount in excess of $1 million which will allow it not only to redeem the Property but to make the monthly payments..." Stone Aff., ¶ 21.

32.    In the Pitts Aff., Ms. Pitts argued that she was attempting to obtain a loan on behalf of HDFC in order to pay off the delinquent property taxes and other charges.  As stated above and in the City's accompanying memorandum of law, HDFC merely restates the same argument without alleging facts or law allegedly overlooked by the Court when deciding the City's motion for summary judgment.  See Memorandum of Law, Point V.

33.    In any event, an attempt to obtain a loan at this point is irrelevant and does not provide a defense to foreclosure judgment.  HDFC had ample time since the January 2004 commencement of the underlying foreclosure action to rectify the situation by entering into a regulatory agreement or repay the arrears within the statutory time periods set forth by the Admin. Code.  As explained in the City's motion for summary judgment, although the City made numerous efforts to encourage HDFC to avail itself of options for avoiding foreclosure, giving specific suggestions as to how that could be done, neither HDFC nor any other interested party took advantage of these efforts.  See Ellis Aff., ¶¶ 6-8.  Indeed, in its decision dated April 23, 2007, the Court noted that "HDFC...has been importuned to work this dispute out."  See Exhibit A.  The Parcel is being foreclosed because HDFC owes $475,172.96 in unpaid property taxes

---

[2] It should be noted that DOF, not HPD, is responsible for assessment and collection of real property taxes.

and other charges as of September 21, 2006 and is unwilling or unable to enter into a regulatory agreement to repay the arrears and thereby qualify for tax amnesty.[3]

      34.    It should also be noted that upon entry of foreclosure judgment, there is still a four month mandatory redemption period, during which an owner or interested party may pay the delinquent charges.  See Admin. Code 11-412.1 (d).  Thus, HDFC may continue to seek financing in an attempt to pay the delinquent charges at this time or even after entry of foreclosure judgment.

      35.    For all the reasons contained in the papers submitted by the City in opposition to HDFC's motion to reargue, it is respectfully submitted that HDFC's motion should be denied in all respects.

      **WHEREFORE,** the City respectfully requests that HDFC's motion be denied in its entirety and that the Court grant such other and further relief as this Court deems just and proper.

Dated:      New York, New York
           June 1, 2007

LESLIE SPITALNICK

---

[3] In its motion, HDFC mischaracterizes the options available to HDFC to avoid foreclosure, stating that it could accept "'tax amnesty', which would forgive a tiny percentage of the monies due but defer repayment of the balance subject to various requirements..."  Rather, as explained in the Ellis Aff., HDFC is eligible for tax relief under 577-b of the New York Private Housing Finance Law, wherein taxes accrued prior to January 1, 2001 would be suspended, and ultimately forgiven, by entering into and complying with a regulatory agreement.  See Ellis Aff., ¶ 7.  Thus, while the taxes accrued after January 1, 2001 would not be subject to tax amnesty, over twelve years of accrued taxes dating back to November 1992 could be suspended and forgiven.

Exhibit A

PRESENT: **JANE S. SOLOMON** PART 55

| | |
|---|---|
| Index Number : 580001/2004 | INDEX NO. _____ |
| FORECLOSURE ACTION NO. 46 | MOTION DATE _____ |
| VS. | |
| X | MOTION SEQ. NO. _____ |
| SEQUENCE NUMBER : 002 | MOTION CAL. NO. _____ |
| SUMMARY JUDGMENT | |

**RECEIVED**

APR 24 2007

IAS MOTION
SUPPORT OFFICE

this motion to/for _____

PAPERS NUMBERED

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... _____

Answering Affidavits — Exhibits _____

Replying Affidavits _____

**FILED**

APR 24 2007

COUNTY CLERK'S OFFICE
NEW YORK

Cross-Motion: ☐ Yes ☐ No

Upon the foregoing papers, it is ordered that this motion *is granted* there is

*[handwritten decision text, partially illegible]*
nothing in the opposing papers which
defeats the City's claim. Moreover, it is noted
that ① opposing papers from _____ Ms. Pitts are on the
merits; ② City's reply _____ indicates defendant
477 W. 142 St HDFC, owner of Block 2058 Lot 29
has been importuned to work this dispute out;
③ HDFC of record for HDFC did not get opp.
papers — see this email ... so that Ms. Pitts
papers ... HDFG as notice to both M.
Medic r ... ... Summ
Dated:  4/23/07

_____
JANE S. SOLOMON  J.S.C.

Check one: ◯ ☐ **FINAL DISPOSITION**   ☐ **NON-FINAL DISPOSITION**

Check if appropriate:   ☐ DO NOT POST   ☐ REFERENCE _____

MOTION CASES ARE RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                           : SS:

COUNTY OF NEW YORK   )

I, LILIYA RASHKEVICH, an employee in the New York City Law Department, over the age of 18 and not a party to the action herein, being duly sworn, deposes and says: On the 6th day of June 2007, I served a true copy of AFFIRMATION IN OPPOSITION by mail upon the parties listed below by depositing a copy of the same, enclosed in a first class postpaid properly addressed wrapper into an official depository of the United States Postal Service within the State of New York and directed to said parties at the addresses listed below, said addresses being designated by them for that purpose:

Joseph Medic, Esq.
POSNER & POSNER
Attorney for Shirley Pitts
170 Broadway, Suite 1010
New York, NY 10038

Richard Paul Stone, Esq.
Attorney for HDFC
14 Penn Plaza, Suite 1806
225 West 34th Street
New York, NY 10122

_____
LILIYA RASHKEVICH

Sworn to before me, this 6th
day of June, 2007

_____
NOTARY PUBLIC

VEDEANAND BRIJMOHAN
Notary Public, State of New York
No. 01BR6144535
Qualified in Richmond County
Commission Expires April 24, 2010

Index No. 58000l/04

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

IN REM TAX FORECLOSURE ACTION NO. 46

BOROUGH OF MANHATTAN

SECTIONS 3, 6, 7, AND 8

TAX CLASSES 1 AND 2

**AFFIRMATION IN OPPOSITION**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for the City of New York*
*100 Church Street, Room 3-116*
*New York, N.Y. 10007*

*Of Counsel: Leslie Spitalnick*
*Tel: (212) 788-1230*
*NYCLIS No. 2006-006993*

*Due and timely service is hereby admitted.*

*New York, N.Y. .......................................... 200.*

*.......................................... Esq.*

*Attorney for .........................................*

Index No.580001/04

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

IN REM TAX FORECLOSURE ACTION NO. 46

BOROUGH OF MANHATTAN

SECTIONS 3, 6, 7 AND 8

TAX CLASSES 1 AND 2

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO REARGUE

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for the City of New York*
*100 Church Street, Room 3-116*
*New York, N.Y. 10007*

*Of Counsel: Leslie Spitalnick*
*Tel: (212) 788-1230*
*NYCLIS #: 2006-006993*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------- x

IN REM TAX FORECLOSURE ACTION NO. 46

BOROUGH OF MANHATTAN

Index No. 580001/2004

SECTIONS 3, 6, 7 AND 8

TAX CLASSES 1 AND 2

------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN OPPOSITION
## TO MOTION TO REARGUE

### PRELIMINARY STATEMENT

The City of New York (the "City") submits this memorandum of law in opposition to the motion to reargue of 477 West 142nd Street Housing Development Fund Corporation (the "HDFC").

For a complete statement of the facts relevant to the arguments raised herein, the Court is respectfully referred to the Affirmation of Leslie Spitalnick, dated June 1, 2007 (the "Spitalnick Aff."), and the exhibits annexed thereto, submitted in opposition to HDFC's motion to reargue the City's motion for summary judgment of foreclosure. For the Court's convenience a brief statement of the relevant facts follows.

The property at issue herein, designated on the New York County Tax Map as Block 2058, Lot 29, also known as 477 West 142nd Street, New York, in the Borough of Manhattan (the "Parcel"), was included in this action, _In Rem_ Tax Foreclosure Action No. 46, Borough of Manhattan, Index No. 580001/04 (Solomon, J.) ("Manhattan 46"), as a result of a lien for delinquent taxes and other charges, dating back to November 1992. As of January 9, 2004, when Manhattan 46 was commenced, the outstanding taxes and other charges were

$302,370.03. On April 29, 2004, HDFC timely served an Answer to Manhattan 46 on the City, resulting in the severance of the Parcel from the action. On or about August 11, 2005, the Court entered a Judgment of Foreclosure in Manhattan 46. The judgment did not include the Parcel because it had been severed from the main action when HDFC served its Answer.

In support of its motion, HDFC makes three arguments. First, it asks for re-argument of the City's motion because the City did not transfer the Parcel within eight months of entry of the judgment of foreclosure in Manhattan 46 pursuant to New York City Administrative Code ("Admin Code") section 11-412.1. Second, HDFC argues that if the Court deems HDFC to be in default, it should be given an opportunity to redeem the Parcel because it has taken advantage of its equity in the Parcel and it is arranging to secure a mortgage, and a hearing should be held to determine the accuracy of the alleged amount of unpaid taxes and other charges. Finally, HDFC argues that the City should be restrained from transferring the Parcel to a qualified third party because it is likely to prevail on the merits and is attempting in good faith to redeem the Parcel. See Affidavit of Richard Paul Stone, Esq. in support of HDFC's motion to re-argue (the "Stone Aff."), Points I-V.

HDFC is not entitled to the requested relief. As an initial matter, HDFC has improperly advanced a new legal theory in its motion that was not previously raised in opposition to the City's motion for summary judgment of foreclosure. In any event, as shown below, the argument lacks merit. Also, as shown by the City in support of its motion for summary judgment of foreclosure, as a matter of law, a challenge to the amount of unpaid taxes and other charges is time-barred, and an alleged attempt by HDFC at this time to obtain a mortgage to pay off the delinquent property taxes is irrelevant. The Court should therefore deny HDFC's motion in all respects.

2

## ARGUMENT

### POINT I

### HDFC'S RE-ARGUMENT MOTION MUST BE DENIED.

New York Civil Practice Law and Rules ("CPLR") Rule 2221(d) provides in pertinent part:

> A motion for leave to reargue:...(2) shall be based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion, but shall not include any matters of fact not offered on the prior motion; ...

HDFC fails to state what facts or law were allegedly overlooked or misapprehended by the Court in its April 23, 2007 decision. Instead, HDFC merely states that it seeks re-argument "based on the plain application of Admin. Code 11-412.1(c and d) which required the City to act within eight months of the entry of the Judgment." See Stone Aff., ¶ 20.

An application for re-argument is not the proper method to advance a new or different legal theory than the theory or theories submitted in the original motion or papers. See William P. Pahl Equip. Corp. v. Kassis, 182 A.D.2d 22, 27 (1st Dep't 1992); Foley v. Roche, 68 A.D.2d 558, 567-58 (1st Dep't 1979). HDFC, rather than pointing to facts or law that in its opinion were overlooked or misapprehended by the Court, attempts to advance the new legal argument that the eight month time period after a judgment of foreclosure has been entered, in which the City must transfer the foreclosed properties, has expired. See Stone Aff., ¶ 19.

Accordingly, the re-argument application should be denied.

## POINT II

## THE EIGHT MONTH TIME PERIOD FOR TRANSFER OF THE PARCEL HAS NOT EXPIRED.

HDFC's argument that the eight month time period for transfer of foreclosed properties following entry of the judgment of foreclosure in the <u>Manhattan 46</u> action has expired is without merit.

Admin. Code section 11-412.1(b)(1) provides in pertinent part that:

> The court shall make a final judgment authorizing the award of possession of any parcel of class one or class two real property described in the list of delinquent taxes not redeemed or withdrawn as provided in this chapter *and as to which no answer is interposed as provided herein...* (emphasis added).

Likewise, Admin. Code section 11-409(a) provides for the severance of a property from the main *in rem* action where an answer has been served in connection with the property. The foreclosure judgment itself, pursuant to these sections of the Admin Code, states that it does not include the Parcel, which was severed from the main action when HDFC served its Answer on or about April 29, 2004. <u>See</u> Judgment in <u>Manhattan 46</u>, annexed as Exhibit G to Affidavit of Leslie Spitalnick submitted in support of the City's motion for summary judgment, sworn to December 22, 2006.

Department of Finance ("DOF") records annexed to the judgment state that the Parcel was severed from the action because an answer was filed in connection thereto. <u>See</u> Exhibit C to <u>Manhattan 46</u> Judgment, listing the Parcel among those properties severed from the action. Indeed, the Affidavit of Shaun Donovan, Commissioner of the New York City Department of Housing Preservation and Development, sworn to June 27, 2005, previously filed in support of the judgment of foreclosure and cited in the Stone Aff. in support of the claim that

4

the City's time to transfer the property has expired, plainly states that the foreclosure judgment applies only to properties included in the judgment. See Stone Aff., ¶ 8. The Parcel was not included in that judgment.

The time period in which the City must transfer properties that have been included in a judgment of foreclosure begins to run when the judgment of foreclosure is entered. Admin. Code § 11-412.1. A judgment of foreclosure has not yet been entered against the Parcel, therefore, the time period for transfer of the Parcel has not yet commenced.

**POINT III**

**HDFC DID NOT DEFAULT IN OPPOSING THE CITY'S MOTION FOR SUMMARY JUDGMENT.**

In its motion, HDFC requests that if the Court finds HDFC was in default in connection with the City's motion for summary judgment of foreclosure, then it should vacate that default. In support of this request, HDFC relies on CPLR 5015 (a), which provides in pertinent part:

> The court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of: (1) excusable default…

However, HDFC's request pursuant to CPLR 5015 is clearly in error. In its decision of April 23, 2007, the Court noted that although HDFC did not submit opposition to the City's motion for summary judgment of foreclosure by its counsel, Mr. Stone, the Pitts Aff. was on the merits and was "on behalf of HDFC" and noted also that Mr. Stone sent an affirmation to the Court by email explaining his understanding that Mr. Medic had been substituted as counsel for HDFC. See Exhibit A. Indeed, in his own affirmation in support of HDFC's motion to re-argue, Mr. Stone admitted that he was being substituted by Mr. Medic as counsel for HDFC and

5

as a result, HDFC's interests would be protected by its new counsel. <u>See</u> Stone Aff., ¶ 17. Mr. Stone asserted his understanding that Mr. Medic would be "taking over the representation of the HDFC." Stone Aff., ¶ 14. He also noted that Ms. Pitts' interests were the same as HDFC's. <u>See</u> Stone Aff., ¶13. Therefore, his illness and unavailability are irrelevant. Thus, HDFC did not default and therefore, should not be allowed to rely on CPLR 5015 at this time.

**POINT IV**

**A CHALLENGE TO THE AMOUNT OF UNPAID TAXES AND OTHER CHARGES IS TIME-BARRED.**

In its motion for re-argument, HDFC questions "the accuracy of the asserted taxes and charges" outstanding on the Parcel and urges that justice will best be served if it is permitted to deposit the entire amount owed with the Court and pay that to the City after the City demonstrates the accuracy of the charges claimed. Stone Aff., ¶ 6, 22, 23. However, this is a mere restatement of the argument contained in the Affidavit of Shirley Pitts submitted in opposition to the City's motion for summary judgment, which has already been considered by the Court. There is no allegation that the Court overlooked or misapprehended anything in the Pitts Aff.

Moreover, as shown in the papers submitted by the City in support of its motion for summary judgment, taxes, assessments, and other charges named in the List of Delinquent Taxes regarding the Parcel filed in the office of the County Clerk of New York County are presumed to be valid. <u>See</u> Admin. Code § 11-411. DOF records clearly and unambiguously show that HDFC has not paid the taxes and other outstanding charges on the Parcel in over 14 years and as of September 21, 2006, HDFC owes $475,172.96 in delinquent taxes and other charges.

HDFC states in its motion that "[w]hile the HDFC recognizes that the law presumes the City's charges are accurate, it notes that HPD has been unable to even remotely demonstrate the accuracy of the amount the City demands."[1]  Stone Aff., ¶ 6.  Yet, the law is clear that the City has no obligation at this point to prove the accuracy of the charges.  HDFC may not challenge the assessment of real property taxes at this time.  A Real Property Tax Law Article 7 tax certiorari proceeding provides the exclusive remedy for challenging a tax assessment, and the challenge must be commenced before October 25 of each tax year at issue.  See N.Y. City Charter §§ 163-166; 78 South First Street Hous. Dev. Fund Corp. v. Crotty, 75 N.Y.2d 982, 984 (1990); People ex rel. Bowery Sav. Bank v. Lilly, 293 N.Y. 833 (1944); People ex rel. Northchester Corp. v. Miller, 288 N.Y. 163, 169 (1942); G.A.D. Holding Co. v. City of New York Dept. of Fin., 192 A.D.2d 441, 442 (1st Dep't 1993).  Therefore, HDFC's attempt to challenge the amount of taxes owed on the Parcel is without merit and is therefore time-barred.

## POINT V

### HDFC FAILED TO TAKE ADVANTAGE OF THE CITY'S EFFORTS TO ENCOURAGE IT TO ENTER INTO A REGULATORY AGREEMENT.

HDFC further alleges that it "has taken advantage of the significant equity in the Property and is arranging to give a mortgage securing a loan in an amount in excess of $1 million which will allow it not only to redeem the Property but to make the monthly payments..."  Stone Aff., ¶ 21.  In her affidavit in opposition to the City's motion for summary judgment, Ms. Pitts argued that she was attempting to obtain a loan in order to pay off the delinquent property taxes and other charges.  As stated above, HDFC is simply restating the same argument without

---

[1] It should be noted that DOF, not HPD, is responsible for assessment and collection of real property taxes.

alleging facts or law allegedly overlooked by the Court when deciding the City's motion for summary judgment.

In any event, an attempt to obtain a loan at this point is irrelevant and does not provide a defense to foreclosure judgment. HDFC had ample time since the January 2004 commencement of the underlying foreclosure action to rectify the situation by entering into a regulatory agreement or repay the arrears within the statutory time periods set forth by the Admin. Code. As explained in the City's motion for summary judgment, although the City made numerous efforts to encourage HDFC to avail itself of options for avoiding foreclosure, giving specific suggestions as to how that could be done, neither HDFC nor any other interested party took advantage of these efforts. See Affidavit of Myriam Ellis in support of the City's motion for summary judgment, sworn to December 19, 2006, ¶¶ 6-8. Indeed, in its decision dated April 23, 2007, the Court noted that "HDFC…has been importuned to work this dispute out." See Spitalnick Aff., Exhibit A. The Parcel is being foreclosed because HDFC owes $475,172.96 in unpaid property taxes and other charges as of September 21, 2006 and is unwilling or unable to enter into a regulatory agreement to repay the arrears and thereby qualify for tax amnesty.[2]

It should also be noted that upon entry of foreclosure judgment, there is still a four month mandatory redemption period, during which an owner or interested party may pay the

---

[2] In its motion, HDFC mischaracterizes the options available to HDFC to avoid foreclosure, stating that it could accept "'tax amnesty', which would forgive a tiny percentage of the monies due but defer repayment of the balance subject to various requirements..." Rather, as explained in the Ellis Aff., HDFC is eligible for tax relief under 577-b of the New York Private Housing Finance Law, wherein taxes accrued prior to January 1, 2001 would be suspended, and ultimately forgiven, by entering into and complying with a regulatory agreement. See Ellis Aff., ¶ 7. Thus, while the taxes accrued after January 1, 2001 would not be subject to tax amnesty, over twelve years of accrued taxes dating back to November 1992 could be suspended and forgiven.

delinquent charges.    See Admin. Code 11-412.1 (d).    Thus, HDFC may continue to seek financing in an attempt to pay the delinquent charges at this time or even after entry of foreclosure judgment.

## CONCLUSION

The City respectfully requests that the Court deny HDFC's motion in all respects and that the Court grant such other and further relief as this Court deems just and proper.

Dated:      New York, New York
            June 1, 2007


                            MICHAEL A. CARDOZO
                            Corporation Counsel of the City
                              of New York
                            Attorney for the City of New York
                            100 Church Street, Room 3-116
                            New York, New York 10007
                            (212) 788-1230


                            By: _____
                                LESLIE SPITALNICK
                                Assistant Corporation Counsel

9