UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

...................................................................................X
                                                                 Civil Action No.07-cv-3951

DR. DELOIS BLAKELY,

Plaintiff(s),

Vs.

NEW YORK CITY CORPORATION COUNSEL, MICHAEL A. CARDOZO;
NEW YORK CITY CORPORATION ASSISTANT COUNSEL, LESLIE SPITALNICK;
100 CHURCH STREET, NY, NY 10007; MARTHA E. STARK, NY
CITY COMMISSIONER OF FINANCE, 66 JOHN STREET, 3RD FLOOR,
NEW YORK, NY 10038; SHAUN DONOVAN, NY CITY HPD COMMISSIONER
THE CITY OF NEW YORK DEPARTMENT OF HOUSING PRESERVATION &
DEVELOPMENT HPD, 100 GOLD STREET, ROOM 1R, NEW YORK, NY 10038;
MYRIAM ELLIS, IN HER OFFICIAL CAPACITY AS HPD REPRESENTATIVE,
100 GOLD STREET, ROOM 1R, NEW YORK, NY 10038; MARK MATTHEWS,
100 GOLD STREET, ROOM 1R, NEW YORK, NY 10038



Defendant(s)

...................................................................................X


# AFFIRMATION OF DELOIS BLAKELY IN OPPOSITION TO CITY DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

 

**DR. DELOIS BLAKELY**
**477 W 142ND STREET**
**NEW YORK, NY 10031**
**(212)368-3739**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
                                                                    Civil Action No.07-cv-3951
DR. DELOIS BLAKELY,

Plaintiff (s),

Vs.

NEW YORK CITY CORPORATION COUNSEL, MICHAEL A. CARDOZO;
NEW YORK CITY CORPORATION ASSISTANT COUNSEL, LESLIE SPITALNICK;
100 CHURCH STREET, NY, NY 10007; MARTHA E. STARK, NY
CITY COMMISSIONER OF FINANCE, 66 JOHN STREET, 3RD FLOOR,
NEW YORK, NY 10038; SHAUN DONOVAN, NY CITY HPD COMMISSIONER
THE CITY OF NEW YORK DEPARTMENT OF HOUSING PRESERVATION &
DEVELOPMENT HPD, 100 GOLD STREET, ROOM 1R, NEW YORK, NY 10038;
MYRIAM ELLIS, IN HER OFFICIAL CAPACITY AS HPD REPRESENTATIVE,
100 GOLD STREET, ROOM 1R, NEW YORK, NY 10038; MARK MATTHEWS,
100 GOLD STREET, ROOM 1R, NEW YORK, NY 10038

Defendant(s)

----------------------------------------------------------------X

**JURY TRIAL DEMANDED**

## AFFIRMATION OF DELOIS BLAKELY IN OPPOSITION TO CITY DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

### PRELIMINARY STATEMENT

Defendants CITY OF NEW YORK, a Municipal Corporation, within the meaning of 42 U.S.C. 1983, and MONELL v. NEW YORK CITY DEPT OF SOCIAL SERVICES, 436 U.S. 658, have tenaciously tendered a motion to dismiss based upon misrepresentations and distortion of the facts as they occurred to plaintiffs at the birth of the fictional entity known as the HDFC in 1982. Defendants' first premise to dismiss of, "plaintiffs do not have standing to pursue their claims as they do not own the subject premises," if it were true would tantamount to a *dolus malus* on their part. It simply means that the whole contrivance by the CITY

DEFENDANTS of representing to the NEW YORK STATE LEGISLATURE, the need to establish housing for low income families was a crafty act, intended to mislead the soon-to-be shareholders of the HDFC that they owned the corporation, while in truth all they were before the eyes of city-type legalese were "surrogates" in a quasi feudal relationship reminiscent of the emphyteusis in ancient conveyances, only that it would constitute an unconscionable bargain void *ab initio* as pertinent facts of the contract remained hidden from plaintiffs until admission by CORPORATION COUNSEL on June 29, 2007.

## STATEMENT OF RELEVANT FACTS

Defendants CITY OF NEW YORK's first point of contention that, "Plaintiffs do not have standing to pursue their claims as they do not own the subject premises" stands in contradiction to the facts established in the document known as the "CITY OF NEW YORK HOUSING DEVELOPMENT AND PRESERVATION offering plan" which states in part that, "The co-op Corporation is legally the owner and "landlord" of the building, and the shareholders are legally the owners of the Corporation." (EXHIBIT A, pg 8 OFFERING PLAN) Is it then the position of CITY defendants that this statement is materially false and misleading? If that be the case then plaintiffs contend that they have been intentionally deceived into forming a legal opinion which defendants were aware would violate established 14th Amendment and other federally protected statutory rights therefore creating a liability under Title 42 USC 1983 City of Canton v. Harris, 489 US 378 (1989).

CITY DEFENDANTS have erred in their usage of Lujan v. Defenders of Wildlife, 504 US 555, 560 (1992) to draw an inconsistent comparison with respect to merits of claims against government generally. While Lujan's office as the SECRETARY OF THE INTERIOR OF THE UNITED STATES, is bona fide as part of the Executive Branch under Art 2 of the United States constitution, the City of New York, a chartered Municipal Corporation with an ambivalent legal existence as both a public and private fictional person, can not position itself succinctly within any Original Constitutionally sanctioned office to warrant inclusion in the conclusions adduced in LUJAN. Upon the admission of CITY DFENDANTS through their Attorneys, that plaintiffs asserted a pointless claim of ownership, it will stand to confirm a putatively premeditated conduct of deception and then rise to the threshold enunciated in LUJAN. Their motion to dismiss has to be set aside to allow this Honorable court to factually determine the true legal status of plaintiffs with respect to ownership of the HDFC in question, in other that plaintiffs' due process rights will be preserved and Justice is done.

The assertion by defendants that, "to the extent Plaintiffs seek to bring the action on behalf of HDFC, they are not authorized to do so." (Defendants motion to dismiss) is also erroneous. Plaintiffs brought this suit in their status as private shareholders of the said HDFC who by de facto were made the unwitting surrogates for the artificial entity fronted by CITY DEFENDANTS. In fact, in keeping with defendants' arguments about artificial entities, it is also a fact that the CITY OF NEW YORK is a legal fiction, inanimate, and requires the

signature and actions of animate beings to carry out its personified roles as a municipal corporation.  Then the question arises as to whether it is the fictional entity that is claiming immunity or the actors on behalf of the fiction?  The legal question which has to be resolved by this court is whether immunity and ownership have been lodged in the fictional entity or the actors fronting for it, be them Attorneys or officers of said corporation. If this court determines as a matter of law that ownership is lodged in the fictional entity then we will assert our contention that a legal deception has occurred.  If it finds to the contrary, then the fictional HDFC cannot intelligently own anything without animate actors vouching for that "thing" and therefore giving it life as an action comprehensible by the common human mind.  If the legal fiction be held harmless for actions violative of the Constitution and laws of the United States, since it only exists on paper, then the actors or surrogates should be held responsible for actions which are real and manifest in nature done on behalf of the fiction, since the fiction can not rationally carry out a human function or action.  Plaintiffs have suffered the injury of a rationally and deliberately contrived deception and misrepresentation, executed by CITY DEFENDANTS which induced them to part with their private properties (moneys spent to buy shares in HDFC) which ultimately allowed this HDFC to come into existence, but which they have now separated as a matter of expediency to them in other to unlawfully remove the building from plaintiffs and assign or sell it to wealthy investors which action will totally void the purposes stated in the original articles of incorporation of the HDFC on April 2nd 1982.

Plaintiffs reassert their position that their complaint was not filed on behalf of the fictional HDFC.

Defendants' assertion in their POINT 2 of motion to dismiss claiming that plaintiffs assumed that 18 USC 241, 242, 245 and 42 USC 3631 provided for a private right of action is erroneous and therefore denied and consequently stands moot as to form and content. Those relevant federal statues were referenced only to further amplify plaintiffs' case which reference still hinged upon the original title 42 USC 1983 statute which they proceeded under.

Plaintiffs' have adduced their allegation that the CITY OF NEW YORK is to be held guilty of deception and using under the color of law the powers granted it by New York State legislature to deprive plaintiffs of their constitutionally protected rights. The city of New York is responsible for assigning fraudulent deeds, as a method of creating surrogates (SHAREHOLDERS OF HDFC) to become "burden-bearers" of its flailing and unmanageable property, whom they deceived into entering into a covenant that qualifies as an unconscionable bargain within the meaning of Hume v. U.S., 132 US 406.

How can the defendants have a viable motion to dismiss when they willfully created an emphyteusis in the nature of the original articles of incorporation of the HDFC, deed and offering plan, in which there was no meeting of the minds with shareholders since pertinent aspects of the contract were withheld from unsuspecting plaintiffs. Even to the extent that there was revelation, it was cleverly intended to obfuscate the CITY'S incomparable, unjust color of law feudal power to make unannounced re-entry using the devise of so-called in *rem*

*tax foreclosure*, after deceiving plaintiffs into believing they "owned" the building. Are plaintiffs to neglect the fact that permission had to be obtained from the CITY before the articles of incorporation of the HDFC could be finalized and executed? It is the plaintiffs' contention that it is truly the CITY DEFENDANTS who "own" the HDFC!

To the extent that the defendants claim that, "further, even if the Court were to find that plaintiffs could maintain a 42 USC 1983 claim, Defendants Michael Cardozo and Leslie Spitalnick are immune from liability." The question then arises as to what type of immunity defendants are referring to? Is it absolute or qualified? Upon the strength of precedent it is well established that municipal corporations are not entitled to absolute immunity. As to the question of qualified immunity, plaintiffs pray the court to follow the dicta in Harlow v. Fitzgerald, 457 US 800 (1982), Monell v. New York City Dept of Social Services, 436 US 658 (1978), Rodriguez v. Phillips, 66F.3d470, 475 (2nd Cir. 1995). Plaintiffs respectfully strongly urge this Court to follow the same conclusions reached in Shechter v. Comptroller of the City of New York et al, 79 F.3d 265, (2d Cir. 1996), which stated in part that, "In any event, despite its erroneous rationale, the district court was correct in its ultimate ruling on the scope of authority issue on the record that was presented to it. Qualified immunity is an affirmative defense that must be pled and proved by the defendant. See Blisset v. Coughlin, 66 F.3d 531, 538 (2d Cir. 1995); see also Fed. R. Civ. P. 8(c). Defendants-appellants' entire submission on this issue is the statement of the fourth affirmative defense in their answer: "The defendants were, at all times relevant to the amended complaint, government officials

immune from suit under both the doctrines of absolute and qualified immunity." This bald assertion provides no basis for a ruling in their favor. Affirmative "[d]efenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy." National Acceptance Co. of Am. V. Regal Prods., Inc., 155 F.R.D. 631, 634 (E.D. Wis. 1994)"

"It is not enough that defendants-appellants were "government officials" to establish qualified immunity. They must further demonstrate that the <u>specific acts at issue</u> were performed within the scope of their official duties. The record is devoid of any evidence, or even bare allegations, to this effect. Further, we must "draw all reasonable inferences in favor of the non-movant" in addressing a Rule 12(c) motion, <u>Sheppard v. Beerman</u>, 18 F.3d 147, 150 (2d Cir), <u>cert denied</u>, 115 S. Ct. 73 (1994), and "[t]his standard is 'applied with particular strictness when the plaintiff complains of a civil rights violation,'" id. (quoting Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991) (Branum citations omitted in Sheppard). Accordingly, defendants-appellants' pleading is insufficient to establish their qualified immunity defense." <u>Shechter v. Comptroller of the City of New York et al</u>, 79 F.3d 265, (2d Cir. 1996).

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully pray this Court to dismiss the CITY defendants' motion to dismiss in its entirety.

Dated: New York, New York

August 11, 2007

Respectfully submitted,

*[signature]*

DR. DELOIS BLAKELY
477 W 142ND STREET, Suite 2
NEW YORK, NY 10031
(212)368-3739




Alternative Management Programs (DAMP), the Board of Estimate of the City of New York has established mandatory restrictions relating to the sale of the entire building and to the profits that may be retained by individual tenant co-operators from the resale of shares in the co-op Corporation that are allocated to individual apartments. These restrictions are contained in detail in the co-op Corporation's Certificate of Incorporation. The restrictions specify what portion of a profit from the sale of shares in the co-op Corporation can be kept by an individual tenant co-operator and what portion will be retained by the co-op Corporation. These restrictions have important consequences to tenants and should be carefully read and examined. They are attached to this Plan as Exhibit 1.

3. The Meaning of Being a "Tenant Co-operator"

   a. Shares & Stock Certificate

   In a co-op Corporation, purchasers buy a number of shares in the co-op Corporation that have been allocated to a particular apartment, rather than buying the particular apartment itself. The co-op Corporation is legally the owner and "landlord" of the building, and the shareholders are legally the owners of the Corporation. Shares are evidenced by a Stock Certificate which is also called a Certificate for Shares. (See Exhibit 14 for a copy of the Certificate for Shares.) Purchasers of shares are called "tenant co-operators". Shares in the co-op Corporation have been allocated by the number of rooms in or size of the apartments among other factors. In this co-op Corporation, all tenant co-operators in good standing are entitled to one vote per apartment in the Corporation's decision-making that is done by shareholders and to one vote per apartment in electing members of the Board of Directors, regardless of the number of shares they hold.* Where more than one person signs an Agreement to Purchase a particular apartment, the tenant co-operators in that apartment may cast their one vote together or they may split their vote if they disagree on an issue.

   b. Proprietary Lease

   In addition, all tenant co-operators are issued a "Proprietary Lease" that entitles them to live in their apartments for a term of ninety-nine years, so long as they meet their obligations under the Proprietary Lease and House Rules (See Exhibits 5 and 6 for a copy of these) and the co-op Corporation's By-Laws and Certificate of Incorporation, subject to amendment of the Proprietary Lease in the appropriate manner.

---

*Any tenant in possession of either two or more separate and unconnected apartments in the building or two or more apartments that have been joined shall have only one vote in the co-op Corporation's business. See By Laws, Exhibit 4.

8                                    A-4

7-29-81